IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION RECEIVED

2006 SEP -5 P 4: 34

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| LUTHER L. BILLINGSLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 3: 06 cv 795 -WKW |
| | ) | |
| MCWHORTER FARMS, LLC; | ) | |
| MICHAEL L. ADKINS; | ) | |
| LIFESTAR RESPONSE OF | ) | |
| ALABAMA, INC. d/b/a CARE | ) | |
| AMBULANCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Come now the defendants McWhorter Farms, LLC ("McWhorter Farms") and

Michael L. Adkins ("Adkins"), and pursuant to 28 U.S.C. §§ 1332, 1441 & 1446, hereby

gives notice that this civil action is removed from the Circuit Court of Macon County,

Alabama to the United States District Court for the Middle District of Alabama, Eastern

Division, and in support thereof, states as follows:

## I.    The Lawsuit

1.    The plaintiff Luther L. Billingsley filed this civil action in the Circuit Court

of Macon County, Alabama seeking to recover for damages and injuries he allegedly

received on March 14, 2006 in an accident on Interstate 85 with a McWhorter Farms

eighteen-wheeler.  He seeks to recover from out-of-state defendants McWhorter Farms

(by way of vicarious liability) and driver Michael Adkins for negligently and/or wantonly

causing the eighteen-wheeler to collide with Mr. Billingsley's vehicle (see Exhibit 1, Complaint, ¶¶ 6, 9, and 12). The plaintiff also seeks to recover from McWhorter Farms for negligent and wanton entrustment (see Exhibit 1, Complaint, ¶15). The complaint purports to seek recovery from Alabama corporation Lifestar Response of Alabama, Inc. d/b/a Care Ambulance ("Care Ambulance") by alleging that it caused and/or contributed to cause him pain and injury while attending to and/or transporting him (see Exhibit 1, Complaint, ¶ 7). In his complaint, Billingsley seeks unspecified compensatory and punitive damages, but he does list numerous categories of damages and injuries he allegedly received (see Exhibit 1, Complaint, ¶ 10).

2.     This action is being timely removed. The summons and complaint has not yet been served on driver Michael Adkins but it was served on McWhorter Farms on August 7, 2006. The summons and complaint was served on fraudulently joined defendant Care Ambulance on August 7, 2006.

3.     The removal of a case from state to federal court is proper if the case could have originally been brought in federal court. *See, Harrison Johnson, Jr. v. Bridgestone Firestone North America, LLC,* No. 2:06-CV-290-MEF, 2006 U.S. District LEXIS 8040 (M.D. Ala. August 28, 2006); *see also, Jeter v. Orkin Exterminating Co.*, 84 F.Supp. 2d 1334, 1336 (M.D. Ala. 2000)(citing *28 U.S.C. § 1441(a).* Federal courts may assert jurisdiction over cases brought under state law where the parties are of diverse state citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. *28 U.S.C. § 1332.* The Supreme Court has interpreted diversity of citizenship

under § 1332 to require complete diversity – that is, every plaintiff must be of diverse state citizenship from every defendant. *Palmer v. Hospital Auth. of Randolph County*, 22 F.3d 1559, 1564 (11th Cir. 1994)(citing *Strawbridge v. Curtiss, 3 Cranch.* (7 U.S.) 267 (1808)). While the presence of a plaintiff and defendant residing in the same state normally precludes federal jurisdiction based on diversity of citizenship, removal based upon diversity jurisdiction "cannot be defeated by a fraudulent joinder of a residential defendant. *Harrison, supra.*; *see also, Carl Legg, Dorothy Legg v. Wyeth,* 428 F.3d 1317 (11th Cir. 2005)(finding that sales representatives were fraudulently joined to destroy diversity). Thus, federal courts will disregard fraudulent joined defendants when considering the propriety of maintaining jurisdiction. *Tedder v. F.M.C. Corp.,* 509 F.2d 115, 117 (5th Cir. 1980).

## II.    Complete Diversity - Care Ambulance Has Been Fraudulently Joined.

4.    There is complete diversity because co-defendant Care Ambulance has been fraudulently joined in order to destroy diversity jurisdiction. *See, Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996)(explaining that a defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant). In this case, the plaintiff is a resident and citizen of Alabama (see Exhibit 1, Complaint, ¶ 1). McWhorter Farms, LLC, is a limited liability company and for diversity purposes a limited liability company is a citizen of the state of each member. *Rolling Greens MHP, L.P. v. Corncast SCH Holdings, L.L.C.,* 374 F.3d 1020, 1022 (11th Cir. 2004). David McWhorter is the only member of McWhorter Farms, LLC, and he is a resident and

citizen of Kentucky. Thus, McWhorter Farms, LLC is a citizen of Kentucky. McWhorter Farms' driver Michael Adkins is also a resident and citizen of Kentucky. Therefore, all these parties are completely diverse.

5.    Co-defendant Care Ambulance should not be considered for the purposes of determining complete diversity because it has been fraudulently joined in this action to destroy jurisdiction. *Jacqueline D. Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)(when a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.) The Eleventh Circuit applies a three-fold test for determining whether a defendant has been fraudulently joined: the removing party must show either (1) that there is no possibility that the plaintiff could establish a cause of action against the resident defendant in state court; (2) that the plaintiff fraudulently plead jurisdictional facts; or (3) that the diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and the claim has no real connection to the claim against the non-diverse defendant. *Cope v. American International Group,* No. 3:05CV751-WHA, 2006 U.S. Dist. LEXIS 8040 (M.D. Ala. Feb. 9, 2006); *see also, Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

6.    The plaintiff's complaint does not establish a cause of action against co-defendant Care Ambulance for medical negligence. Alabama Code § 6-5-551 requires that claims seeking recovery for medical malpractice must include a detailed specification

and factual description of the act or omission the plaintiff claims renders the health care

provider liable to the plaintiff. This section further provides that any complaint which

fails to include a detailed specification and factual description of each act and omission

shall be subject to dismissal for failure to state a claim upon which relief can be granted.

The statute specifically provides as follows:

> § 6-5-551. Complaint to detail circumstances rendering provider liable; discovery.
>
> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however that any such amendment must be made at least 90 days before trial. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. (Acts 1987, No. 87-189, p. 291, § 12; Act 2000-387, p. 609, § 1).

*Alabama Code* § 6-5-551 (emphasis added).

7.    There is no reasonable basis to conclude that an Alabama Court would find

that the Billingsley's complaint states a viable claim for relief against Care Ambulance.

The sole allegation in the complaint provides as follows:

> 7.    Following the accident made the basis of this suit, the
> Plaintiff Billingsley was attended to by ambulance
> personnel employed by Defendant Lifestar.  During the
> time said Billingsley was being attended to by said
> employees of Lifestar, Billingsley was attended to
> and/or transported in such a way as to cause and/or
> contribute to cause the pain and/or injuries that were
> suffered by Billingsley in the wreck made the basis of
> this suit.

(Exhibit 1,Complaint, ¶ ¶ 7, 18).

Billingsley's complaint, at the time of removal, does not state a bona fide claim detailing

and specifying the factual description of each act or omission which he contends makes

Care Ambulance liable to him.  Furthermore, the potential for legal liability must be

reasonable and not merely theoretically possible. *See, Carl Legg v. Wyeth,* 428 F.3d

1317, 1325 n.5 (11th Cir. 2005)(recognizing that the removal process was created to

protect defendants who have a right to remove and that the potential for legal liability

"must be reasonable, not merely theoretical" when determining whether the complaint

states a claim for relief).

     8.    This is a trucking case where the plaintiff alleges that an eighteen-wheeler

rear-ended him on I-85 and caused him to run off the road.  If there were a viable claim

against the ambulance company which responded to the accident and transported him,

then it surely would have been (and should have been) articulated with factual specificity

in accordance with Alabama Code § 6-5-551.  It does not do so because there is no claim

against Care Ambulance in this case and the one allegation has been included in the

complaint to destroy these defendants' right to have this case decided by a federal court based upon diversity jurisdiction. This court should ignore co-defendant Care Ambulance and dismiss it from this case as a fraudulently joined defendant because the complaint states no claim for relief against that entity.

## III.    Amount in Controversy

9.    This trucking accident case involves an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  The plaintiff's complaint intentionally fails to include an ad damnum clause specifying the amount in controversy in another attempt to thwart removal.  It merely seeks unspecified compensatory and punitive damages.

10.    In order to invoke a federal court's diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); *see also, Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996).  When the amount in controversy is not pled as part of the complaint in state court, the party seeking removal must address this jurisdictional requirement. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  "[W]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Leslie Miedema v. Maytag Corporation*, 450 F.3d 1322, 1330 (11th Cir. 2006)(quoting *Williams v. Best Buy Co. Inc.*, 269 F.3d 1316 1319 (11 th Cir. 2001).  The court first examines whether this standard is met by examining whether "it is facially

apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* If the jurisdictional amount is not apparent from the face of the complaint, the court can review the notice of removal and require evidence relevant to the amount in controversy to determine whether the jurisdictional requirement is met. *Id.* The relevant inquiry is whether the plaintiff's recovery will more likely than not exceed the jurisdictional amount should he prevail in his case. *See, Davis v. Franklin Life Ins. Co.*, 71 F.Supp. 2d, 1197, 1200 (M.D. Ala. 1999). Furthermore, "[t]he appropriate measure is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint." *Jackson v. American Bankers Insurance Company of Florida*, 976 F.Supp 1450, 1454 (S.D. Ala. 1997).

11.    In his complaint, Billingsley alleges that these defendants negligently and/or wantonly injured him, and he seeks recovery for damages for

        (a)    past, present, future and/or permanent injuries;
        (b)    property damage;
        (c)    medical expenses;
        (d)    physical pain, impairment, disfigurement, scarring and/or injury;
        (e)    mental anguish; and
        (f)    all other damages to which Billingsley is entitled by law to maintain.

(See Exhibit 1, Complaint, ¶ 10).

12.    A certified copy of the Uniform Accident Report for the March 14, 2006 accident made the basis of this lawsuit is attached hereto as Exhibit 2-A. While the defendants do not necessarily agree or stipulate to the facts contained in the report, it does list the investigating officer's knowledge, opinions, and beliefs about the accident at the

time he investigated the same. The investigating officer indicates that the McWhorter
vehicle was traveling at approximately 70 mph on I-85 at night when it struck the rear of
the Billingsley vehicle causing that vehicle to run off the right side of the road and strike
several trees before coming to rest. The report indicates that both drivers were
transported to Jackson Hospital and that both vehicles were totaled. The investigating
officer's report coupled with the allegations and unspecified damages sought in the
complaint indicate the amount in controversy is satisfied in this case.

13.    In addition, the *Alabama Jury Verdict Reporter* publication reports the
results of various cases tried in Macon over the last several years (Exhibit 2-B). These
reveal, as well known, that cases involving very minimal damages can and often do result
in very large verdicts in Macon County where the plaintiff filed this action.

*Taylor v. Landair Transport and Hodges*, Civil Action No. CV-01-0224, was a
negligence case tried in Macon County on August 29, 2002, which involved a plaintiff
who had pulled over to the shoulder of Interstate 85 in Macon County because he was
feeling sleepy. While on the shoulder of the road, a truck driver ran into the plaintiff's
parked vehicle. There was moderate damage resulted to the vehicles and no injury was
reported at the scene. The plaintiff incurred medical bills in the approximate range of
$15,000. The jury awarded a verdict in the amount of $500,000.

*Fitzpatrick v. Allstate*, Civil Action No. CV-00-402, was an uninsured motorist
case tried in Macon County on February 7, 2002, where the plaintiff sought recovery for
injuries he sustained in an accident when a phantom vehicle ran him off the road and

caused him to hit a tree. The plaintiff suffered what initially looked to be just bruising associated with her head and chest but then she complained of soft tissue symptoms, a cognitive disorder, and vertigo and presented medical bills in the range of $3,100. The Macon County jury returned a verdict in the amount of $150,000 in favor of the plaintiff.

*Smith v. Allstate,* Civil Action No. CV-00-0054, was an uninsured motorist case tried in Macon County on February 6, 2003, when the defendant's tire blew out causing him to cross the interstate median, where the plaintiff ran into him. It was a moderate crash and no injuries were reported at the scene. Later, the plaintiff complained of radiating neck and back pain. The plaintiff presented claims for uninsured motorist benefits and the jury returned a $1 million verdict for the plaintiff against his insurance company.

14.    Furthermore, appellate decisions demonstrate that the amount in controversy is satisfied in this case. In *Daniels v. East Alabama Paving,* 747 So.2d 1033 (Ala. 1999), the Alabama Supreme Court reviewed personal injury damage awards returned by a Macon County jury involving a single vehicle accident on Interstate 85 in a construction zone. The Alabama Supreme Court reversed the trial court's remittitur of the initial awards which in and of themselves demonstrate that jury awards can vastly exceed the award of actual damages claimed in a lawsuit. In that case, Vellica Daniels sustained property damage of $4,000 and medical damages of approximately $2,204.46. The jury awarded her $104,000. Kathy Daniels had medical expenses in the range of $644.60 and the jury awarded her $150,000. Plaintiff Lillie Daniels had special medicals

in the range of $225 plus loss time from work and a temporary injury to her shoulder that was not permanent. The jury awarded her $175,000. Lastly, the plaintiff Jessie Cook had lacerations to his face and had loss some teeth and his medical bills were approximately $1,407.84. The jury awarded him $200,000.

15.     There is clearly a preponderance of the evidence that if the plaintiff can prove the allegations of his complaint as to these defendants and the damages he is claiming, then this matter will more likely than not exceed the jurisdictional limits of this Court.

## IV.     Statutory Requirements and Local Rules Have Been Satisfied

16.     McWhorter Farms was served with a copy of the summons and complaint on August 7, 2006, and this notice of removal is being timely filed within thirty days of service of the petition or process upon this defendant pursuant to 28 U.S.C. § 1446(b), calculated in accordance with Rule 6(a) of the Federal Rules of Civil Procedure. No joinder or consent is necessary from a fraudulently joined defendant. *GMFS, LLC v. Bounds*, 275 F.Supp. 2d 1350, 1354 (S.D. Ala. 2003).

17 .     The requisites for removal under 28 U.S.C. § 1441 have been met.

18.     The removing defendant is filing a copy of the Notice of Removal with the Macon County Circuit Clerk's office and providing the plaintiff's attorney with written notice of the filing of the Notice of Removal as required by 28 U.S.C. § 1446(d).

19.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, a true and correct copy of all process, pleadings, and orders served on this defendant is attached hereto

through the certified copy of the court file from the Macon County Circuit Clerk's office which is marked as Exhibit "1."

20.     The removing defendant requests and reserves the right to amend and supplement this notice of removal and specifically requests, should the Court deem this submission to be inadequate, for leave to conduct limited discovery only as to jurisdiction.

STEVEN K. HERNDON - HER028
Attorney for Defendants
McWhorter Farms, LLC and
Michael L. Adkins

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
60 Commerce Street Suite 904
P. O. Box 4190 (36103)
Montgomery, AL 36104
Telephone: (334) 834-9950
Fax: (334) 834-9950
steve@ghhclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the foregoing upon the following by placing a copy of same in the U. S. Mail, postage prepaid, and properly addressed the 5th day of September, 2006:

Mr. David M. Cowan
Mann, Cowan & Potter, PC
2000-B SouthBridge Parkway
Suite 601
Birmingham, AL 35209

Mr. R. Keith Thomas
R. Keith Thomas, LLC
P.O. Box 830899
Tuskegee, AL 36083

Mr. Thomas L. Oliver, II
Carr Allison, PC
100 Vestavia Parkway
Birmingham, AL 35216

Steven K. Herndon

# EXHIBIT 1

```
 ------------------------------------------------------------------------
|  AVSO351                                           CV 2006 000158.00   |
|                                                                        |
|                                            JUDGE: ASSIGNED JUDGE       |
| --------------------------------------------------------------------- |
|                      ALABAMA JUDICIAL DATA CENTER                      |
|                        CASE ACTION SUMMARY                             |
|                          CIRCUIT CIVIL                                 |
| --------------------------------------------------------------------- |
|  IN THE CIRCUIT  COURT OF   MACON     COUNTY                           |
|                                                                        |
|    LUTHER L. BILLINGSLEY   VS  MCWHORTER FARMS, LLC, ET AL             |
|  FILED:  08/02/2006 TYPE: NEGLIGENCE MOTOR VEH TYPE TRIAL: JURY    TRACK: |
|                                                                        |
| ********************************************************************** |
|  DATE1:              CA:                 CA DATE:                      |
|  DATE2:              AMT:         $ .00  PAYMENT:                      |
|  DATE3:                                                                |
| ********************************************************************** |
|  PLAINTIFF  001: BILLINGSLEY LUTHER L.                                 |
|                                     ATTORNEY: COWAN DAVID MORRISON     |
|                                     COW002    2000-B SOUTHBRIDGE PKWY  |
|                       , AL   00000-0000          STE 601              |
|                      PHONE: (334)000-0000        BIRMINGHAM, AL  35209 |
|  ENTERED:  08/02/2006 ISSUED:           TYPE:        (205)879-9661     |
|  SERVED:            ANSWERED:            JUDGEMENT:                    |
| --------------------------------------------------------------------- |
|  DEFENDANT  001: MCWHORTER FARMS, LLC                                  |
|                  C/O JESSE M. STOCKTON, JR  ATTORNEY:                  |
|                  111A W. JEFFERSON STREET                             |
|                  ALBANY, KY  42602-0000                               |
|                  PHONE: (334)000-0000                                 |
|  ENTERED:  08/02/2006 ISSUED:  08/02/2006 TYPE:   CERTIFIED           |
|  SERVED:   08/07/2006 ANSWERED:           JUDGEMENT:                   |
| --------------------------------------------------------------------- |
|  DEFENDANT  002: ADKINS MICHEAL L.                                     |
|                  203 WEST HARPER LANE      ATTORNEY:                   |
|                                                                        |
|                  ALBANY, KY  42602-0000                               |
|                  PHONE: (334)000-0000                                 |
|  ENTERED:  08/02/2006 ISSUED:  08/02/2006 TYPE:   CERTIFIED           |
|  SERVED:            ANSWERED:            JUDGEMENT:                    |
| --------------------------------------------------------------------- |
|  DEFENDANT  003: LIFESTAR RESPONSE OF ALABAMA, INC. D/B/A CARE AMBU    |
|                  C/O DELL GAMBLE            ATTORNEY:                  |
|                  625 8TH PLACE                                        |
|                  PHENIX CITY, AL  36867-0000                          |
|                  PHONE: (334)000-0000                                 |
|  ENTERED:  08/02/2006 ISSUED:  08/02/2006 TYPE:   CERTIFIED           |
|  SERVED:   08/07/2006 ANSWERED:           JUDGEMENT:                   |
| --------------------------------------------------------------------- |
|      _____                 |
|    08/02/2006   ASSIGNED TO JUDGE: ASSIGNED JUDGE    (AV01)            |
|                                                                        |
|    08/02/2006   ORIGIN: INITIAL FILING               (AV01)            |
|                                                                        |
|    08/02/2006   JURY TRIAL REQUESTED                 (AV01)            |
|                                                                        |
|    08/02/2006   CASE ASSIGNED STATUS OF: ACTIVE      (AV01)            |
|                                                                        |
|    08/02/2006   BILLINGSLEY LUTHER L. ADDED AS C001  (AV02)            |
|                                                                        |
|    08/02/2006   LISTED AS ATTORNEY FOR C001: COWAN DAVID MORRISON      |
|                                                                        |
|    08/02/2006   MCWHORTER FARMS, LLC ADDED AS D001   (AV02)            |
|                                                                        |
|    08/02/2006   CERTIFIED MAI ISSUED: 08/02/2006 TO D001  (AV02)       |
|                                                                        |
|    08/02/2006   ADKINS MICHEAL L. ADDED AS D002      (AV02)            |
|                                                                        |
|    08/02/2006   CERTIFIED MAI ISSUED: 08/02/2006 TO D002  (AV02)       |
| --------------------------------------------------------------------- |
| MAC   08/30/2006                              CV 2006 000158.00        |
 ------------------------------------------------------------------------
```

```
| AVSO351                                                         CV 2006 000158.00 |
|                                                                                   |
|                                                                                   |
|                                                    JUDGE: ASSIGNED JUDGE          |
| --------------------------------------------------------------------------------- |
|                          ALABAMA JUDICIAL DATA CENTER                              |
|                              CASE ACTION SUMMARY                                   |
|                                 CIRCUIT CIVIL                                      |
| --------------------------------------------------------------------------------- |
|  IN THE CIRCUIT  COURT OF    MACON       COUNTY                                    |
|                                                                                   |
|   LUTHER L. BILLINGSLEY  VS  MCWHORTER FARMS, LLC, ET AL                           |
|  FILED:  08/02/2006 TYPE: NEGLIGENCE MOTOR VEH TYPE TRIAL: JURY      TRACK:        |
|                                                                                   |
| *********************************************************************************|
| DATE1:             CA:                     CA DATE:                                |
| DATE2:             AMT:            $.00  PAYMENT:                                  |
| DATE3:                                                                             |
| *********************************************************************************|
|   08/02/2006   LIFESTAR RESPONSE OF ALABAMA, INC. D/B/A CARE AMBU                  |
|                                                                                   |
|   08/02/2006   CERTIFIED MAI ISSUED: 08/02/2006 TO D003    (AV02)                  |
|                                                                                   |
|   08/02/2006   PLAINITFF'S INTERROGATORIES AND REQUESTS FOR                        |
|                                                                                   |
|   08/02/2006    PRODUCTION OF DOCUMENTS TO DEFENDANT, MCWHORTER                    |
|                                                                                   |
|   08/02/2006    FARMS, LLC.                                                        |
|                                                                                   |
|   08/02/2006   PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR                        |
|                                                                                   |
|   08/02/2006    PRODUCTION OF DOCUMENTS TO DEFENDANT MICHEAL L                     |
|                                                                                   |
|   08/02/2006    ADKINS                                                             |
|                                                                                   |
|   08/02/2006   PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR                        |
|                                                                                   |
|   08/02/2006    PRODUCTION OF DOCUMENTS TO DEFENDANT LIFESTAR                      |
|                                                                                   |
|   08/02/2006    RESPONSE OF ALABAMA, INC. D/B/A CARE AMBULANCE                     |
|                                                                                   |
|   08/02/2006   NOTICE OF TAKING DEPOSITION                                         |
|                                                                                   |
|   08/02/2006   NOTICE OF TAKING DEPOSITION                                         |
|                                                                                   |
|   08/02/2006   NOTICE OF TAKING DEPOSITION                                         |
|                                                                                   |
|   08/02/2006   PLAINTIFF'S MOTION FOR ENTRY, INSPECTION AND                        |
|                                                                                   |
|   08/02/2006    PHOTOGRAPHING AND FOR PROTECTIVE ORDER                             |
|                                                                                   |
|   08/02/2006   SUMMONS AND COMPLAINT                                               |
|                                                                                   |
|   08/11/2006   SERVICE OF CERTIFIED MAI ON 08/07/2006 FOR D001                     |
|                                                                                   |
|   08/18/2006   RETURN OF UNDELIVERABLE ON 08/14/2006 FOR D002                      |
|                                                                                   |
|   08/22/2006   SERVICE OF CERTIFIED MAI ON 08/07/2006 FOR D003                     |
|                                                                                   |
|                                                                                   |
| -------|-------------------------------------------------------------------------|
|                                                                                   |
| -------|-------------------------------------------------------------------------|
|                                                                                   |
| -------|-------------------------------------------------------------------------|
|                                                                                   |
| -------|-------------------------------------------------------------------------|
|                                                                                   |
| -------|-------------------------------------------------------------------------|
|                                                                                   |
| -------|-------------------------------------------------------------------------|
```

MAC   08/30/2006                                             CV 2006 000158.00

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | |
|---|---|
| LUTHER L. BILLINGSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MCWHORTER FARMS, LLC; MICHAEL | ) |
| L. ADKINS; LIFESTAR RESPONSE OF | ) |
| ALABAMA, INC. D/B/A CARE | ) |
| AMBULANCE, et al., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.
*CV-06-158*

### SUMMONS

Pursuant to Alabama Rule of Civil Procedure 4.1(c)(1), service is hereby requested by certified mail. You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant McWhorter Farms, LLC.

NOTICE TO:    **McWhorter Farms, LLC**
**c/o Jesse M. Stockton, Jr.**
**111A W. Jefferson St.**
**Albany, KY 42602**

### NOTICE TO DEFENDANT

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to David M. Cowan, MANN, COWAN & POTTER, P.C., Attorney for Plaintiff, at Suite 601, 2000-B SouthBridge Parkway, Birmingham, Alabama 35209. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THIS COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time.

*Eddie D. Mallard*
Clerk of Court

DATED: _8/2/06_

I, Eddie D. Mallard, Clerk of Macon County Circuit Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appears of record in said Court.
Witness my hand this 30th day of August, 20 06

*Emb. Dos, elle P*
/s/ EDDIE D. MALLARD
Clerk, Macon County Circuit Court

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

LUTHER L. BILLINGSLEY,    )
    )
    Plaintiff,    )
    )
v.    )    CIVIL ACTION NO.
    )    *CV-06-158*
MCWHORTER FARMS, LLC; MICHAEL    )
L. ADKINS; LIFESTAR RESPONSE OF    )
ALABAMA, INC. D/B/A CARE    )
AMBULANCE, et al.,    )
    )
    Defendants.    )

### SUMMONS

Pursuant to Alabama Rule of Civil Procedure 4.1(c)(1), service is hereby requested by certified mail. You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant Michael L. Akins.

    NOTICE TO:    **Michael L. Adkins**
    **203 West Harper Lane**
    **Albany, KY 42602**

### NOTICE TO DEFENDANT

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to David M. Cowan, MANN, COWAN & POTTER, P.C., Attorney for Plaintiff, at Suite 601, 2000-B SouthBridge Parkway, Birmingham, Alabama 35209. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THIS COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time.

*Eddie D. Wallad*
Clerk of Court

DATED:   8-2-06

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

LUTHER L. BILLINGSLEY,     )
                                 )
    Plaintiff,          )
                                 )
v.                          )     CIVIL ACTION NO.
                                 )     CV-06-158
MCWHORTER FARMS, LLC; MICHAEL    )
L. ADKINS; LIFESTAR RESPONSE OF    )
ALABAMA, INC. D/B/A CARE        )
AMBULANCE, et al.,          )
                                 )
    Defendants.       )

### SUMMONS

Pursuant to Alabama Rule of Civil Procedure 4.1(c)(1), service is hereby requested by certified mail. You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant Lifestar Response of Alabama, Inc. d/b/a Care Ambulance.

NOTICE TO:      **Lifestar Response of Alabama, Inc.**
                      **d/b/a Care Ambulance**
                      **c/o Dell Gamble**
                      **625 8th Place**
                      **Phenix City, AL 36867**

### NOTICE TO DEFENDANT

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to David M. Cowan, MANN, COWAN & POTTER, P.C., Attorney for Plaintiff, at Suite 601, 2000-B SouthBridge Parkway, Birmingham, Alabama 35209. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THIS COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time.

*Eddie D. Wallad*
Clerk of Court

DATED: 8/2/06

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

CIVIL ACTION NO. *CV-06-158*

LUTHER L. BILLINGSLEY,

Plaintiff,

v.

MCWHORTER FARMS, LLC; MICHAEL L. ADKINS; LIFESTAR RESPONSE OF ALABAMA, INC. D/B/A CARE AMBULANCE; **No. 1**, whether singular or plural, the driver of the motor vehicle which collided with Plaintiff's motor vehicle and whose negligence caused the Plaintiff's injury on the occasion made the basis of this suit; **No. 2**, whether singular or plural, the owner of the motor vehicle which collided with Plaintiff's motor vehicle on the occasion made the basis of this suit; **No. 3**, whether singular or plural, that entity or those entities who or which afforded any insurance coverage to either the driver or the owner of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 4**, whether singular or plural, that entity or those entities who or which provided maintenance and upkeep on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 5**, whether singular or plural, that entity or those entities who or which did any repair work on the motor vehicle(s) involved in the occurrence made the basis of this complaint; **No. 6**, whether singular or plural, that entity or those entities who or which manufactured and/or distributed the motor vehicle(s) involved in the occurrence made the basis of this lawsuit, or any of the component parts thereof; **No. 7**, whether singular or plural, that entity or those entities who or which were the master or principal of the driver of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 8**, whether singular or plural, that entity or those entities for whom the driver of the motor vehicle which collided with Plaintiff's motor vehicle was performing some type of service or employment duty at the time of this collision; **No. 9**, whether singular or plural, that entity or those entities who or which negligently entrusted the motor vehicle(s) involved in the occurrence made the basis of this lawsuit to the drivers thereof at the time of said occurrence; **No. 10**, whether singular or plural, that entity or those entities on whose behalf the vehicle or vehicles involved in the collision made the basis of this lawsuit was being operated at the time of said occurrence; **No. 11**, whether singular or plural, that entity or those entities who or which was responsible for the condition or state of repair of the vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 12**, whether singular or plural, that entity or those entities, that individual or those individuals who or which repaired, altered, or maintained the vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 13**, whether singular or plural, that entity or those entities who or which issued, or had a duty to issue, warnings or instructions regarding the use or operation of any of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; **No. 14**, whether singular or plural, that entity or those entities who or which tested, inspected, approved, or issued any approval of any of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; **No. 15**, whether singular or plural, that entity or those entities who or which had supervisory authority relating to the maintenance, operation, or to the selection, training and hiring of drivers of any of the vehicles involved in the occurrence made the basis of this lawsuit;

**No. 16**, whether singular or plural, that entity or those entities who or which issued any policy of insurance which provided coverage for Plaintiff's injuries received on the occasion made the basis of this lawsuit (including, but not limited to, uninsured/underinsured motorist coverage); **No. 17**, whether singular or plural, that entity or those entities who or which provided any insurance coverage for any of the motor vehicles involved in the occurrence made the basis of this lawsuit, for the driver of each respective motor vehicle or for any of the named fictitious parties Defendant listed or described herein; **No. 18**, whether singular or plural, that entity or those entities other than those entities described above whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit; **No. 19**, whether singular or plural, that entity or those entities other than those entities described above, which is the successor in interest of any of those entities described above; **No. 20**, whether singular or plural, that entity or those entities other than those entities described above, which was the predecessor corporation of any of the entities described above. Plaintiff avers that the identities of the fictitious parties Defendant is otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time their identities as proper parties Defendant is not known to Plaintiff at this time, but their true names will be substituted by amendment when ascertained,

Defendants.

**COMPLAINT**

1.     The Plaintiff, Luther L. Billingsley (hereinafter "Billingsley") is over the age of nineteen (19) years and is a resident citizen of the State of Alabama. The Defendant McWhorter Farms, LLC (hereinafter "McWhorter") is a corporate entity actively conducting business by agent within the State of Alabama, including Macon County. The Defendant Michael L. Adkins (hereinafter "Adkins") was, at the time of the incident made the basis of this suit, actively conducting business on behalf of McWhorter within the state of Alabama, including Macon County. The Defendant Lifestar Response of Alabama Inc. d/b/a Care Ambuance (hereinafter "Lifestar") is a corporate entity actively conducting business by agent within the State of Alabama, including Macon County.

2.     Fictitious Defendants are described as follows: **No. 1**, whether singular or plural, the driver of the motor vehicle which collided with Plaintiff's motor vehicle and whose negligence

2

caused the Plaintiff's injury on the occasion made the basis of this suit; **No. 2**, whether singular or plural, the owner of the motor vehicle which collided with Plaintiff's motor vehicle on the occasion made the basis of this suit; **No. 3**, whether singular or plural, that entity or those entities who or which afforded any insurance coverage to either the driver or the owner of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 4**, whether singular or plural, that entity or those entities who or which provided maintenance and upkeep on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 5**, whether singular or plural, that entity or those entities who or which did any repair work on the motor vehicle(s) involved in the occurrence made the basis of this complaint; **No. 6**, whether singular or plural, that entity or those entities who or which manufactured and/or distributed the motor vehicle(s) involved in the occurrence made the basis of this lawsuit, or any of the component parts thereof; **No. 7**, whether singular or plural, that entity or those entities who or which were the master or principal of the driver of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 8**, whether singular or plural, that entity or those entities for whom the driver of the motor vehicle which collided with Plaintiff's motor vehicle was performing some type of service or employment duty at the time of this collision; **No. 9**, whether singular or plural, that entity or those entities who or which negligently entrusted the motor vehicle(s) involved in the occurrence made the basis of this lawsuit to the drivers thereof at the time of said occurrence; **No. 10**, whether singular or plural, that entity or those entities on whose behalf the vehicle or vehicles involved in the collision made the basis of this lawsuit was being operated at the time of said occurrence; **No. 11**, whether singular or plural, that entity or those entities who or which was responsible for the condition or state of repair of the vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 12**, whether singular or

3

plural, that entity or those entities, that individual or those individuals who or which repaired, altered, or maintained the vehicle(s) involved in the occurrence made the basis of this lawsuit; **No. 13**, whether singular or plural, that entity or those entities who or which issued, or had a duty to issue, warnings or instructions regarding the use or operation of any of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; **No. 14**, whether singular or plural, that entity or those entities who or which tested, inspected, approved, or issued any approval of any of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; **No. 15**, whether singular or plural, that entity or those entities who or which had supervisory authority relating to the maintenance, operation, or to the selection, training and hiring of drivers of any of the vehicles involved in the occurrence made the basis of this lawsuit; **No. 16**, whether singular or plural, that entity or those entities who or which issued any policy of insurance which provided coverage for Plaintiff's injuries received on the occasion made the basis of this lawsuit (including, but not limited to, uninsured/underinsured motorist coverage); **No. 17**, whether singular or plural, that entity or those entities who or which provided any insurance coverage for any of the motor vehicles involved in the occurrence made the basis of this lawsuit, for the driver of each respective motor vehicle or for any of the named fictitious parties Defendant listed or described herein; **No. 18**, whether singular or plural, that entity or those entities other than those entities described above whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit; **No. 19**, whether singular or plural, that entity or those entities other than those entities described above, which is the successor in interest of any of those entities described above; **No. 20**, whether singular or plural, that entity or those entities

4

other than those entities described above, which was the predecessor corporation of any of the entities described above. Plaintiff avers that the identities of the fictitious parties Defendant is otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time their identities as proper parties Defendant is not known to Plaintiff at this time, but their true names will be substituted by amendment when ascertained.

3.      Billingsley avers that all acts which form the basis of this Complaint occurred within two (2) years of the filing thereof. Additionally, Billingsley alleges that all damages that resulted from the wrongful conduct as is described herein occurred in Macon County, Alabama.

4.      Billingsley avers that all claims, demands and averments as are set forth in the body of this Complaint are pled in full accordance with the Alabama Rules of Civil Procedure.

5.      Billingsley avers that at all times as are set forth herein, the Defendant Adkins was acting as employee, agent and/or representative of the Defendant McWhorter. In accordance herewith, Billingsley pleads the doctrines of *respondeat superior*, principle-agent and/or master-servant.

6.      On or about, to wit: March 14, 2006, Defendant Adkins was operating a freight truck on behalf of Defendant McWhorter at or near the intersection of I-85 and Country Road 97 in Macon County, Alabama. At said time, the Defendant Adkins negligently and/or wantonly caused or allowed said vehicle to collide with a motor vehicle being driven by Billingsley. Said negligent and/or wanton conduct was a proximate cause of Plaintiff's injuries and damages hereinafter described. At the aforesaid time and place, the Defendant, McWhorter, was the owner of and had the right of control over the use of the motor vehicle driven by the Defendant, Adkins.

7.      Following the accident made the basis of this suit, the Plaintiff Billingsley was

5

attended to by ambulance personnel employed by Defendant Lifestar.  During the time said

Billingsley was being attended to by said employees of Lifestar, Billingsley was attended to and/or

transported in such a way so as to cause and/or contribute to cause the pain and/or injuries that were

suffered by Billingsley in the wreck made the basis of this suit.


## COUNT I

8.     Billingsley adopts and realleges all preceding paragraphs.

9.     Billingsley avers that the above described conduct on the part of Defendant Adkins

and/or Defendants Nos. 1 through 20 constitutes negligence and/or wantonness.

10.     As a direct and proximate result of the above described conduct, Billingsley has or

will suffer the following:

      (a)     past, present, future and/or permanent injuries;

      (b)     property damage;

      (c)     medical expenses;

      (d)     physical pain, impairment, disfigurement, scarring and/or injury;

      (e)     mental anguish; and

      (f)     all other damages to which Billingsley is entitled by law to maintain.


## COUNT II

11.     Billingsley adopts and realleges all preceding paragraphs.

12.     Billingsley avers that at the time of the incident made the basis of this suit, Defendant

Adkins was the servant, agent, employee and/or representative of the Defendant McWhorter and/or

6

Defendants Nos. 1 through 20. Further, Billingsley avers that at the time of the incident made the basis of this suit, Defendant Adkins was subject to the authority and/or control of the Defendant McWhorter and/or Defendants Nos. 1 through 20. Accordingly, Billingsley avers that said Defendant McWhorter and/or Defendants Nos. 1 through 20 are responsible for any and all injuries or damages caused by the conduct described herein of Defendant Adkins.

13.    As a direct and proximate result of the above described conduct, Billingsley has been injured as is set forth above.

## COUNT III

14.    Billingsley adopts and realleges all preceding paragraphs.

15.    Billingsley avers the Defendant McWhorter and/or Defendants Nos. 1 through 20 did negligently and/or wantonly entrust the vehicle being driven by Defendant Adkins to him at the time of the incident made the basis of this suit. Said Defendant McWhorter and/or Defendants Nos. 1 through 20 knew or should have known that said Defendant Adkins was unfit and/or unqualified to operate said vehicle at the time of the incident made the basis of this suit.

16.    As a direct and proximate result of the above described conduct, Billingsley claims all damages described above.

## COUNT IV

17.    Billingsley adopts and realleges all preceding paragraphs.

18.    Billingsley avers that the above described conduct on the part of Defendant Lifestar and/or Defendants Nos. 1 through 20 constitutes negligence and/or wantonness. More particularly,

Billingsley states that said Defendant and/or its employees did negligently and/or wantonly manipulate and/or transport him so as to cause and/or contribute to cause the pain and/or injuries suffered by Billingsley in the wreck made the basis of this suit.

WHEREFORE PREMISES CONSIDERED, the Plaintiff demands judgment against each of the Defendants, jointly and severally for such compensatory and punitive damages as a jury may assess after and fair and accurate consideration of the facts made the basis of this suit.

DAVID M. COWAN

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

## JURY DEMAND

Plaintiff hereby demands a trial by struck jury.

OF COUNSEL

**PLAINTIFF'S ADDRESS:**

3010 Alabama Hwy. 14 West
Auburn, Alabama 36830

**DEFENDANT'S ADDRESS:**

McWhorter Farms, LLC
c/o Jesse M. Stockton, Jr.
111A W. Jefferson St.
Albany, KY 42602

Michael L. Adkins
203 West Harper Lane
Albany, KY 42602

Lifestar Response of Alabama, Inc.
d/b/a Care Ambulance
c/o Dell Gamble
625 8th Place
Phenix City, AL 36867

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

9

## MANN, COWAN & POTTER, P.C.

### ATTORNEYS AT LAW

2000B SOUTHBRIDGE PARKWAY

SUITE 601

BIRMINGHAM, ALABAMA 35209

TELEPHONE 205-879-9661

FACSIMILE 205-879-9663

Writer's Direct E-mail:

Kylie@mcplaw.com

TED L. MANN
DAVID M. COWAN
ROBERT POTTER

July 31, 2006

Eddie Mallard, Circuit Clerk
Macon County Courthouse
101 E. Northside St.
P.O. Box 830723
Tuskegee, AL 36083-0723

> Re:   *Luther L. Billingsley v. McWhorter Farms, LLC, et al.*

Dear Mr. Mallard:

Enclosed please find documents we would like to have filed with your office:

1.    Civil Cover Sheet;
2.    Summons;
3.    Complaint;
4.    Discovery; and
5.    Plaintiff's Motion for Inspection.

Also, enclosed is a check for the cost of this service, the appropriate certified mail, and a self-addressed stamped envelope for your convenience when returning a "filed" copy to this office.

With Kindest Regards,

MANN, COWAN & POTTER, P.C.

Kylie Wheelis,
Legal Assistant to
David M. Cowan

/kmw
Enclosure(s)

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V 2006 0115 ☐-☐<br>Date of Filing:                    Judge Code:<br>0 8  0 2  2006  X I X<br>Month    Day    Year |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ MACON COUNTY _____, ALABAMA
*(Name of County)*

_____ Luther L. Billingsley _____ v. _____ McWhorter Farms, LLC, et al. _____

| **Plaintiff** | **Defendant** |
|---|---|
| **First Plaintiff** ☐ Business  ☑ Individual<br>☐ Government  ☐ Other | **First Defendant** ☑ Business  ☐ Individual<br>☐ Government  ☐ Other |

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☑ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*   F ☑ INITIAL FILING   A ☐ APPEAL FROM   O ☐ OTHER:
DISTRICT COURT
R ☐ REMANDED   T ☐ TRANSFERRED FROM
OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
| C | O | W | 0 | 0 | 2 |

08 - 01 - 06
Date

Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED

# STATE OF ALABAMA
**Unified Judicial System**
Macon_____County

Revised 3/23/05

**Check one** *(Not for Workers' Comp., PFA, or Small Claims cases):*
☐ District Court  ☑ Circuit Court

► Case No.
*CV-06-158*

| *Style of case:* | Luther L. Billingsley | **CIVIL MOTION COVER SHEET** |
|---|---|---|
| v. | McWhorter Farms, LLC, et al. | *Name of Filing Party:* Luther L. Billingsley |

*Name, Address, and Telephone No. of Attorney or Party, If Not Represented:*
David M. Cowan, Esq., MANN, COWAN & POTTER, P.C.
2000B SouthBridge Pkwy., Ste. 601, Birmingham, AL 35209 / (205) 879-9661
*Attorney Alabama State Bar No.:*    ASB-4957-W85D

To be filled out by Clerk of Court:
☐ Filing Fee Charged and Collected (Amt $_____)
☐ Filing Fee Not Required
☐ Affidavit of Hardship on File or State Agency

## Type of Motion (Check One)

| **Motions Requiring Fee** | **Motions Not Requiring Fee** |
|---|---|

**Motions Requiring Fee**

☐ Default Judgment ($50.00)
☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)
☐ Judgment on the Pleadings ($50.00)
☐ Motion to Dismiss, or in the Alternative Summary Judgment ($50.00)
☐ Renewed Dispositive Motion (Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)
☐ Summary Judgment Pursuant to Rule 56 ($50.00)
☐ Other _____,
pursuant to Rule_____($50.00)

\* Motion fees are enumerated in §12-19-71(a).  Fees pursuant to Local Act are not included.  Please contact the Clerk of the Court regarding applicable local fees.

☐ Local Court Cost $_____

**Motions Not Requiring Fee**

☐ Add Party
☐ Amend
☐ Change of Venue/Transfer
☐ Compel
☐ Consolidation
☐ Continue
☐ Deposition
☐ Designate a Mediator
☐ Judgment as a Matter of Law (during trial)
☐ Disburse Funds
☐ Extension of Time
☐ In Limine
☐ Joinder
☐ More Definite Statement
☐ Motion to Dismiss pursuant to Rule 12(b)
☐ New Trial
☐ Objection of Exemptions Claimed
☐ Pendente Lite
☐ Plaintiff's Motion to Dismiss
☐ Preliminary Injunction
☐ Protective Order
☐ Quash
☐ Release from Stay of Execution
☐ Revive Judgment
☐ Sanctions
☐ Sever
☐ Special Practice in Alabama
☐ Stay
☐ Strike
☐ Supplement to Pending Motion
☐ Vacate or Modify
☐ Withdraw
☑ Other  Motion for Inspection and Protective Order,
pursuant to Rule_____(Subject to filing fee)

Hearing Date:

---

| *Check here if you have filed or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government.*  ☐ | *Date:* 08-01-06 | *Signature of Attorney or Party:* |

---

\* This Cover Sheet must be completed, signed **by the filing attorney or party,** and submitted to the Clerk of Court upon the filing of any motion.  Each motion should contain a separate Cover Sheet.
\*\* Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | |
|---|---|
| LUTHER L. BILLINGSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MCWHORTER FARMS, LLC; MICHAEL | ) |
| L. ADKINS; LIFESTAR RESPONSE OF | ) |
| ALABAMA, INC. D/B/A CARE | ) |
| AMBULANCE, et al., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.
CV-06-158

FILED IN CIRCUIT CLERK'S OFFICE
EDDIE D. MAY CIRCUIT CLERK
2006 AUG -2 P

## PLAINTIFF'S MOTION FOR ENTRY, INSPECTION AND PHOTOGRAPHING AND FOR PROTECTIVE ORDER

COMES NOW, the Plaintiff, Luther L. Billingsley, by and through one of his attorneys in the above styled cause, and hereby moves this Honorable Court for an Order granting him and his representative(s) the opportunity to enter the Defendant's, McWhorter Farms, LLC, premises for the purpose of inspecting, taking photographs and copying the maintenance, repair and / or modification records regarding the subject tractor and trailer unit along with any materials obtained through the investigation of the subject accident which occurred on or about March 14, 2006.

The Plaintiff's attorneys and their potential expert(s) have not had an opportunity to inspect and / or copy the complete records as aforementioned and if they have been altered, and if lost, will cause irreparable harm and prejudice to the Plaintiff's cause of action.

Further, the Plaintiff requests this Honorable Court for an Order prohibiting McWhorter Farms, LLC and/or their agents, attorneys or any other parties from altering, disposing of, selling, repairing, changing, using, performing any destructive testing or in any way materially effecting the requested records and tractor trailer unit in the condition it was in immediately following the accident made the basis of Plaintiff's case or any parts or pieces thereof.

The Plaintiff herein requests this Honorable Court for an Order directing McWhorter Farms, LLC to allow Plaintiff's attorney and their potential expert(s) access to the premises owned or operated by McWhorter Farms, LLC at a mutually convenient time and date so as not to interfere with the business operation of said entities.

The inspection of such tractor and trailer unit and copying of the maintenance, repair and/ or modification records regarding the subject tractor and trailer unit along with any materials obtained through the investigation of the subject accident are necessary to a full evaluation of the claims of the Plaintiff. Failure to allow such inspection will result in an undue hardship to Plaintiff and Plaintiff will be prejudiced in the prosecution of his claims against the parties responsible for his injuries.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court to enter an Order granting access to the Defendant's premises for the limited purpose of inspecting and taking photographs of the tractor and trailer unit or vehicle made the basis of Plaintiff's complaint and to issue an Order prohibiting McWhorter Farms, LLC and/or their agents, attorneys or any other parties from altering, disposing of, selling, repairing, changing and performing any destructive testing or in any way materially effecting the requested records and the tractor trailer unit in the condition it was in immediately following the accident made the basis of Plaintiff's case or any parts or pieces thereof.

_____

DAVID M. COWAN

2

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

3

ALABAMA JUDICIAL DATA CENTER
COURT PAYMENT SYSTEM

COUNTY                                          RECEIPT NUMBER: 043707
DATE OF RECEIPT: 08/02/2006   TIME: 15:48:05
RECEIPT FOR CASE: CV 2006 000158 00        BATCH: 2006238
   RECEIVED FROM: COWAN DAVID MORRISON


LUTHER L. BILLINGSLEY  VS  MCWHORTER FARMS. LLC. ET AL

   ACCOUNTS RECEIPTED:
       CV05                                    $333.00
       JDMD                                    $100.00
       SERA                                     $30.00

RECEIVED BY: MAC        CHECK AMOUNT      $463.00

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Post | |

Postmark Here

Sent To: Lifestar Response of Alabama, Inc.
d/b/a Care Ambulance
c/o Dell Gamble
625 8th Place
Phenix City, AL 36867

PS Form 3800, June 2002     See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Pos | |

Postmark Here

Sent To: Michael L. Adkins
203 West Harper Lane
Albany, KY 42602

PS Form 3800, June 2002     See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Posta | |

Postmark Here

Sent To: McWhorter Farms, LLC
c/o Jesse M. Stockton, Jr.
111A W. Jefferson St.
Albany, KY 42602

PS Form 3800, June 2002     See Reverse for Instructions

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

LUTHER L. BILLINGSLEY,                    )
                                          )
    Plaintiff,                        )
                                          )
v.                                        )        CIVIL ACTION NO.
                                          )        CV-06-158
MCWHORTER FARMS, LLC; MICHAEL             )
L. ADKINS; LIFESTAR RESPONSE OF           )
ALABAMA, INC. D/B/A CARE                  )
AMBULANCE, et al.,                        )
                                          )
    Defendants.                       )

## PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, MCWHORTER FARMS, LLC

COMES NOW the Plaintiff in the above-styled cause and pursuant to Rules 26, 33 and 34 of the ALABAMA RULES OF CIVIL PROCEDURE, requests that the Defendant answer separately, in writing and under oath the following interrogatories propounded by Plaintiff and to produce the following documents for inspection and copying by counsel for Plaintiff:

### Definitions

As used herein:

1.    "Defendant", "you" and/or "your" means each and every one of the named Defendants, respectively, or any agents, representatives, attorneys, and any other person or persons acting (or who acted) or purporting to act (or who purported to act) on the said Defendant's behalf.

2.    The word "person(s)" means individuals and entities, including, without limitation, sole proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts, estates and any other legal, business or governmental entity.

3.    "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory or request inclusive rather than exclusive. The use of the words "include(s)" and "including" shall be construed to mean "without limitation."

4.    The word "document(s)" is used in its customary broad sense and includes all written, typed, printed, recorded or graphic statements, communications or other matter, however produced or reproduced, and whether or not now in existence, in the possession, custody or control of plaintiff, including without limitation:

> All writings; studies; analyses; tabulations; evaluations; reports; reviews; agreements; contracts; communications; letters or other correspondence; messages; telegrams; telexes; FAX transmissions; cables; memoranda; records; notes, reports summaries, sound recordings or transcripts of personal or telephone conversations, meetings, conferences or interviews; telephone toll records; diaries; desk calendars; appointment books; forecasts; work papers; drawings; graphs; charts; maps; diagrams; blueprints; tables; indices; pictures; photographs; films; phonograph records; tapes; microfilm; microfiche; charges; ledgers; accounts; cost sheets; financial statements or reports; statistical or analytical records; minutes or records of board directors, committee or other meetings or conferences; reports of summaries or investigations; opinions or reports of consultants; appraisals; reports or summaries of negotiations; books; brochures; pamphlets; circulars; trade letters; press releases; newspaper and magazine clippings; stenographic, handwritten or any other notes; notebooks; projections; checks, front and back; check stubs or receipts; invoice vouchers; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filed or graphic matter, however produced or reproduced; and any other document, writing or data compilation of whatever description, including but not limited to any information contained in any computer although not yet printed out or the memory units containing such data from which information can be obtained or translated into reasonably usable form; and all drafts and non-identical copies of the foregoing.

5.    The word "identify" when used with respect to an individual means to state such individual's: (a) full name, present or last known residence and business address(es) and telephone number(s); (b) present or last known employer(s), place of employment and job title, if any; and (c) the nature (including job title, if any) and dates of any affiliation, by employment or otherwise, with any party to this litigation.

6.    The word "identify" when used with respect to a person or entity other than an individual means (a) to state its name; (b) to describe its nature (e.g., corporation, partnership, etc.); and (c) to identify the person or persons employed by such entity with whom you have dealt

2

concerning the subject matter of these interrogatories.

7.    The word "identify" when used with respect to a document or documents means (a) to specify the nature or type of the document (e.g., letter, memorandum, etc.); (b) to state the date, if any, appearing on the document, or if none, the date such document was prepared or received; (c) to describe in general the subject matter of the document with sufficient particularity as to enable such document to be precisely identified; (d) to identify each person who wrote, signed (or authorized the signature of) dictated or otherwise participated in the preparation of the document; (e) to identify any addresses thereof, and, if known, each person to whom the document was distributed; (f) to state the present physical location of the document; and (g) to identify each person having possession, custody or control of the document.

### Continuing Interrogatories and Request for Production

These interrogatories and requests for production are continuing in character as to require the filing of prompt supplementary and amended answers if further or different information or additional documents relevant to any of these interrogatories and requests for production are obtained prior to trial.

### Instructions

Defendant should answer each interrogatory separately and fully, unless it is objected to, in which event the reasons for the objections should be specifically and separately stated. The answers are to be signed by Defendant and the objections, if any, are to be signed by the attorney making them. Where a complete answer to a particular interrogatory is not possible, the interrogatory should be answered to the extent possible and a statement should be made indicating why only a partial

3

answer is given.

Answers to these interrogatories shall set forth each question in full before each answer. Separate answers shall be provided in response to each interrogatory, and, when an interrogatory has subdivisions, to each subdivision.

With respect to any interrogatory calling for the identification or listing of documents, unless otherwise indicated, you may, in lieu thereof, attach to your answers a copy of such documents segregated separately for each answer, with an identification of the interrogatory or interrogatories (or portion thereof) to which they are submitted as being responsive. In the event you elect to attach documents rather than identify them in response to any interrogatory, it is requested (a) that all documents attached be produced in the file folders and file cartons in which they have been maintained or stored, clipped, stapled or otherwise arranged in that form and manner as they were found, and (b) that you identify the person or persons in whose custody or control such files are or were maintained.

If you object to furnishing any document on the basis of attorney-client privilege or any other basis, please identify the document by the date it bears, or if none, under the date it was written; by the name and address of it; by the name and address of each person to whom it was addressed and each person to whom a copy was identified as being directed; by the name and address of each person who received a copy of the document; by description of the document, as for instance, a letter memorandum; by its present location or custodian; or if unknown, its last known location or custodian; and by the present location and custodian of each copy; or if unknown, its last known location or custodian.

If any requested documents or things cannot be produced in full, produce to the extent possible, specifying each reason for your inability to produce the remainder and stating whatever

4

information, knowledge or belief you do have concerning the produced portion.

If any document requested was in defendant's possession or control, but is no longer in defendant's possession or subject to defendant's control, state what disposition was made of it, the reason for such disposition and the date thereof.

In producing documents and things pursuant to this request, furnish all documents or things known or available to you regardless of whether such documents or things are possessed directly by you or your agents, employees, representatives or investigators or by your attorneys, their agents, employees, representatives or investigators.

If any documents or things requested were at one time in existence but are no longer in existence, then so state, specifying for each document or thing:

    a.      The type of document or thing;

    b.      The types of information contained thereon;

    c.      The date upon which it ceased to exist;

    d.      The circumstances under which it ceased to exist;

    e.      The identity of all persons having knowledge of the circumstances under which it ceased to exist; and

    f.      The identity of all persons having knowledge or who had knowledge of the contents thereof.

You are requested to produce all original documents; and all other copies not absolutely identical to the originals.  In addition you are requested to produce all drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not.

## INTERROGATORIES

1.    Please state whether your name is correctly set forth as a Defendant in this case; if not, please state your correct name.

2.    Please identify, by giving the name, address, and last known telephone number, each and every person known to you to have firsthand knowledge of the events and conditions set out in the Complaint.(**Note:** "identify is a term defined in the *Definitions and Instructions* section hereof).

3.    With respect to any witnesses whom you will or may call as experts to give testimony at the trial of this matter, please state the following:

      a.    His/her name, address, and telephone number;

      b.    The name, address, and telephone number of his/her employer or the organization with which he/she is associated in any professional capacity;

      c.    The substance of the opinions to which he/she is expected to testify and a summary of the grounds for each opinion.

4.    Please provide the following information for any and all policies of insurance (whether primary, secondary, excess, umbrella or otherwise) of any kind whatsoever that could arguably be applicable or available to satisfy part or all of any judgment or settlement in this matter:

      a.    Full name of insurer(s);

      b.    Policy number(s);

      c.    Full description of the type of policy(ies); and

      d.    Limits of liability (single limit, per occurrence or otherwise).

5.    List each and every defense known to you at this time that you presently intend to assert.

6.    State the name, address, title and duties of the person answering these interrogatories

6

and the place where these interrogatories are answered.

7.     Please state the name and address of each person from whom a statement has been obtained by this Defendant or on behalf of this Defendant.

8.     State the full name and address, giving the street, street numbers, city and state, of every witness known to you, or to your attorney, who has any knowledge regarding the facts and circumstances surrounding the happening of the incident referred to in the complaint including, but not limited to, eyewitnesses to such event.

9.     If this Defendant or anyone on behalf of this Defendant has or knows of any photographs or motion pictures of the persons, places or things involved in the occurrence made the basis of this suit (including the Plaintiff and the scene of said occurrence), describe each by subject matter, date taken, and the name and address of such person who has possession, custody or control of such photograph or motion picture, or copies of same.

10.    State the full name and address of every witness known to you, or to your attorney, who has any knowledge regarding the facts and circumstances surrounding the happening of the incident referred to in the complaint, including but not limited to, eyewitnesses to such event.

11.    List and describe each photograph, document or item of demonstrative evidence you may or will offer as evidence at the trial of this case, as follows:

        a.     A complete description of each photograph, document or item of demonstrative evidence;

        b.     The name, employer, job title, business and resident address of each person through whom such photograph, other document and/or item of demonstrative evidence may or shall be offered as evidence.

12.    Please state the full name, date of birth, social security number, driver's license

7

number and last known address for the driver of the Defendant's vehicle involved in the accident made the basis of this suit.

13.    Please state the CB handle for the Defendant driver.

14.    Describe completely and in detail the vehicle occupied or owned by this defendant on the occasion of the occurrence made the basis of this suit, stating in your answer the owner of said motor vehicle on the date of the occurrence, the driver of said vehicle on the date of the occurrence, make, model, year and body style of said motor vehicle.

15.    If the driver of said vehicle was performing a mission, errand or duty for any one whatsoever, state the nature of same and give the name and address of the person or entity for whom said mission, errand or duty was being performed.

16.    State specifically and in detail exactly how the collision made the basis of this suit occurred and describe chronologically the events that occurred leading up to the collision.

17.    Describe each and every thing which plaintiff did which contributed to the collision made the basis of this suit.

18.    If any of the occupants of any of the vehicles involved in the collision made the basis of this suit were intoxicated or drinking intoxicating beverages at the time of said collision, give the full name and address of each person who was drinking or intoxicated.

19.    According to your best judgment, state the speed of the vehicle in which plaintiff was riding when the defendant first observed same prior to collision until immediately after impact.

20.    State fully, specifically and in detail each and every act or thing done by the operator of the vehicle owned or operated by this defendant at the time of the collision made the basis of this suit during the last 300 feet of said vehicle's approach to the point of collision, stating in your answer the chronological order of said acts or things.

21.    If the brakes were applied on the defendant's vehicle prior to collision, state in your best judgment the speed in miles per hour said vehicle was traveling at the time said brakes were applied and the number of feet said vehicle traveled from the moment the brakes were applied until said collision occurred.

22.    State specifically what portion of the vehicles involved in said collision first came in contact with each other.

23.    State in your best judgment the distance each of the vehicles involved in the accident made the basis of this suit traveled on said occasion from the moment of collision to the point where each of said vehicles first came to a stop immediately following said impact.

24.    State the location of any other vehicles at or near the scene of the collision at the time of or immediately prior to said collision.

25.    Describe in detail any statements made by this defendant in the presence of the operator of any of the vehicles involved in the collision made the basis of this suit or in the presence of plaintiff following the occurrence of said collision.

26.    Describe in detail any statement made in this defendant's presence by the operator of the vehicle in which plaintiff was riding following occurrence made the basis of this suit.

27.    If any of the vehicles involved in the collision made the basis of this suit had any defective lighting equipment, describe each defective piece of lighting equipment specifically and in detail.

28.    At the time of the collision in question, identify and describe and policies of insurance by which the vehicle you were operating or which you owned was insured in any manner regarding any claims resulting from collision.

29.    Identify any other individual, entity or entities other than the named defendants in

9

this cause which may be liable or responsible for the collision made the basis of this suit.

       30.      State the full name, date of birth, social security number, driver's license number and last known address and telephone number of the person operating the vehicle owned and/or operated by McWhorter Farms, LLC involved in the accident made the basis of this suit.

## REQUESTS FOR PRODUCTION

The **"documents"** covered by this request are as follows:

       1.      Any and all insurance agreements or policies (including the declarations page) under which an insurance company might be liable to satisfy part or all of a judgment which may be entered in the above mentioned cause.

       2.      Any and all photographs, or motion pictures of persons, places, or things involved in the events and/or conditions made the basis of this lawsuit, including the scene of said occurrence.

       3.      Any and all signed or unsigned statements, accounts, or reports made by any persons, including the Plaintiff, who claim to have any knowledge whatsoever pertaining in any way to the events or conditions referred to in the Complaint. (If you refuse to produce copies of any of the requested documents based upon attorney/client privilege or work product doctrine, for each please give the name and address of the custodian of said document, the name and address of the person from whom the statement, account, or report was obtained, the name and address of the person who obtained said statement, account, or report, and the nature and specific subject matter of said statement, account, or report.)

       4.      List of witnesses or any other person who may be called by the defense to testify at trial.

       5.      Any and all documents, records, writings, audio tapes, video tapes, films, graphs,

charts or any other tangible material which may be offered as evidence at the trial of this case or which may be used in any way during the trial.

6.     Any and all documents which define, describe or relate to the relationship by or between any and/or all of the Defendants herein, whether named or fictitious.

7.     Any and all photographs or motion pictures of the persons, places or things involved in the occurrence made the basis of this suit, including the scene of said occurrence.

8.     Any and all accident investigations, reports, memoranda, correspondence, etc., which relate to the accident made the basis of this suit.

9.     Any and all statements, whether recorded or written, taken of the Plaintiff or any member of the Plaintiff's family at any time.

10.    A copy of each expert witness' curriculum vitae.

11.    Each photograph, document or item of demonstrative evidence you may or will offer as evidence at the trial of this case.

12.    Any and all articles, or authoritative materials, statutes, ordinances or codes that the Defendant intends to use or present at the trial of this case.

13.    The ICC certificate of authority for Defendants to operate in interstate commerce in effect on March 14, 2006.

14.    A copy or a photograph of the ICC placard attached to the vehicle owned and/or occupied by the Defendant involved in the incident made the basis of this suit.

15.    The driver's log of the driver of the vehicle on the date of the accident made the basis of this suit and thirty days prior thereto for the vehicle in question and any other vehicle operated by said Defendant driver during said period of time.

16.    The auto insurance policy, motor vehicle insurance policy or comprehensive general

11

liability insurance policy providing any insurance coverage to the Defendants for the occurrence made the basis of this suit and include in your answer the declaration page showing the applicable limits of coverage.

17.     Any and all traffic accident reports regarding other accidents involving the driver of the vehicle which collided with the Plaintiff for the past five years.

18.     Any and all photographs of the vehicles involved in the incident made the basis of this suit subsequent to the incident made the basis of this suit.

19.     The investigation report, accident report or other report regarding the incident made the basis of this suit.

20.     The DOT file maintained on the driver of the vehicle on behalf of the Defendant.

21.     A copy of any and all bills of lading regarding any goods transported by the driver of the Defendant's vehicle involved in the accident made the basis of this suit from February 1, 2006 through May 1, 2006.

22.     A copy of any and all pre-maintenance inspection reports for the vehicle occupied for the Defendant for six months prior to the accident made the basis of this suit and for three months following said accident.

23.     A complete copy of the personnel file for the driver of the defendant's vehicle involved in the accident made the basis of this suit.

24.     A copy of all alcohol and/or drug screen/tests performed on the driver of the defendant's vehicle involved in the accident made the basis of this suit on or about March 14, 2006 at any time prior to or following the subject accident.

DAVID M. COWAN

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

13

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | |
|---|---|
| LUTHER L. BILLINGSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MCWHORTER FARMS, LLC; MICHAEL | ) |
| L. ADKINS; LIFESTAR RESPONSE OF | ) |
| ALABAMA, INC. D/B/A CARE | ) |
| AMBULANCE, et al., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.
CV-06-158

### PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MICHAEL L. ADKINS

COMES NOW the Plaintiff in the above-styled cause and pursuant to Rules 26, 33 and 34 of the ALABAMA RULES OF CIVIL PROCEDURE, requests that the Defendant answer separately, in writing and under oath the following interrogatories propounded by Plaintiff and to produce the following documents for inspection and copying by counsel for Plaintiff:

### Definitions

As used herein:

1.    "Defendant",  "you" and/or "your" means each and every one of the named Defendants, respectively, or any agents, representatives, attorneys, and any other person or persons acting (or who acted) or purporting to act (or who purported to act) on the said Defendant's behalf.

2.    The word "person(s)" means individuals and entities, including, without limitation, sole proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts, estates and any other legal, business or governmental entity.

3.    "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory or request inclusive rather than exclusive. The use of the words "include(s)" and "including" shall be construed to mean "without limitation."

4.    The word "document(s)" is used in its customary broad sense and includes all written, typed, printed, recorded or graphic statements, communications or other matter, however produced or reproduced, and whether or not now in existence, in the possession, custody or control of plaintiff, including without limitation:

> All writings; studies; analyses; tabulations; evaluations; reports; reviews; agreements; contracts; communications; letters or other correspondence; messages; telegrams; telexes; FAX transmissions; cables; memoranda; records; notes, reports summaries, sound recordings or transcripts of personal or telephone conversations, meetings, conferences or interviews; telephone toll records; diaries; desk calendars; appointment books; forecasts; work papers; drawings; graphs; charts; maps; diagrams; blueprints; tables; indices; pictures; photographs; films; phonograph records; tapes; microfilm; microfiche; charges; ledgers; accounts; cost sheets; financial statements or reports; statistical or analytical records; minutes or records of board directors, committee or other meetings or conferences; reports of summaries or investigations; opinions or reports of consultants; appraisals; reports or summaries of negotiations; books; brochures; pamphlets; circulars; trade letters; press releases; newspaper and magazine clippings; stenographic, handwritten or any other notes; notebooks; projections; checks, front and back; check stubs or receipts; invoice vouchers; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filed or graphic matter, however produced or reproduced; and any other document, writing or data compilation of whatever description, including but not limited to any information contained in any computer although not yet printed out or the memory units containing such data from which information can be obtained or translated into reasonably usable form; and all drafts and non-identical copies of the foregoing.

5.    The word "identify" when used with respect to an individual means to state such individual's: (a) full name, present or last known residence and business address(es) and telephone number(s); (b) present or last known employer(s), place of employment and job title, if any; and (c) the nature (including job title, if any) and dates of any affiliation, by employment or otherwise, with any party to this litigation.

6.    The word "identify" when used with respect to a person or entity other than an individual means (a) to state its name; (b) to describe its nature (e.g., corporation, partnership, etc.); and (c) to identify the person or persons employed by such entity with whom you have dealt

2

concerning the subject matter of these interrogatories.

7.    The word "identify" when used with respect to a document or documents means (a) to specify the nature or type of the document (e.g., letter, memorandum, etc.); (b) to state the date, if any, appearing on the document, or if none, the date such document was prepared or received; (c) to describe in general the subject matter of the document with sufficient particularity as to enable such document to be precisely identified; (d) to identify each person who wrote, signed (or authorized the signature of) dictated or otherwise participated in the preparation of the document; (e) to identify any addresses thereof, and, if known, each person to whom the document was distributed; (f) to state the present physical location of the document; and (g) to identify each person having possession, custody or control of the document.

## Continuing Interrogatories
## and Request for Production

These interrogatories and requests for production are continuing in character as to require the filing of prompt supplementary and amended answers if further or different information or additional documents relevant to any of these interrogatories and requests for production are obtained prior to trial.

## Instructions

Defendant should answer each interrogatory separately and fully, unless it is objected to, in which event the reasons for the objections should be specifically and separately stated. The answers are to be signed by Defendant and the objections, if any, are to be signed by the attorney making them. Where a complete answer to a particular interrogatory is not possible, the interrogatory should be answered to the extent possible and a statement should be made indicating why only a partial

3

answer is given.

Answers to these interrogatories shall set forth each question in full before each answer. Separate answers shall be provided in response to each interrogatory, and, when an interrogatory has subdivisions, to each subdivision.

With respect to any interrogatory calling for the identification or listing of documents, unless otherwise indicated, you may, in lieu thereof, attach to your answers a copy of such documents segregated separately for each answer, with an identification of the interrogatory or interrogatories (or portion thereof) to which they are submitted as being responsive. In the event you elect to attach documents rather than identify them in response to any interrogatory, it is requested (a) that all documents attached be produced in the file folders and file cartons in which they have been maintained or stored, clipped, stapled or otherwise arranged in that form and manner as they were found, and (b) that you identify the person or persons in whose custody or control such files are or were maintained.

If you object to furnishing any document on the basis of attorney-client privilege or any other basis, please identify the document by the date it bears, or if none, under the date it was written; by the name and address of it; by the name and address of each person to whom it was addressed and each person to whom a copy was identified as being directed; by the name and address of each person who received a copy of the document; by description of the document, as for instance, a letter memorandum; by its present location or custodian; or if unknown, its last known location or custodian; and by the present location and custodian of each copy; or if unknown, its last known location or custodian.

If any requested documents or things cannot be produced in full, produce to the extent possible, specifying each reason for your inability to produce the remainder and stating whatever

4

information, knowledge or belief you do have concerning the produced portion.

If any document requested was in defendant's possession or control, but is no longer in defendant's possession or subject to defendant's control, state what disposition was made of it, the reason for such disposition and the date thereof.

In producing documents and things pursuant to this request, furnish all documents or things known or available to you regardless of whether such documents or things are possessed directly by you or your agents, employees, representatives or investigators or by your attorneys, their agents, employees, representatives or investigators.

If any documents or things requested were at one time in existence but are no longer in existence, then so state, specifying for each document or thing:

    a.      The type of document or thing;

    b.      The types of information contained thereon;

    c.      The date upon which it ceased to exist;

    d.      The circumstances under which it ceased to exist;

    e.      The identity of all persons having knowledge of the circumstances under which it ceased to exist; and

    f.      The identity of all persons having knowledge or who had knowledge of the contents thereof.

You are requested to produce all original documents; and all other copies not absolutely identical to the originals. In addition you are requested to produce all drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not.

5

## INTERROGATORIES

1.      State your correct name, age, residence address, driver's license number, business address, and marital status.

2.      Please give your employment history for the past 10 years, including the following:

      a.      Name, address, and phone number of employer.

      b.      Dates of employment.

      c.      Brief description of your duties.

      d.      Reason for leaving employment.

3.      Please give the name, address, and phone number of any and all schools you have attended.

4.      Please list the name, address, and phone number of any and all physicians you have seen in the past five years.

5.      Please list the name, address, and phone number of any and all hospitals where you have been a patient (including emergency room visits) in the past five years.

6.      List any and all pharmacies (including name, address and phone number) where you have had prescriptions filled in the past five years.

7.      Give a complete list of all medications taken in the past five years, including:

      a.      Name of medication.

      b.      Name, address and phone number of doctor who prescribed medication.

      c.      Reason for taking medication.

8.      Have you been involved in any motor vehicle accidents in the past ten years?  If so, please state the following concerning each accident:

      a.      Date of accident.

6

   b.  Location of accident.

   c.  Type of vehicle and owner of said vehicle.

   d.  Any injuries you sustained.

   e.  Police agency working said accident.

   f.  Who was at fault in said accident.

 9.  Have you ever been arrested?  If so, state:

   a.  Location.

   b.  Charge.

   c.  Agency.

 10.  Please describe in complete detail your activities for February 16, 2006, including but not limited to: your route, where you unloaded, time you went off duty, where you slept, where you ate.

 11.  Please describe in complete detail your activities for February 16, 2006, including but not limited to: your route, your destination, time you came on duty, where you picked up the trailer and for what purpose.

 12.  In your best judgment, state the speed in miles per hour of your vehicle immediately prior to the collision made the basis of this suit.

 13.  If you had consumed or used any alcoholic beverages, any medication (prescription or over-the-counter), or controlled substance for a period of twenty-four hours immediately preceding the incident made the basis of this suit, please identify each and every such alcoholic beverage, drug, or controlled substance, the quantity of each consumed or used, and the time such was consumed or used.

 14.  State in your own words how the incident made the basis of this suit occurred.

7

15.    Did you see the collision with the Plaintiff's vehicle?

16.    When did you first notify McWhorter Farms, LLC personnel of the collision with the Plaintiff's vehicle?

17.    Please state the CB handle for the Defendant driver.

18.    Describe completely and in detail the vehicle occupied or owned by this defendant on the occasion of the occurrence made the basis of this suit, stating in your answer the owner of said motor vehicle on the date of the occurrence, the driver of said vehicle on the date of the occurrence, make, model, year and body style of said motor vehicle.

19.    If the driver of said vehicle was performing a mission, errand or duty for any one whatsoever, state the nature of same and give the name and address of the person or entity for whom said mission, errand or duty was being performed.

20.    State specifically and in detail exactly how the collision made the basis of this suit occurred and describe chronologically the events that occurred leading up to the collision.

21.    Describe each and every thing which plaintiff did which contributed to the collision made the basis of this suit.

22.    If any of the occupants of any of the vehicles involved in the collision made the basis of this suit were intoxicated or drinking intoxicating beverages at the time of said collision, give the full name and address of each person who was drinking or intoxicated.

23.    According to your best judgment, state (a) the speed of the vehicle in which the plaintiff was riding when the defendant first observed same prior to the collision until immediately after impact; and, (b) the speed of the vehicle in which you were driving when you first observed the plaintiff prior to the collision until immediately after.

24.    State fully, specifically and in detail each and every act or thing done by the operator

8

of the vehicle owned or operated by this defendant at the time of the collision made the basis of this suit during the last 300 feet of said vehicle's approach to the point of collision, stating in your answer the chronological order of said acts or things.

25.    If the brakes were applied on the defendant's vehicle prior to the collision, state in your best judgment the speed in miles per hour said vehicle was traveling at the time of impact with the plaintiff's vehicle.

26.    State specifically what portion of the vehicles involved in said collision first came in contact with each other.

27.    State in your best judgment the distance each of the vehicles involved in the accident made the basis of this suit traveled on said occasion from the moment of collision to the point where each of said vehicles first came to a stop immediately following said impact.

28.    State the location of any other vehicles at or near the scene of the collision at the time of or immediately prior to said collision.

29.    Describe in detail any statements made by this defendant in the presence of the operator of any of the vehicles involved in the collision made the basis of this suit or in the presence of plaintiff following the occurrence of said collision.

30.    Describe in detail any statement made in this defendant's presence by the operator of the vehicle in which plaintiff was riding following occurrence made the basis of this suit.

31.    If any of the vehicles involved in the collision made the basis of this suit had any defective lighting equipment, describe each defective piece of lighting equipment specifically and in detail.

32.    Identify any other individual, entity or entities other than the named defendants in this cause which may be liable or responsible for the collision made the basis of this suit.

33.    Please state the name and address of each person from whom a statement has been obtained by this defendant or on behalf of this defendant.

34.    State the full name and address, giving the street, street numbers, city and state, of every witness known to you, or to your attorney, who has any knowledge regarding the facts and circumstances surrounding the happening of the incident referred to in the complaint including, but not limited to, eyewitnesses to such event.

35.    With respect to any witnesses whom you will or may call as experts to give testimony at the trial of this matter, please state the following:

        a.    his/her name, address, and telephone number;

        b.    the name, address, and telephone number of his/her employer or the organization with which he/she is associated in any professional capacity;

        c.    the substance of the opinions to which he/she is expected to testify and a summary of the grounds for each opinion.

36.    Please provide the following information for any and all policies of insurance (whether primary, secondary, excess, umbrella or otherwise) of any kind whatsoever that could arguably be applicable or available to satisfy part or all of any judgment or settlement in this matter:

        a.    Full name of insurer(s);

        b.    Policy number(s);

        c.    Full description of the type of policy(ies); and

        d.    Limits of liability (single limit, per occurrence or otherwise).

37.    List each and every defense known to you at this time that you presently intend to assert.

38.    If this Defendant or anyone on behalf of this Defendant has or knows of any

photographs or motion pictures of the persons, places or things involved in the occurrence made the basis of this suit (including the Plaintiff and the scene of said occurrence), describe each by subject matter, date taken, and the name and address of such person who has possession, custody or control of such photograph or motion picture, or copies of same.

## REQUESTS FOR PRODUCTION

The "**documents**" covered by this request are as follows:

1.     Any and all insurance agreements or policies (including the declarations page) under which an insurance company might be liable to satisfy part or all of a judgment which may be entered in the above mentioned cause.

2.     Any and all photographs, or motion pictures of persons, places, or things involved in the events and/or conditions made the basis of this lawsuit, including the scene of said occurrence.

3.     Any and all signed or unsigned statements, accounts, or reports made by any persons, including the Plaintiff, who claim to have any knowledge whatsoever pertaining in any way to the events or conditions referred to in the Complaint. (If you refuse to produce copies of any of the requested documents based upon attorney/client privilege or work product doctrine, for each please give the name and address of the custodian of said document, the name and address of the person from whom the statement, account, or report was obtained, the name and address of the person who obtained said statement, account, or report, and the nature and specific subject matter of said statement, account, or report.)

4.     List of witnesses or any other person who may be called by the defense to testify at trial.

5.     Any and all documents, records, writings, audio tapes, video tapes, films, graphs,

charts or any other tangible material which may be offered as evidence at the trial of this case or which may be used in any way during the trial.

6.    Any and all documents which define, describe or relate to the relationship by or between any and/or all of the Defendants herein, whether named or fictitious.

7.    The ICC certificate of authority for Defendant McWhorter Farms, LLC and this Defendant to operate in interstate commerce in effect on March 14, 2006.

8.    A copy or a photograph of the ICC placard attached to the vehicle owned and/or occupied by the Defendant involved in the incident made the basis of this suit.

9.    The driver's log of this Defendant for March 14, 2006 and thirty days preceding this date for the vehicle in question and any other vehicle operated by this Defendant for American Furniture Warehouse Co. during said period of time.

10.    The auto insurance policy, motor vehicle insurance policy or comprehensive general liability insurance policy providing any insurance coverage to McWhorter Farms, LLC and/or this Defendant for the occurrence made the basis of this suit and include in your answer the declaration page showing the applicable limits of coverage.

11.    A copy of this Defendant's commercial driver's license.

12.    Any and all traffic accident reports regarding other accidents involving this Defendant for the past five years.

13.    Any and all photographs of the tractor and trailer involved in the incident made the basis of this suit subsequent to the incident made the basis of this suit.

14.    The investigation report, accident report or other report regarding the incident made the basis of this suit.

15.    The DOT file maintained on this Defendant.

12

16. A copy of any and all bills of lading regarding any goods transported by this Defendant from February 1, 2006 through May 1, 2006.

17. A copy of any and all pre-maintenance inspection reports for the vehicle occupied for the Defendant for six months prior to the accident made the basis of this suit and for three months following said accident.

18. A copy of any and all driver logs, trip logs, or logs of any sort or description for this Defendant from February 1, 2006 through May 1, 2006.

19. A copy of any and all driver vehicle inspection reports performed by this Defendant from February 1, 2006 through May 1, 2006.

20. A copy of any and all trip records, fuel receipts, bills of lading for this Defendant from February 1, 2006 through May 1, 2006.

21. Any and all insurance agreements or policies (including the declarations page) under which an insurance company might be liable to satisfy part or all of a judgment which may be entered in the above mentioned cause.

22. Any and all photographs, or motion pictures of persons, places, or things involved in the events and/or conditions made the basis of this lawsuit, including the scene of said occurrence.

23. Any and all signed or unsigned statements, accounts, or reports made by any persons, including the Plaintiff, who claim to have any knowledge whatsoever pertaining in any way to the events or conditions referred to in the Complaint. (If you refuse to produce copies of any of the requested documents based upon attorney/client privilege or work product doctrine, for each please give the name and address of the custodian of said document, the name and address of the person from whom the statement, account, or report was obtained, the name and address of the person who obtained said statement, account, or report, and the nature and specific subject matter of said

13

statement, account, or report.)

24.    List of witnesses or any other person who may be called by the defense to testify at trial.

25.    Any and all documents, records, writings, audio tapes, video tapes, films, graphs, charts or any other tangible material which may be offered as evidence at the trial of this case or which may be used in any way during the trial.

26.    Any and all documents which define, describe or relate to the relationship by or between any and/or all of the Defendants herein, whether named or fictitious.

27.    Any and all photographs or motion pictures of the persons, places or things involved in the occurrence made the basis of this suit, including the scene of said occurrence.

28.    Any and all accident investigations, reports, memoranda, correspondence, etc., which relate to the accident made the basis of this suit.

29.    Any and all statements, whether recorded or written, taken of the Plaintiff or any member of the Plaintiff's family at any time.

30.    A copy of each expert witness' curriculum vitae.

31.    Each photograph, document or item of demonstrative evidence you may or will offer as evidence at the trial of this case.

32.    Any and all articles, or authoritative materials, statutes, ordinances or codes that the Defendant intends to use or present at the trial of this case.

_____
DAVID M. COWAN

14

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

_____
R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

_____
OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

LUTHER L. BILLINGSLEY,                      )
                                            )
    Plaintiff,                              )
                                            )
v.                                          )       CIVIL ACTION NO.
                                            )       CV-06-158
MCWHORTER FARMS, LLC; MICHAEL               )
L. ADKINS; LIFESTAR RESPONSE OF             )
ALABAMA, INC. D/B/A CARE                    )
AMBULANCE, et al.,                          )
                                            )
    Defendants.                             )

### PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LIFESTAR RESPONSE OF ALABAMA, INC. D/B/A CARE AMBULANCE

COMES NOW the Plaintiff in the above-styled cause and pursuant to Rules 26, 33 and 34 of the ALABAMA RULES OF CIVIL PROCEDURE, request that each Defendant answer separately, in writing and under oath the following interrogatories propounded by Plaintiff and to produce the following documents for inspection and copying by counsel for Plaintiff:

### Definitions

As used herein:

1.    "Defendant", "you" and/or "your" means each and every one of the named Defendants, respectively, or any agents, representatives, attorneys, and any other person or persons acting (or who acted) or purporting to act (or who purported to act) on this Defendant's behalf.

2.    The word "person(s)" means individuals and entities, including, without limitation, sole proprietorships, firms, associations, companies, partnerships, joint ventures, corporations, trusts, estates and any other legal, business or governmental entity.

3.    "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the interrogatory or request inclusive rather than exclusive. The use of the words "include(s)" and

"including" shall be construed to mean "without limitation."

4.     The word "document(s)" is used in its customary broad sense and includes all written, typed, printed, recorded or graphic statements, communications or other matter, however produced or reproduced, and whether or not now in existence, in the possession, custody or control of plaintiff, including without limitation:

> All writings; **e-mails;** studies; analyses; tabulations; evaluations; reports; reviews; agreements; contracts; communications; letters or other correspondence; messages; telegrams; telexes; FAX transmissions; cables; memoranda; records; notes, reports summaries, sound recordings or transcripts of personal or telephone conversations, meetings, conferences or interviews; telephone toll records; diaries; desk calendars; appointment books; forecasts; work papers; drawings; graphs; charts; maps; diagrams; blueprints; tables; indices; pictures; photographs; films; phonograph records; tapes; microfilm; microfiche; charges; ledgers; accounts; cost sheets; financial statements or reports; statistical or analytical records; minutes or records of board directors, committee or other meetings or conferences; reports of summaries or investigations; opinions or reports of consultants; appraisals; reports or summaries of negotiations; books; brochures; pamphlets; circulars; trade letters; press releases; newspaper and magazine clippings; stenographic, handwritten or any other notes; notebooks; projections; checks, front and back; check stubs or receipts; invoice vouchers; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filed or graphic matter, however produced or reproduced; and any other document, writing or data compilation of whatever description, including but not limited to any information contained in any computer although not yet printed out or the memory units containing such data from which information can be obtained or translated into reasonably usable form; and all drafts and non-identical copies of the foregoing.

5.     The word "identify" when used with respect to an individual means to state such individual's: (a) full name, present or last known residence and business address(es) and telephone number(s); (b) present or last known employer(s), place of employment and job title, if any; and (c) the nature (including job title, if any) and dates of any affiliation, by employment or otherwise, with any party to this litigation.

6.     The word "identify" when used with respect to a person or entity other than an individual means (a) to state its name; (b) to describe its nature (e.g., corporation, partnership, etc.);

and (c) to identify the person or persons employed by such entity with whom you have dealt concerning the subject matter of these interrogatories.

7.    The word "identify" when used with respect to a document or documents means (a) to specify the nature or type of the document (e.g., letter, memorandum, etc.); (b) to state the date, if any, appearing on the document, or if none, the date such document was prepared or received; (c) to describe in general the subject matter of the document with sufficient particularity as to enable such document to be precisely identified; (d) to identify each person who wrote, signed (or authorized the signature of) dictated or otherwise participated in the preparation of the document; (e) to identify any addresses thereof, and, if known, each person to whom the document was distributed; (f) to state the present physical location of the document; and (g) to identify each person having possession, custody or control of the document.

## Continuing Interrogatories
## and Request for Production

These interrogatories and requests for production are continuing in character as to require the filing of prompt supplementary and amended answers if further or different information or additional documents relevant to any of these interrogatories and requests for production are obtained prior to trial.

## Instructions

Defendant should answer each interrogatory separately and fully, unless it is objected to, in which event the reasons for the objections should be specifically and separately stated. The answers are to be signed by Defendant and the objections, if any, are to be signed by the attorney making them. Where a complete answer to a particular interrogatory is not possible, the interrogatory should be answered to the extent possible and a statement should be made indicating why only a partial answer is given.

Answers to these interrogatories shall set forth each question in full before each answer. Separate answers shall be provided in response to each interrogatory, and, when an interrogatory has subdivisions, to each subdivision.

With respect to any interrogatory calling for the identification or listing of documents, unless otherwise indicated, you may, in lieu thereof, attach to your answers a copy of such documents segregated separately for each answer, with an identification of the interrogatory or interrogatories (or portion thereof) to which they are submitted as being responsive. In the event you elect to attach documents rather than identify them in response to any interrogatory, it is requested (a) that all documents attached be produced in the file folders and file cartons in which they have been maintained or stored, clipped, stapled or otherwise arranged in that form and manner as they were found, and (b) that you identify the person or persons in whose custody or control such files are or were maintained.

If you object to furnishing any document on the basis of attorney-client privilege or any other basis, please identify the document by the date it bears, or if none, under the date it was written; by the name and address of it; by the name and address of each person to whom it was addressed and each person to whom a copy was identified as being directed; by the name and address of each person who received a copy of the document; by description of the document, as for instance, a letter memorandum; by its present location or custodian; or if unknown, its last known location or custodian; and by the present location and custodian of each copy; or if unknown, its last known location or custodian.

If any requested documents or things cannot be produced in full, produce to the extent possible, specifying each reason for your inability to produce the remainder and stating whatever information, knowledge or belief you do have concerning the produced portion.

If any document requested was in defendant's possession or control, but is no longer in defendant's possession or subject to defendant's control, state what disposition was made of it, the reason for such disposition and the date thereof.

In producing documents and things pursuant to this request, furnish all documents or things known or available to you regardless of whether such documents or things are possessed directly by you or your agents, employees, representatives or investigators or by your attorneys, their agents, employees, representatives or investigators.

If any documents or things requested were at one time in existence but are no longer in existence, then so state, specifying for each document or thing:

    a.      The type of document or thing;

    b.      The types of information contained thereon;

    c.      The date upon which it ceased to exist;

    d.      The circumstances under which it ceased to exist;

    e.      The identity of all persons having knowledge of the circumstances under which it ceased to exist; and

    f.      The identity of all persons having knowledge or who had knowledge of the contents thereof.

You are requested to produce all original documents; and all other copies not absolutely identical to the originals. In addition you are requested to produce all drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not.

## INTERROGATORIES

1.    Please state whether your name is correctly set forth as a Defendant in this case; if not, please state your correct name.

2.    Please give your present address, telephone number, Social Security number, driver's license number, and date of birth.

3.    Please identify, by giving the name, address, and last known telephone number, each and every person or witness known to you to have knowledge of any of the events, circumstances, issues and/or conditions set out in the Complaint.

4.    Please identify each and every person this Defendant contends or believes has information or knowledge that would allegedly support any factual and/or legal defense raised in the Answer, or that the Defendant intends to raise at the trial of this cause.

5.    With respect to any witnesses whom you will or may call as experts to give testimony at the trial of this matter, please state the following:

      a.    His/her name, address, and telephone number;

      b.    The name, address, and telephone number of his/her employer or the organization with which he/she is associated in any professional capacity;

      c.    The field in which he/she is to be offered as an expert;

      d.    A summary of his/her qualifications within the field in which he/she is expected to testify;

      e.    The substance of the facts to which he/she is expected to testify; and

      f.    The substance of the opinions to which he/she is expected to testify and a summary of the grounds for each opinion.

6.    Please give a full description of each and every document in your possession, or in

the possession of your representatives or attorneys, which in any way relates to the incident made the basis of this lawsuit, including but not limited to, any and all statements of witnesses (whether oral, written, recorded, or reproduced by any mechanical means), photographs, video tapes, audio tapes, investigative reports, etc.

      7.    Please give a full description of each and every document which you intend to introduce into evidence at the trial of this cause.

      8.    Please provide the following information for any and all policies of insurance (whether primary, secondary, excess, umbrella or otherwise) of any kind whatsoever that could arguably be applicable or available to satisfy part or all of any judgment or settlement in this matter:

          a.    Full name of insurer(s);

          b.    Policy number(s);

          c.    Full description of the type of policy(ies); and

          d.    Limits of liability (single limit, per occurrence or otherwise).

      9.    List each and every defense known to you at this time that you presently intend to assert.

## REQUEST FOR PRODUCTION

The **"documents"** covered by this request are as follows:

      1.    Any and all insurance agreements or policies (whether primary, excess, umbrella or otherwise) under which an insurance company might be liable to satisfy part or all of a judgment which may be entered in the above mentioned cause.

      2.    Copies of any signed or unsigned statement, account, or report made by any persons, including parties, who claim to have any knowledge whatsoever pertaining in any way to the

occurrence referred to in the Complaint. (If you refuse to produce copies of any of the requested documents based upon attorney/client privilege or work product doctrine, for each please give the name and address of the custodian of said document, the name and address of the person from whom the statement, account, or report was obtained, the name and address of the person who obtained said statement, account, or report, and the nature and specific subject matter of said statement, account, or report. Any and all medical bills, medical reports, hospital records, or doctor's records reflecting any examinations, tests or treatment received by you as a result of the collision made the basis of this suit.

3.    List of witnesses or any other person who may be called by the defense to testify at trial.

4.    Any and all documents, records, writings, audio tapes, video tapes, films, graphs, charts or any other tangible material which may be offered as evidence at the trial of this case or which may be used in any way during the trial.

5.    Any and all insurance policies (including declaration page) applicable to and in effect at the time of the incident made the basis of this suit.

6.    Any and all run reports, medical records, itemized statement of charges and any document or writing of any kind that relates to the accident made the basis of this suit.

7.    Any and all policies and procedures in place at the time of the incident made the basis of this suit.

DAVID M. COWAN

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

_____
R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

_____
OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

# IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

LUTHER L. BILLINGSLEY,                )
                                       )
    Plaintiff,      )
                                       )
v.                                     )        CIVIL ACTION NO.
                                       )        CV-06-158
MCWHORTER FARMS, LLC; MICHAEL          )
L. ADKINS; LIFESTAR RESPONSE OF        )
ALABAMA, INC. D/B/A CARE               )
AMBULANCE, et al.,                     )
                                       )
    Defendants.     )

## <u>NOTICE OF TAKING DEPOSITION</u>

Please take notice that at **10:00 a.m.** on the**2nd** day of **October, 2006**, at the law offices

of MANN, COWAN & POTTER, P.C., located at 2000B SouthBridge Parkway, Suite 601,

Birmingham, Alabama 35209, before an officer authorized by law to administer oaths and pursuant

to Alabama Rules of Civil Procedure 30(b)(5)&(6), the Plaintiff will take the deposition of the

Defendant **McWhorter Farms, LLC.**

Pursuant to Rule 30(b)(6), said corporation, "shall designate one or more officers, directors,

managing agents, or other persons who consent to testify in its behalf" and that "(t)he persons so

designated shall testify as to matters known or reasonably available to (said corporation.)"

**McWhorter Farms, LLC shall designate that person (or those persons) who is (are) most**

**knowledgeable regarding the following:**

a.    The allegations made the basis of this suit; and

b.    Defendant Adkins' complete driver's file, driving history, diver's logs, written or

recorded statements regarding the wreck, prior accidents, prior moving violations,

medical history and DOT physicals.

Pursuant to Rule 30(b)(5), Plaintiff requests that, at the time and place of the taking of said deposition, said corporation produce for inspection and copying the following:

1.    Any and all insurance agreements or policies (including the declarations page) under which an insurance company might be liable to satisfy part or all of a judgment which may be entered in the above mentioned cause.

2.    Any and all photographs, or motion pictures of persons, places, or things involved in the events and/or conditions made the basis of this lawsuit, including the scene of said occurrence.

3.    Any and all signed or unsigned statements, accounts, or reports made by any persons, including the Plaintiff, who claim to have any knowledge whatsoever pertaining in any way to the events or conditions referred to in the Complaint. (If you refuse to produce copies of any of the requested documents based upon attorney/client privilege or work product doctrine, for each please give the name and address of the custodian of said document, the name and address of the person from whom the statement, account, or report was obtained, the name and address of the person who obtained said statement, account, or report, and the nature and specific subject matter of said statement, account, or report.)

4.    List of witnesses or any other person who may be called by the defense to testify at trial.

5.    Any and all documents, records, writings, audio tapes, video tapes, films, graphs, charts or any other tangible material which may be offered as evidence at the trial of this case or which may be used in any way during the trial.

6.    Any and all documents which define, describe or relate to the relationship by or between any and/or all of the Defendants herein, whether named or fictitious.

2

7.    Any and all photographs or motion pictures of the persons, places or things involved in the occurrence made the basis of this suit, including the scene of said occurrence.

8.    Any and all accident investigations, reports, memoranda, correspondence, etc., which relate to the accident made the basis of this suit.

9.    Any and all statements, whether recorded or written, taken of the Plaintiff or any member of the Plaintiff's family at any time.

10.    A copy of each expert witness' curriculum vitae.

11.    Each photograph, document or item of demonstrative evidence you may or will offer as evidence at the trial of this case.

12.    Any and all articles, or authoritative materials, statutes, ordinances or codes that the Defendant intends to use or present at the trial of this case.

13.    The ICC certificate of authority for Defendants to operate in interstate commerce in effect on March 14, 2006.

14.    A copy or a photograph of the ICC placard attached to the vehicle owned and/or occupied by the Defendant involved in the incident made the basis of this suit.

15.    The driver's log of the driver of the vehicle on the date of the accident made the basis of this suit and thirty days prior thereto for the vehicle in question and any other vehicle operated by said Defendant driver during said period of time.

16.    The auto insurance policy, motor vehicle insurance policy or comprehensive general liability insurance policy providing any insurance coverage to the Defendants for the occurrence made the basis of this suit and include in your answer the declaration page showing the applicable limits of coverage.

3

17.     Any and all traffic accident reports regarding other accidents involving the driver of the vehicle which collided with the Plaintiff for the past five years.

18.     Any and all photographs of the vehicles involved in the incident made the basis of this suit subsequent to the incident made the basis of this suit.

19.     The investigation report, accident report or other report regarding the incident made the basis of this suit.

20.     The DOT file maintained on the driver of the vehicle on behalf of the Defendant.

21.     A copy of any and all bills of lading regarding any goods transported by the driver of the Defendant's vehicle involved in the accident made the basis of this suit from February 1, 2006 through May 1, 2006.

22.     A copy of any and all pre-maintenance inspection reports for the vehicle occupied for the Defendant for six months prior to the accident made the basis of this suit and for three months following said accident.

23.     A complete copy of the personnel file for the driver of the defendant's vehicle involved in the accident made the basis of this suit.

24.     A copy of all alcohol and/or drug screen/tests performed on the driver of the defendant's vehicle involved in the accident made the basis of this suit on or about March 14, 2006 at any time prior to or following the subject accident.


_____
DAVID M. COWAN

4

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

                        ßᴋ7 / ßy DⱮ
                        _____
                        R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

                        DⱮ
                        _____
                        OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL
DISCOVERY, BY CERTIFIED MAIL.**

5

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | | |
|---|---|---|
| LUTHER L. BILLINGSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | CV-06-158 |
| MCWHORTER FARMS, LLC; MICHAEL | ) | |
| L. ADKINS; LIFESTAR RESPONSE OF | ) | |
| ALABAMA, INC. D/B/A CARE | ) | |
| AMBULANCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF TAKING DEPOSITION

Please take notice that at **11:00 a.m.** on the **2nd** day of **October, 2006**, at the law offices

of MANN, COWAN & POTTER, P.C., located at 2000B SouthBridge Parkway, Suite 601,

Birmingham, Alabama, the Plaintiff, will take the deposition of    **Michael L. Adkins**, upon oral

examination pursuant to Rule 30 of the Alabama Rules of Civil Procedure, for the purpose of

discovery, or for use as evidence in this action, or for both purposes, before a court reporter, a

Notary Public, or before some other officer authorized by law to administer oaths.

_____
DAVID M. COWAN

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

2

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

LUTHER L. BILLINGSLEY,      )
                                )

     Plaintiff,          )
                                )

v.                       )    CIVIL ACTION NO.
                                )    CV-06-158

MCWHORTER FARMS, LLC; MICHAEL  )
L. ADKINS; LIFESTAR RESPONSE OF  )
ALABAMA, INC. D/B/A CARE       )
AMBULANCE, et al.,           )
                                )

     Defendants.        )

## NOTICE OF TAKING DEPOSITION

Please take notice that at **1:00 p.m.** on the **2nd** day of **October, 2006**, at the law offices of MANN, COWAN & POTTER, P.C., located at 2000B SouthBridge Parkway, Suite 601, Birmingham, Alabama 35209, before an officer authorized by law to administer oaths and pursuant to Alabama Rules of Civil Procedure 30(b)(5)&(6), the Plaintiff will take the deposition of the Defendant **Lifestar Response of Alabama, Inc. d/b/a Care Ambulance.**

Pursuant to Rule 30(b)(6), said corporation, "shall designate one or more officers, directors, managing agents, or other persons who consent to testify in its behalf" and that "(t)he persons so designated shall testify as to matters known or reasonably available to (said corporation.)" **Lifestar Response of Alabama, Inc. d/b/a Care Ambulance shall designate that person (or those persons) who is (are) most knowledgeable regarding the following:**

    a.     The allegations made the basis of this suit.

Pursuant to Rule 30(b)(5), Plaintiff requests that, at the time and place of the taking of said deposition, said corporation produce for inspection and copying the following:

    1.     Any and all insurance agreements or policies (whether primary, excess, umbrella or

otherwise) under which an insurance company might be liable to satisfy part or all of a judgment which may be entered in the above mentioned cause.

2.      Copies of any signed or unsigned statement, account, or report made by any persons, including parties, who claim to have any knowledge whatsoever pertaining in any way to the occurrence referred to in the Complaint. (If you refuse to produce copies of any of the requested documents based upon attorney/client privilege or work product doctrine, for each please give the name and address of the custodian of said document, the name and address of the person from whom the statement, account, or report was obtained, the name and address of the person who obtained said statement, account, or report, and the nature and specific subject matter of said statement, account, or report. Any and all medical bills, medical reports, hospital records, or doctor's records reflecting any examinations, tests or treatment received by you as a result of the collision made the basis of this suit.

3.      List of witnesses or any other person who may be called by the defense to testify at trial.

4.      Any and all documents, records, writings, audio tapes, video tapes, films, graphs, charts or any other tangible material which may be offered as evidence at the trial of this case or which may be used in any way during the trial.

5.      Any and all insurance policies (including declaration page) applicable to and in effect at the time of the incident made the basis of this suit.

6.      Any and all run reports, medical records, itemized statement of charges and any document or writing of any kind that relates to the accident made the basis of this suit.

7.      Any and all policies and procedures in place at the time of the incident made the basis of this suit.

2

_____
DAVID M. COWAN

OF COUNSEL:

**MANN, COWAN & POTTER, P.C.**
2000-B SouthBridge Parkway
Suite 601
Birmingham, Alabama 35209
Telephone: (205) 879-9661
Facsimile: (205) 879-9663

_____
R. KEITH THOMAS

OF COUNSEL:

**R. Keith Thomas, L.L.C.**
404 South Main Street
Post Office Box 830899
Tuskegee, Alabama 36083
Telephone: (334) 724-0035

_____
OF COUNSEL

**PLEASE SERVE THE SUMMONS AND COMPLAINT, TOGETHER WITH ALL DISCOVERY, BY CERTIFIED MAIL.**

3

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LUTHER L. BILLINGSLEY | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. |
| | )     3:06 CV 795-WKW |
| MCWHORTER FARMS, LLC; | ) |
| MICHAEL L. ADKINS; | ) |
| LIFESTAR RESPONSE OF | ) |
| ALABAMA, INC. d/b/a CARE | ) |
| AMBULANCE, et al., | ) |
| | ) |
|     Defendants. | ) |

## AFFIDAVIT OF STEVEN K. HERNDON

Before me, the undersigned authority, personally appeared Steven K. Herndon, to

me known, and first being duly sworn on oath, deposed and said:

       My name is Steven K. Herndon and I have been a practicing attorney
in the State of Alabama since 1992. I have been practicing law, primarily in
the Fifteenth Judicial Circuit of the State of Alabama since 1996. This
affidavit is based upon my personal knowledge and experience as an
attorney and is given in support of the defendant McWhorter Farms' and
Michael Adkins' Notice of Removal filed in the above referenced action.

       I have attached hereto as Exhibit "A" of copy of the Alabama
Uniform Traffic Accident Report. While not necessarily agreeing with the
facts or information contained in the Alabama Uniform Traffic Accident
Report, it reflects the investigating officer's knowledge, opinions, and
belief about the accident. While reports such as these are not necessarily
admissible at trial, these reports provide useful initial information regarding
an accident, and investigating officers such as the one on this report often
provide factual testimony regarding the occurrence of an accident they

1

reported. In the legal profession, many use accident reports to assist in initially evaluating lawsuits involving an accident.

Our firm has in the past subscribed to the *Alabama Jury Verdict Reporter* which reports verdicts in various counties throughout Alabama. I have attached hereto as Exhibit "B" a few Macon County verdicts as reported by the *Alabama Jury Verdict Reporter* during the time we subscribed to this publication. These cases involved minimal compensatory damages which resulted in adverse verdicts in excess of this Court's jurisdictional limits against the defendant.

Although the plaintiff Billingsley in the above referenced action does not set forth in his complaint a specific jury demand in excess of $75,000 exclusive of costs and interest, if he proved all the material allegations of his complaint including all of his damages and injuries alleged in the same, and based upon the history of verdicts rendered by juries in Macon County, then the amount in controversy more likely than not would exceed the jurisdictional limit of this court. This affidavit is directed toward the amount in controversy at the time of removal. The plaintiff must still carry his burden of proof as to liability and damages.


STEVEN K. HERNDON


SWORN TO AND SUBSCRIBED BEFORE ME this the 5th day of September,

2006.


Notary Public
My Commission Expires:

Sherri C. Horton
Notary Public
AL State at Large
My Comm. Expires June 26, 2010

2

# EXHIBIT 2-A

Alabama Department of

# Public Safety

Reply May Be Made To:

Driver License Division
P O Box 1471
Montgomery AL    36102-1471

## SEPTEMBER 1,2006

## CERTIFICATION

GIDIERE, HINTON, HERNDON, & CHRISTMAN ATTYS
60 COMMERCE  ST
MONTGOMERY  AL   36104

### *ACC REPORT # 6504328*

*I, PAT PRITCHETT, Deputy Custodian of records of the Driver license division,  Alabama Department of Public Safety, Montgomery, Alabama certify that the attached  accident report is a true copy of the original record in the  Department of Public Safety.*

PAT PRITCHETT

*Pat Pritchett*

Deputy Custodian, Accident reports and records
DRIVER LICENSE SUPERVISOR

Sworn to and subscribed before me this _____ 1 st _____ day of
September 20 06 .

*Christina A Brooks*                    Notary Public

My commission expires on____3/21/09____

ACC/REC 2



AST-27
REV. 1/91

MAR 3 1 2006

DPS 6504328
Accident No

# ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT

Shaded Areas To Be Used By Data Processing Only

Sheet 1 of 3 Sheet(s)    Microfilm No.    Local Case No:

| Date 03 14 2006 | Time 9:25 AM/MT | Day of Week M T W TH M | County 46 | City | Rural X | Highway Classification M—Municipal P—Private Prop. F—Federal C—County O—Other | Local Zone | 00 |
|---|---|---|---|---|---|---|---|---|

On Street Road or Highway: I085
At Intersection of or Between (Node 1): CO RD 97
And (Node 2): MONTGOMERY COUNTY LINE

NON COLLISION EVENT
01 – Overturned
02 – Fire/ Explosion
03 – Immersion
04 – Jackknife

COLLISION EVENT

| Street or Road # I085 | 7180 | Node # 2 Code 7120 | | Feet From Node 1 Node 2 |
|---|---|---|---|---|

Intersection Related: Node 1 Node 2 Not Int Related
Mile Post: 0 2 0 3 0
Control Access: 0
Main Rd ... 

First Harmful Event: 20    Event Location: 1    Distance to Fixed Object: NA FT

## UNIT 1

Driver Full Name: MICHAEL L. ADKINS 203 WEST HARPER LN    City and State: ALBANY, KY    Zip: 42602    Telephone No: 606-219-6528

DOB: 12 18 1979    Race W    Sex M    DL State KY    Driver License No: A96-764-988    DL Class DA    DL Status C

Place of Employment: MCWHORTER FARMS - ALBANY, KY    Liability Insurance Co: UNKNOWN    Social Security No: NA

Maneuver: 01    Travel Road Name: I085    Road Code: I085    Travel Direction: N E S W - Not on Rd U - Unk    97    Other Contr Circumstance    Prime Harm Event 01    Event Loc 1

Veh Year 1994    Make PTRB    Model NA    Body NA    V.I.N. D3527990GL    License Tag No 9NB 579    State KY    2006

Owner's Name: MCWHORTER FARMS    Street or R.F.D.: P.O. BOX 546    City: ALBANY    State KY    ZIP 42602

Speed Limit 70 MPH    Est. Speed 70    Citation Offense Charged: NONE    Vehicle Towed By Whom: THROWER'S TOWING (ROT)    To Where: THROWER'S TOWING (LOCAL)    Enter Point of Initial Impact 1

## UNIT 2

Driver Full Name: LUTHER L. BILLINGSLEY 3010 AL 14    City and State: AUBURN, AL    Zip: 36982    Telephone No: 334 826-3421

DOB: 02 02 1942    Race B    Sex M    DL State AL    Driver License No: 2395503    DL Class BM    DL Status C    CDL Status N

Place of Employment: ADAMS PRODUCE - BIRMINGHAM, AL    Liability Insurance Co: STATE FARM    Social Security No: NA

Maneuver: 01    Travel Road Name: I085    Road Code: I085    Travel Direction: N E S W - Not on Rd U - Unk    97    Other Contr Circumstance    Prime Harm Event 20    Event Loc 1

Veh Year 2002    Make FORD    Model 150    Body NA    V.I.N. 1FTRX17282NA14685    License Tag No 43G281C    State AL    2007

Owner's Name: SAME    Street or R.F.D.:    City:    State:    ZIP

Speed Limit 70 MPH    Est. Speed 60    Citation Offense Charged: NONE    Vehicle Towed By Whom: THROWER'S TOWING (ROT)    To Where: THROWER'S TOWING (LOCAL)    Enter Point of Initial Impact 5

CODES

Contributing Circumstances / Driver Maneuver / Pedestrian Action / Event Location

## SEATING

**Unit 1**

| 1 | 22 | 2 | 10 |
| 4 | 3 | 5 | 11 |
| 7 | 6 | 8 | |

Other Involved Unit (Circle One)
12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance/Codes Not Applicable

Other Involved Safety Equipment

**Unit 2**

| 2 | 42 | 2 | 10 |
| 4 | 3 | 5 | 11 |
| 7 | 6 | 8 | |

Other Involved Unit (Circle One)
12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstance/Codes Not Applicable

Other Involved Safety Equipment

### CODES

**SAFETY EQUIPMENT**
01 - None Installed
95 - Not Applicable
99 - Unknown (Any Type)
**Lap Belt Only**
11 - Fastened
12 Not Fastened
**Lap/Shoulder Harness**
21 - Lap Only Used
22 - Neither Used
23 - Shoulder Only Used
24 - Both Used
**Motorcycle Helmet**
38 - Used
39 - Not Used
**Air Bags**
41 - Deployed, Belts Used
42 - Not Deployed, Belts Used
45 - Deployed, Belts Not Used
44 - Not Deployed, Belts Not Used
**Child Restraint**
81 - Child Restraint Used
82 - Child Restraint Not Used
83 - None Used
**Pedal Cycle/Pedestrian**
91 Contrasting Clothing
92 Non-contrasting Clothing

## VICTIMS

| Name / Address | Unit No | Seat Pos | Injury Type | Age | Sex | Ejection | First Aid By |
|---|---|---|---|---|---|---|---|
| MICHAEL L. ADKINS 203 WEST HARPER LN ALBANY, KY 42602 | 1 | 1 | A | 26 | M | N | A |
| JACKSON HOSPITAL — Taken By ETS | | | | | | | |
| LUTHER L. BILLINGSLEY 3010 AL 14 AUBURN, AL 36832 | 2 | 1 | A | 64 | M | N | A |
| JACKSON HOSPITAL — Taken By ETS | | | | | | | |

**N/A**

### CODES

**Injury Type**
K Killed
B Bruise/Abrasion/Swelling
A - Visible or Carried from Scene
C - Not Visible—Has Pain/Faint

**Ejected**
N - Not
F - Fully
P - Partially
T - Trapped
U - Unknown
A - Not Applicable

**First Aid By**
A - Ambulance Attended
D - Doctor
M - Paramedic
E - Other
P - Police
U - Unknown
N - None

## NARRATIVE AND DIAGRAM

SEE PAGE 2

Officer's Opinion of What Happened: V2 WAS TRAVELING SOUTH ON I-85 IN THE RIGHT LANE WHEN V1, ALSO TRAVELING SOUTH ON I-85 IN THE RIGHT LANE, STRUCK V2 IN THE REAR AT THE AREA OF IMPACT. V2 THEN TRAVELED OFF THE RIGHT SIDE OF THE ROADWAY AND STRUCK SEVERAL TREES BEFORE COMING TO FINAL REST. V1 TRAVELED OFF THE RIGHT SIDE OF THE ROADWAY AND OVERTURNED BEFORE COMING TO FINAL REST. DRIVER 1 STATED THAT HE DID NOT SEE V2. THE VIN NUMBER FOR UNIT 1 WAS OBTAINED FROM NCIC AND THEN CONFIRMED BY THE OWNER.

## ROADWAY ENVIRONMENT

For Each Roadway Environment Field, Circle One Entry for Each Involved Unit:

**Unit 1**

| Contributing Road Defects | Surface Construction | Condition | Accident In Or Related To Road Construction Zone? | Material In Roadway (Contributing) | Material Source | Character |
|---|---|---|---|---|---|---|
| 1 - None | 1 - Asphalt | 1 - Dry | | 1 - None | 1 - Not Applicable | 1 - Straight—Level |
| 2 - Shoulders Low | 2 - Concrete | 2 - Wet | Yes    Yes | 2 - Rocks | 2 - Natural Environment | 2 - Straight—Down Grade |
| 3 - Shoulders High | 3 - Brick | 3 - Icy | | 3 - Trees/Limbs | 3 - Dropped From Vehicle | 3 - Straight—Up Grade |
| 3 - Holes, Bumps, Etc. | 4 - Unpaved | 4 - Snowy/Slushy | | 4 - Dirt | 4 - Already In Road, But Fell From Vehicle | 4 - Straight—Hillcrest |
| 8 - Other | 8 - Other | 5 - Muddy | | 8 - Other | 5 - Other | 5 - Curve—Level |
| | | 8 - Other | | | 9 - Unknown | 6 - Curve—Down Grade |
| | | | | | | 7 - Curve—Up Grade |
| | | | | | | 8 - Curve—Hillcrest |

**Unit 2** = 2

### Vision Obscured By:
0 - Not Obscured
1 - Buildings
2 - Signboards
3 - Trees, Crops, Bushes
4 - Blowing Snow/Sand
5 - Hillcrest
6 - Curve in Road
7 - Fog
8 - Parked Vehicle
9 - Moving Vehicle(s)
10 - Blinded by Sunlight
11 - Fire/Smoke
12 - Dust
13 - Blinded by Headlights
14 - Embankment
15 - Rain on Windshield
16 - Snow on Windshield
98 - Other
99 - Unknown

### Traffic Control
1 - Police Officer
2 - R.R. Crossing Gates
3 - R.R. Flashing Lights
4 - R.R. Cross Bucks/Pave Mark
5 - Pedestrian Control
6 - Traffic Signal
7 - Flashing Beacon
8 - Stop Sign
9 - Yield Sign
10 - Lane Control Device
11 - Flagger
12 - No Passing Zone
98 - Other

Traffic Control Functioning: Yes No N/A
DOT Railroad Crossing No: NA

### Opposing Lanes Separated By:
97 - None
1 - Paved Surface
2 - Unpaved Surface
3 - Broken Painted Line
4 - Solid Painted Line
5 - Concrete Barrier
6 - Metal Guard Rail
7 - Fence
8 - Other Barrier

### Trafficway Lanes
1 - One Lane
2 - Two Lanes
3 - Three Lanes
4 - Four Lanes
5 - Five Lanes
6 - Six Lanes or More

**One-Way Street** Yes No

## INVESTIGATION

**Light**
1 - Daylight
2 - Dawn
3 - Dusk
4 - Darkness—Road Not Lit
5 - Darkness—Road Lit

**Weather**
1 - Clear
2 - Cloudy
3 - Rain
4 - Snow
5 - Sleet/Hail
6 - Crosswinds
7 - Fog
8 - Other

**Locale**
1 - Open Country
2 - Residential
3 - Shop'g or Business
4 - Mfg. or Industrial
5 - School
6 - Playground
8 - Other

**Non-Vehicular Property Damage**
1 - None Visible
2 - Light
3 - Moderate
4 - Severe

Description: NA

Property Damage Description

| Time Police Notified | Time Police Arrived | Time EMS Arrived | Name of Photographer |
|---|---|---|---|
| 9:32 MT | 10:01 MT | 9:45 MT | TPR. J. JORDAN |

Witness Full Name: NA — Address — Telephone
Witness Full Name: NA — Address — Telephone

| Name of Investigating Officer | Officer ID | Agency ORI | Supervisor Reviewed |
|---|---|---|---|
| J. JORDAN | 1110 | AST4300 | 1056 |
| Name of Other Investigating Officers at Scene: NA | Officer ID | Agency ORI | |

The data on this report reflects my best knowledge, opinions and beliefs covering the accident, but no warrant is made as to the factual accuracy thereof.

Signature of Investigating Officer                    Date 3/15/2006

# ALABAMA
# UNIFORM TRAFFIC ACCIDENT REPORT

LOCAL CASE NO. 6504328

AST No. 34 Rev. 4/85

## SUPPLEMENTAL SHEET

SHEET __2__ OF __3__ SHEET(S)

| | Unit No. | Seat Pos. | Injury Type | Age | Sex | Ejec-tion | First Aid By |
|---|---|---|---|---|---|---|---|

**ADDITIONAL ACCIDENT VICTIMS**

| 3 | Name NA | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 4 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 5 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 6 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 7 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 8 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 9 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 10 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 11 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

| 12 | Name | | Address | | | | |
|---|---|---|---|---|---|---|---|
| | Taken to | | Taken by | | | | |

**ADDITIONAL NARRATIVE SPACE**

**DESCRIBE WHAT HAPPENED (Refer to vehicles by number)** -- *See Sheet One*

Unit No. 1
(same as on main report)

# Alabama Uniform Traffic Accident Report
## Truck/Bus Supplemental Sheet

5504328    AST-34T 1/94

Sheet 3 of 3 Sheets

## General Instructions

Complete this form for each qualifying vehicle ONLY if the accident meets BOTH of the following criteria:
1. The accident involved a qualifying vehicle (truck with 6 or more tires or Haz/Mat placard, or a bus designed to carry 16 or more, including driver) and;
2. The accident resulted in at least one of the following: A. one or more fatalities B. one or more persons injured and taken from the scene for immediate medical attention; or C. one Or more involved vehicles had to be towed from the scene as a result of disabling damage or had to receive assistance to leave.

## Screening Information

*Number of Qualifying Vehicles:*

Trucks with 6 or more tires or Haz/Mat placard 1

Buses designed to carry 16 or more (including driver) _____

*Number of Persons:*

Sustaining fatal injuries _____

Transported for *immediate* medical treatment 2

Number of vehicles towed from scene due to damage or provided assistance 2

## Vehicle Information

*Gross Vehicle Weight Rating (GVWR)*

A. Truck, tractor or bus    NA

B. Trailer or trailers (total)    65,000

Total GVWR for unit (A+B)    65000

Total number of axles 5

*Hazardous Material Involvement*

Did vehicle have a Haz/Mat placard _____ Yes    X    No

If Yes, include following information from placard

A. Name or 4-digit number from diamond or box  NA

B. The 1-digit number from bottom of diamond  NA

Was hazardous material released from THIS vehicle's cargo? _____ Yes   X   No

*Vehicle Configuration*    (circle one number)

1. Bus    2. Single unit truck (2 axles/ 6 or more tires)    3. Single unit truck (3 or more axles)
4. Truck with trailer    5. Truck tractor only (bobtail)    ⑥ Tractor with semi-trailer    7. Tractor with double trailers
8. Tractor with triple trailers    9. Unknown class heavy truck    0. Any other 4-tired vehicle

*Cargo Body Type*    (circle one *number*)

1. Bus    ② Van/enclosed box    3. Cargo tank    4. Flatbed    5. Dump
6. Concrete mixer    7. Auto transporter    8. Garbage/ refuse    9. Other

## Motor Carrier Information

NOTE: IF NOT A motor carrier, enter NONE under Carrier Name, 0 for None under Carrier Identification Numbers, and go to Sequence Of Events Section

Carrier Name MCWHORTER FARMS

Source (circle one number)    1. Vehicle side    2. Shipping papers    ③ Driver    4. Other

Carrier mailing address (Street or P.O. Box) P.O. BOX 546

City, State, Zip ALBANY, KY, 42602

Carrier Identification Numbers    ( _____ None = 0)

US DOT 1008165    ICC MC 426799    STATE NO. _____    STATE _____

## / Sequence of Events

Note: for THIS vehicle - list up to four    Event #1 10    Event #2 1    Event #3 3    Event #4 _____

*EVENT CODES*

Non-Collision    1. Ran off road    2. Jackknife    3. Overturned (rollover)    4. Downhill runaway
5. Cargo loss or shift 6. Explosion or fire    7. Separation of units    8. Other non-collision

Collision With 9. Pedestrian    10. Non-parked vehicle    11. Parked vehicle    12. Train
13. Pedalcycle    14. Animal    15. Fixed object    16. Other object

| Signature of Reporting Officer | Officer I D | Reporting Police Agency ORI | Date | Time | AM PM |
|---|---|---|---|---|---|
|  | 1110 | AST4300 | 3/15/2006 | 9:25 | MT |

| | Definitions | |
|---|---|---|

### Truck

A motor vehicle designed, used or maintained primarily for the transportation of property. For the purpose of this form the vehicle must also meet one of the following criteria:
- Have at least 6 tires on the ground, or
- Carry a Hazardous Material Placard.

### Bus

A motor vehicle providing seats for 16 or more persons including the driver and used primarily for the transportation of persons.

### Trailer

A non-power vehicle towed by a motor vehicle.

### Reportable Accident

A highway related incident normally investigated by a police officer and reported on a standard accident report form involving one or more trucks or buses (as defined here) which results in:
- One or more fatalities, or
- One or more non-fatal injuries requiring transportation for the purpose of obtaining immediate medical treatment, or
- One or more of the vehicles being removed from the scene as a result of disabling damage, or
- One or more vehicles requiring intervening assistance before proceeding under its own power.

## Typical Vehicle Silhouettes

1. Bus




2. Single unit truck - 2 axles / 6 tires




3. Single unit truck - 3 axles





4. Truck with trailer


5. Truck tractor (bobtail)


6. Tractor with semi-trailer


7. Tractor with double trailers


8. Tractor with triple trailers


## Typical Hazardous Material Placards



# EXHIBIT 2-B

# The Alabama Jury Verdict Reporter
## The Most Current and Complete Summary of Alabama Jury Verdicts

November, 2002          Statewide Jury Verdict Coverage - Published Monthly          2 A.J.V.R. 11

*Unbiased and Independently Researched Jury Verdict Results*

## In This Issue

**Jefferson County**
Dogbite - $101,177 ............................................... p. 4
Defamation/False Light - $14,000 ..................... p. 4
Medical Negligence - Defense verdict .............. p. 6
Auto Negligence - $3,500 ................................... p. 8
Auto Negligence - $50,000 ................................. p. 9
Workplace Negligence - Defense verdict .......... p. 10
Slip and Fall - Defense verdict .......................... p. 11
Auto Negligence - $3,500 ................................... p. 12
Uninsured Motorist - Defense verdict ............... p. 13
**Mobile County**
Auto Negligence - $20,000 ................................. p. 11
Auto Negligence - Defense verdict .................... p. 12
**Montgomery County**
Medical Negligence - $500,000 .......................... p. 1
Negligent Security - $2.00 .................................. p. 10
**Tuscaloosa County**
Hospital Negligence - $350,000 ......................... p. 2
Auto Negligence - Defense verdict .................... p. 12
**Chambers County**
Insurance Fraud - $3,200,000 ............................. p. 3
Contract - $1.00 .................................................. p. 13
**Madison County**
Auto Negligence - $30,000 ................................. p. 3
**Baldwin County**
Auto Negligence - $50,000 ................................. p. 4
**Federal Court - Birmingham**
Race Discrimination - Defense verdict .............. p. 4
**Macon County**
Truck Negligence - $500,000 .............................. p. 5
**Barbour County - Eufaula**
Utility Negligence - $45,000 .............................. p. 5
Auto Negligence - Defense verdict .................... p. 11
**Limestone County**
Auto Negligence - $1,500 ................................... p. 6
**Pickens County**
Fraudulent Suppression - $280,000 .................... p. 6
**Colbert County**
Auto Negligence - $15,000 ................................. p. 7
**Calhoun County**
Bank/Auto Dealer Fraud - $31,000 .................... p. 7
**Federal Court - Montgomery**
Civil Rights - Defense verdict ........................... p. 8
**Chilton County**
Auto Negligence - Defense verdict .................... p. 8
**Cleburne County**
Truck Negligence - Defense verdict ................... p. 8
**Federal Court - Gadsden**
Uninsured Motorist - $50,000 ............................ p. 9
**Sumter County**
Malicious Prosecution - $100,000 ..................... p. 9
**Lauderdale County**
Investment Fraud - Defense verdict .................. p. 10
**Etowah County**
Negligent Entrustment - $8,100 .......................... p. 11

**Cullman County**
Negligent Repair - Defense verdict ................... p. 12
**Lee County**
Auto Negligence - Defense verdict .................... p. 12
**Fayette County**
Construction Negligence - $15,000 .................... p. 13
**Morgan County**
Auto Negligence - Defense verdict .................... p. 14
**The Chief Goes on Trial** ............................... p. 14

## Civil Jury Verdicts

Complete and timely coverage of civil jury verdicts in Alabama including circuit, presiding judge, parties, case number, attorneys and results.

## Medical Negligence - A psychologist became romantically linked with a lawyer she was treating, the lawyer and his wife blaming her employer for not only this ethical breach, but also abandoning his care after the affair was discovered

*Chancey v. East Alabama Behavioral Medicine*, 98-2355
Plaintiff: Frank H. Hawthorne, Jr. and C. Gibson Vance, *Hawthorne Hawthorne & Vance*, Montgomery and Randy Myers, Montgomery
Defense: Michael K. Wright, *Starnes & Atchison*, Birmingham
Verdict: $500,000 for plaintiff
Circuit: **Montgomery**, 9-13-02
Judge: Eugene W. Reese

Starting in the summer of 1996, Phillip Chancey, then age 36 and a Montgomery lawyer, sought treatment for depression and anxiety at East Alabama Behavioral Medicine. Assessed by a psychiatrist, he was referred to a staff psychologist, Kimberly Whitchard. At the time, Chancey's mental state was described as precarious, related to several key life stressor events, (1) a prior affair with a law firm employee, (2) financial problems, and (3) an addiction to painkillers, all of which contributed to a strained marriage to his wife, Beth.

Whitchard's treatment included hypnosis, which led to Chancey's recollection of prior lives, including one where he lived as Tristan, an ancient warrior. Some four months into the counseling, Whitchard and Chancey began to discuss not only his considerable problems, but also their mutual affection for each other. An ethical boundary of sorts had been breached.

While Whitchard then stopped treating her patient, she commenced a new sort of activity -- she began to sleep with her patient. The trouble started soon after when Whitchard's bosses, Joe Beachum and Ed Sweeney, discovered pager notes from Chancey to Whitchard. Importantly, those notes evidenced the affair.

There were fact disputes about what happened next. Whitchard recalled the bosses were not so interested in Chancey, as they were in protecting Behavioral Medicine. It was her memory that they ordered her to falsify treatment records to show that her therapy of Chancey ended because of Chancey's feelings towards her. This version was not reflected in her original notes. For their part, Beachum and Sweeney denied playing any role in falsifying the records.

Other events followed this discovery. Initially, Behavioral Medicine fired Whitchard. It hired her back two months later. Her psychology career was derailed again in late 1998, a state licensing board suspending her for six months, all as a result of her relationship with Chancey. She has since regained her license and practices in Mobile.

There was another civil prosecution, this time Chancey and his wife suing Whitchard and Behavioral Medicine. Whitchard settled with Chancey for $5,000. At trial, she testified as discussed above, implicating her former employer in the falsification scheme. However, for her part, she focused on the fact her sexual relationship with Chancey only began *after* the therapy had ended.

At trial and against Behavioral Medicine only, the Chanceys argued the case was not about sex, but instead, (1) boundary violations and (2) patient abandonment. An expert, Barry Burkhart, Psychology, Auburn, called the violation an astonishing breach of the standard of care, noting a 24-month period gap should

fraud. Importantly, Gallups and her account were flagged for fraud.

Besides reporting the check, essentially flagging Gallups' account, it also penned a letter on 2-1-00. Sent to Gallups, it demanded payment for the $400 check, indicating it would remain in Toy R Us bad check files until paid. Gallups was not happy to have the letter, believing it had a threatening tone. Especially offended, Gallups wondered why it had been sent, as Toy R Us knew almost immediately the check was bad.

Compounding the error, she argued, the whole mess could have been averted if Toy R Us had followed its own policies. Namely, its policies prohibited counter checks and mandated that identification be confirmed. Had Toy R Us done either, the phony check would never have been accepted in the first place.

From this fact set, Gallups filed suit and alleged two counts, (1) defamation and (2) false light. She asserted defamation in flagging her account to SCAN and Equifax, even though it knew she had not written the check. This also placed her in the false light of a passing bad check. Her associated mental anguish included the affect on her credit rating and the ability to use checks. Gallups, a legal assistant at Goldberg & Associates, only sought compensatory damages at trial.

Toys R Us defended the case and denied there was any defamation. It postured it had only done one thing -- flag her account as having written a bad check. This was not only entirely reasonable, it was in fact, completely true. The source of the problem, Toy R Us focused, was not its conduct, but Gallups failure to open another account with a new account number. To this day, she continues to use the same account.

A Birmingham jury resolved this dispute, returning a verdict for Gallups. Her damages were valued at $14,000. A consistent judgment was entered by Judge Boohaker.

## Truck Negligence - **Plaintiff's tired husband pulled to the shoulder of the interstate for a nap; moments later, a truck driver crashed into the parked car**

*Taylor v. Landair Transport & Hodges*, 01-0224
Plaintiff: Robert Simms Thompson, Tuskegee
Defense: William C. McGowin, *Bradley Arant Rose & White*, Montgomery
Verdict: $500,000 for plaintiff
Circuit: **Macon**, 8-29-02
Judge: Howard F. Bryan

Arlena Taylor, age 59 of the Boston area, was on vacation with her husband, Curtis, on 8-22-01. Their travels took them into Alabama and onto southbound I-85. As fate would have it, as they entered Macon County, Curtis was overcome with fatigue. Not wishing to drive in a sleepy state, he elected instead to safely pull to the shoulder of the highway, traffic speeding by just a few feet away.

This same day, Billy Hodges was driving a tractor-trailer for Landair Transport. An instant later and for reasons that aren't clear, Hodges veered off the interstate and collided with the Taylor vehicle. Moderate damage resulted.

Still at the scene of the crash, no injury was reported. Their car damaged, the Taylors took a train back to Boston. While suffering from neck and back pain, Arlena did not first seek care until six days later.

Her doctor, Abraham Swartz, GP, Dorchester, MA, identified a persistent soft-tissue injury, sending Arlena to a course of physical therapy. It was his position that a permanent injury was sustained, the collision having sped up the degenerative process.

Plaintiff's incurred medical bills were approximately $15,000. She is also unable to work, having previously been employed at a department store. The injury mechanism was linked to her body being wrenched in the crash.

Hodges and Landair Transport defended the case on damages, eliciting proof from Swartz on cross-examination. Namely, it initially appeared that Arlena had only a soft-tissue strain, followed by three months of physical therapy. This was, defendants thought, consistent with a temporary soft-tissue injury. The ongoing pain, it was further argued, was likely exaggerated and a response to litigation.

A Tuskegee jury deliberated the case, returning a verdict for Arlena, awarding

her $500,000. Judge Bryan entered a consistent judgment. Pending is defendants' motion for a new trial that has called the damage award "patently excessive," especially for a soft-tissue injury with $15,000 of medicals. More explosive, it cited newly discovered evidence, namely, that Arlena had prior pain clinic treatment for back symptoms in the 1990. However, in deposition, interrogatories and at trial, she denied any prior care, defendants suggesting she suppressed these facts. When reviewed by the AJVR, plaintiff had not responded to the motion.

## Utility Negligence - **The water company dug a hole in plaintiff's yard to place water meter; exiting her car, plaintiff stepped into the hole, suffering a meniscal tear**

*Jackson v. Eufaula Water Works*, 00-0087
Plaintiff: Richard F. Horsley, *Goozee King & Horsley*, Birmingham
Defense: Jimmy S. Calton, Sr. and Jimmy S. Calton, Jr., *Calton & Calton*, Eufaula
Verdict: $45,000 for plaintiff
Circuit: **Barbour-Eufaula**, 8-23-01
Judge: Burt Smithart

Ozzie Jackson, age 60, lives in Eufaula and on 3-4-99, the local Water Works was digging in her yard. Particularly, it was relocating water meters near the sidewalk. For reasons that aren't clear, on this day, Jackson prepared to leave her house.

Entering her car, she started to drive away. However, Jackson didn't use the driveway, she drove directly across the yard. A moment later, her car collided with the hole, partially tilting into the air. When Jackson got out of the car, she stepped into the hole, twisting her knee.

She has since treated for a meniscal tear with Dr. Francis Moll, Orthopedics at the Hughston Clinic. He later performed an arthroscopic repair. Jackson's medical bills are unknown.

In this lawsuit, Jackson sued the Water Works, criticizing it for failing to properly mark and otherwise barricade the dangerous hole. Water Works defended and postured that plaintiff's contributory negligence should defeat the claim.

Namely, it was her decision to drive her car through the yard, not using the driveway. Then, her car hanging off-kilter in the hole, she stepped out of it. To its care, Water Works postured that the hole was properly marked with an orange cone. Damages were also diminished, defendant noting that while injured on 3-4-99, Jackson did not first seek care until the middle of April.

# The Alabama Jury Verdict Reporter

## The Most Current and Complete Summary of Alabama Jury Verdicts

March, 2002     Statewide Jury Verdict Coverage - Published Monthly     2 A.J.V.R. 3

*Unbiased and Independently Researched Jury Verdict Results*

## In This Issue

**Jefferson County**
Auto Negligence - Defense verdict   p. 4
Assault - $4,474   p. 5
Auto Negligence - Defense verdict   p. 7
Underinsured Motorist - $20,000   p. 7
Auto Negligence - $6,500   p. 8
Products Liability - Defense verdict   p. 9
Auto Negligence - Defense verdict   p. 9
**Baldwin County**
Bad Faith - $150,000   p. 1
Underinsured Motorist - $65,000   p. 4
**Montgomery County**
Auto Negligence - $22,000   p. 1
Non-Compete Contract - $30,000   p. 7
Auto Negligence - $2,500   p. 9
**Lee County**
Auto Negligence - $60,000   p. 2
**St. Clair County - Pell City**
Auto Negligence - Defense verdict   p. 2
**Mobile County**
Auto Negligence - Defense verdict   p. 2
**Russell County**
Auto Negligence - Defense verdict   p. 3
Auto Negligence - Defense verdict   p. 10
**Colbert County**
Auto Negligence - Defense verdict   p. 3
Premises Liability - Defense verdict   p. 8
**Macon County**
Uninsured Motorist - $150,000   p. 3
**Walker County**
Medical Negligence - Defense verdict   p. 4
Auto Negligence - $8,013   p. 8
**Dallas County**
Slip and Fall - Defense verdict   p. 5
**Henry County**
Auto Negligence - Defense verdict   p. 5
**Lauderdale County**
Employment Retal. - Defense verdict   p. 6
**Calhoun County**
Auto Negligence - Defense verdict   p. 6
**Franklin County**
Negligent Hiring - Defense verdict   p. 6
**Morgan County**
Auto Negligence - $2,000   p. 7
**Tallapoosa County - Alexander City**
Auto Negligence - Defense verdict   p. 9

## Civil Jury Verdicts

Complete and timely coverage of civil jury verdicts in Alabama including circuit, presiding judge, parties, case number, attorneys and results.

**Bad Faith** - After her home burned, an elderly widow alleged her insurer failed to timely resolve her claim
*Jenkins v. Alfa Mutual*, 00-0179
Plaintiff: Russell J. Watson, *Ball Koons & Watson*, Bay Minette
Defense: Craig W. Goolsby, *Carr Allison Pugh Howard Oliver & Sisson*, Daphne
Verdict: $150,000 for plaintiff
Circuit: **Baldwin**, 12-14-01
Judge: Robert Wilters

On 5-14-99, Sara Jenkins, an elderly widow, lived alone at her home in Foley. On this day, a fire raged and the residence was destroyed. An Alfa Mutual insured, Jenkins made a claim and began to work with an adjustor, Thomas Bowden. It wasn't long, in Jenkins' perspective, until the trouble started.

She believed Alfa Mutual had acted to low-ball her claim, utilizing a captive builder to perform the home repairs. Because of the failure to properly investigate the claim, she remained out of her house for an extended period of time. As a result of the ongoing tort, Jenkins suffered significant emotional distress, leading to a subsequent stroke.

This lawsuit began as a breach of contract, but in the interim, Alfa Mutual ultimately paid over $200,000 towards her claim. As the litigation progressed, it morphed from contract to bad faith and it was this count that was tried in Bay Minette. If Jenkins prevailed, she sought the imposition of compensatory and punitive damages.

Alfa Mutual defended the case and thought Jenkins had totally mischaracterized its nature. Namely, it was not about the denial of a claim, insurer noting the sums it had expended to take care of its insured. The dispute was not over whether payment should be made, but in what amounts. In that regard, Alfa Mutual explained there had been disagreements, it posturing that Jenkins had wanted repairs and expenditures in excess of what she had lost. Accordingly, such a dispute over the price was just that and that alone, not constituting bad faith.

The verdict was for plaintiff, the jury awarding her $150,000 in compensatory damages. Punitives were rejected. A consistent judgment has since been entered for Jenkins.

**Auto Negligence** - Rear-end crash on the I-65 Alabama River Bridge resulted in a foot injury
*Taylor v. Madson*, 01-1636
Plaintiff: J. Doyle Fuller, *Law Offices of Doyle Fuller*, Montgomery
Defense: Ronald G. Davenport, *Rushton Stakely Johnston & Garrett*, Montgomery
Verdict: $22,000 for plaintiff
Circuit: **Montgomery**, 2-13-02
Judge: Tracy S. McCooey

It was 12-22-99 and Herbert Taylor, age 58, drove on southbound I-65 in Montgomery. Coming onto the Alabama River Bridge, traffic was slowing for an accident at Clayton Street. Taylor saw the congestion and was able to come to a stop. Also on I-65 was Dale Madson, from Wisconsin, towing a boat trailer behind his pick-up.

While Madson wasn't speeding, he explained he simply didn't have time to stop. An instant later, he crashed into the rear of Taylor's sedan, an MVA that resulted in moderate damage. Fault remained in issue, Madson citing the sudden emergency. For his part, plaintiff argued Madson had plenty of time to appreciate that the traffic had stopped, but for his inattention.

Fault aside, Taylor was briefly knocked out at the scene, reporting that the wreck left him shaken. Besides soft-tissue symptoms, he has also complained of near constant ankle and foot pain, all related to this wreck having aggravated an arthritic condition. He has treated with Dr. Donald Hodurski, Orthopedics, Montgomery, who identified the injury and that Taylor will likely need a surgery in the future.

Its pricetag was estimated at $18,000. Taylor's incurred medicals were $4,400 and lost wages from a sales position were approximately $16,000. Madson defended on fault as noted above, also diminishing the claimed injury,

clear to make the left turn. As he made it, Presley broadsided his car in a moderate collision, spinning it around 270 degrees.

For her part, Presley's liability theory was clear. Augustus made a sudden left turn in front of her, apparently occasioned by his impatience as he had waited several minutes for traffic to clear. His response was equally simple -- when he commenced the turn, the road was clear and only because of Presley's excessive speed was there a collision. His best evidence she was speeding, it was argued, was the force of the impact which spun his vehicle around.

Fault issues aside, Presley has since complained of soft-tissue neck pain, plus for a brief time, headaches and nausea. She treated with Dr. Joseph Ray, Orthopedics, Mobile, incurring medical bills of $8,576. Impaired from her nurse position, lost wages were approximately $10,000.

Augustus defended on fault as noted above, also diminishing the claimed injuries. He noted than after this wreck, when applying for a new job, Presley had denied any prior injury. Moreover and in a coincidence, she was hired to treat defendant's grandmother. His mother recalled that Presley completed that treatment without incident.

The disputes would be resolved by a Mobile jury. The verdict was for Augustus and Presley took nothing. A defense judgment followed.

## Auto Negligence - Mother and daughter both claimed injury after a minor crash in a funeral home parking lot
Ingram v. Farley, 00-0402
Plaintiff: Kenneth L. Funderburk, *Funderburk Day & Lane*, Columbus, GA
Defense: Stanley A. Martin, Opelika
Verdict: Defense verdict
Circuit: **Russell**, 2-14-02
Judge: Albert L. Johnson

In Phenix City on 2-19-00, there was a minor MVA in the parking lot of the Taylor Funeral Home. While stopped in the parking lot, Diana Ingram, age 44, was rear-ended by Robert Farley. A passenger with Ingram was her daughter, Shermeka, then age 16.

Both mother and daughter claimed injury, treating that day at the ER in Columbus, GA. They have since complained of soft-tissue symptoms, following with a chiropractor, Jay Brodwyn, Columbus, GA. More seriously injured, Brodwyn called mother's

symptoms myofascial. The record does not reflect the incurred medicals.

In this action, the mother-daughter tag team sought money damages from Farley. He minimized the crash, noting that initially, there was no damage and no injury, causing him to leave the scene. Only later were the police called. To the claimed injury, Farley called the symptoms entirely subjective.

As an aside, Farley also turned his focus to chiropractor Brodwyn. He impeached the doctor on two grounds, (1) his advertisements that were aimed at lawyers, hoping to generate business from car wrecks, and (2) an earlier suspension in Georgia for six months, predicated on false advertising, i.e, Brodwyn offered a free first visit to new customers, but didn't deliver.

Back to the tort claim, the verdict in Phenix City on Valentine's Day was for the defendant, the panel rejecting the claims of both plaintiffs. A defense verdict followed for Farley.

## Auto Negligence - Defendant exonerated in an unusual crash as after he blocked the roadway, causing plaintiff to stop, plaintiff was then rear-ended by a third car
Head v. Hardin, 01-0175
Plaintiff: Charles J. Kelley, *Almon McAlister Baccus Hall & Kelley*, Tuscumbia
Defense: Preston S. Trousdale, Jr., *Jones & Trousdale*, Florence
Verdict: Defense verdict
Circuit: **Colbert**, 2-21-02
Judge: Harold V. Hughston, Jr.

This case started on 3-20-00 as Jeffrey Hardin pulled from the parking lot of a car dealer across Hwy 43 in Muscle Shoals, intending to turn left. Partially into the median, Hardin was waiting for traffic to clear. Importantly, while he was in the median, a part of his vehicle still blocked traffic on Hwy 43.

As this was happening, Robert Head, age 56, was approaching on Hwy 43. Seeing the road was blocked by Hardin's car, Head came to a stop. That set the stage for the third player in our drama, Clarence Mills. Also on Hwy 43, he couldn't stop in time, having just changed lanes from behind a tractor-trailer. Seeing Head at the last moment, Mills rear-ended his car. Incidentally, Hardin's vehicle was not involved in the collision.

Head has since treated for soft-tissue symptoms with Dr. Brad McAnelly, Orthopedics, Muscle Shoals. The

incurred medicals are not reflected in the record. Procedurally, Head first settled with Mills for his policy limits of $20,000. He then pursued Hardin.

His liability theory was predicated on Hardin having blocked the roadway. It was that negligence, concurrent with the fault of the since-settled Mills, that caused his injuries. Hardin defended on three grounds. First, he minimized the crash in the first place, calling it just a *clip*. As importantly and in any event, any fault by Hardin was superseded by Mills. Finally and to contributory fault, Head was also to blame as when stopping behind Hardin, he never honked his horn or took any sort of action to go around the stopped car.

Tried in February in Tuscumbia, the jury verdict was for Hardin, Head taking nothing. Judge Hughston entered a consistent defense judgment. Not implicated by the verdict as well was a silent UIM carrier, State Farm, that had opted out from participating at trial.

## Uninsured Motorist - Phantom driver ran plaintiff off the road and into a tree
Fitzpatrick v. Allstate, 00-0402
Plaintiff: Robert Simms Thompson, Tuskegee
Defense: Roger W. Varner, *Holloway & Associates*, Birmingham
Verdict: $150,000 for plaintiff
Circuit: **Macon**, 2-7-02
Judge: Albert L. Johnson

It was a tough summer for Mary Fitzpatrick, age 52 and on 7-31-00, it became more difficult. Having just lost her long-time job as a spinner, she was traveling to the unemployment office on Hwy 110 near Union Springs. From the opposite direction, a phantom driver encroached her lane.

Fitzpatrick took evasive action and ran off the road into a tree. There was no contact with the unknown vehicle. The crash was significant and her vehicle was totaled. She suffered what initially looked to be just bruising, associated with her head and chest contacting the steering wheel.

Fitzpatrick has since complained of soft-tissue symptoms, but more troubling, a cognitive disorder and vertigo, all secondary to striking the steering wheel. The record indicates her medical bills were approximately $3,100.

The identity of the other driver would never be known and in this action, she sought uninsured motorist benefits from her insurer, Allstate. The limits of that

coverage was $60,000.

Allstate defended both on liability and facts. To the wreck, it cited an initial report by plaintiff that she ran off the road because of a puddle; Fitzpatrick denied that. In diminishing the claimed head injury, Allstate looked to her lengthy history of sinus problems, all as contained in medical records.

Heard in Tuskegee, the verdict was for Fitzpatrick, the jury awarding her $150,000. Exhausting the policy limits, the court entered a judgment for plaintiff in the sum of $60,000. It has been satisfied.

## Medical Negligence - Jail inmate died of an acute diabetic condition after refusing hospital care; lawsuit criticized hospital for releasing inmate before the results from a critical blood test had been returned

*Cook v. Baptist Medical Center*, 96-0363
Plaintiff: Stephen A. Strickland, *Jaffe Strickland & Drennan*, Birmingham
Defense: Jasper P. Juliano, *Parson Lee & Juliano*, Birmingham
Verdict:  Defense verdict
Circuit:  **Walker**, 1-23-02
Judge:   John L. Madison, Jr.

In May of 1994, Kenneth Cook, age 38, was a detainee at the Walker County Jail. For several weeks, Cook was sick, his symptoms apparently related to heart disease. On 5-7-94 they were bad enough that he was taken to Walker Baptist Medical Center. He was treated by a nurse, Laurie Hunter.

A variety of testing commenced and it was indicated that a tube be passed into his stomach, particularly as an ulcer was initially suspected. Cook became unruly and refused treatment, insisting that he be taken back to jail. Signed out of the hospital, that's what happened. Before leaving, Hunter had generically advised him there were risks to leaving, including death.

Importantly, before Cook left, the hospital ran a test, an electrolyte study. However, the results were not back before he left. When they were returned, they revealed something troubling, that Cook had a rare condition, diabetic ketoacidosis, that is fatal if not treated.

Back at the jail, Cook got worse and three days later, he had died. Pathology proof linked his death to the diabetic condition. In this action, his estate sued the hospital, acting through its nurse, Hunter. It alleged Hunter erred in several ways, by (1) not imploring Cook to stay at

the hospital and (2) once released, to not then advise him of the test result. Those errors, estate alleged, led to Cook's death, because serious, the condition was very treatable.

Nurse experts on liability for the estate were Deborah Calhoun, Charleston, SC and Susan Atkinson, Birmingham. They focused on Hunter's failure to follow-up with Cook. Causation proof came from a treating doctor, Marshall Boone, Family, Birmingham.

Defendants moved for summary judgment on causation grounds, arguing that even if Hunter had reported the results, there was no proof Cook would have left the jail. Contributory negligence was also cited. The trial court agreed and the matter was dismissed. Estate appealed and argued fact disputes existed, (1) Cook told inmates he wanted to go to the hospital and (2) as to contributory negligence, Hunter's blanket statement that *he could die* wasn't sufficient to advise him of the danger. In December of 2000, Justice England writing, the Supreme Court agreed and reversed.

Back to trial a year later, Hunter and the hospital defended on causation and contributory negligence as developed above. To the conduct of decedent, he was unruly and knew full well the risks associated with disregarding medical advice. It further postured and as opposed to plaintiff's experts, that once Cook was released there was no duty to follow-up. Identified nurse experts for defendants included Joy Morris and Cindy Perkins.

The case started in Jasper, took a trip to Montgomery and was finally tried back in Jasper more than six years after the alleged tort had occurred. The verdict was for Hunter and the hospital, the estate taking nothing. A defense judgment followed.

## Auto Negligence - Storm knocked out power affecting a red light intersection; it flashed red for defendant, yellow for plaintiff

*Smith v. Littlejohn*, 01-0151
Plaintiff: J. Allen Schreiber, *Schreiber & Petro*, Birmingham
Defense: Celeste Patton Armstrong, *Holloway & Associates*, Birmingham
Verdict:  Defense verdict
Circuit:  **Jefferson**, 11-28-01
Judge:    Edward L. Ramsey

On the evening of 7-20-00 there was a storm in Birmingham and power was widely out. Particularly, at the intersection of Cahaba Heights Road and

Cross Haven Drive, the red light had bee knocked out. The next morning, travelin on Cahaba Heights, Terry Smith, age 46, approached the intersection with Cross Haven. For Cahaba Heights traffic, the light flashed yellow. For those on Cross Haven, it flashed red.

At this moment, from Smith's perspective, the light flashed yellow and he had the right of way. Accordingly, he proceeded into the intersection. Conversely, Mary Littlejohn, approached Cahaba Heights on Cross Haven. It was her belief that the flashing red light signified that the power-starved intersection was now a four-way stop.

When it was her turn, she pulled forward and into the intersection. A moderate collision resulted. An independent witness to the wreck indicated that traffic had treated the intersection as a four-way stop. This wa: contradicted by the investigating police officer who testified at trial that it was Smith who had the right of way.

However it happened, Smith was hurt the crash. While not immediately treatin he later drove himself to the ER and complained of knee pain. Upon referral from his family doctor, Smith saw Dr. Richard Elkus, Orthopedics, Birmingham who performed surgery to repair an ACL tear. Plaintiff's medicals were $12,000 and lost wages were some $3,000.

Littlejohn defended on fault as noted above, also developing that the injury wa not causally related to the MVA. Deliberating the case for twenty minutes in Birmingham, a defense verdict was returned for Littlejohn and Miller took nothing. A defense judgment followed.

## Underinsured Motorist - Roll-ove crash resulted in soft-tissue symptoms. the verdict exceeding the $20,000 threshold of coverage

*Williams v. USAA Insurance*, 00-0859
Plaintiff: J. Clark Stankoski, *Stankoski & Stankoski*, Fairhope
Defense: Norman H. Stockman, *Hand Arendall*, Mobile
Verdict:  $65,000 for plaintiff
Circuit:  **Baldwin**, 12-12-01
Judge:   James H. Reid, Jr.

On 5-15-00, Sherry Williams, age 28, was a passenger in a car that traveled on Battleship Parkway in Spanish Fort. Colliding with a car driven by Theresa Vickmark, Williams' vehicle flipped.

With assorted soft-tissue symptoms ar generally banged up, Williams was taken to the ER at Spring Hill. With neck and back pain, she has since followed with D

# The Alabama Jury Verdict Reporter

### The Most Current and Complete Summary of Alabama Jury Verdicts

June, 2003                    Statewide Jury Verdict Coverage - Published Monthly                    3 A.J.V.R. 6

*Unbiased and Independently Researched Jury Verdict Results*

## In This Issue

**Jefferson County**
Medical Negligence - Defense verdict       p. 4
Underinsured Motorist - $120,000           p. 8
Title Company Negligence - Zero            p. 9
Auto Negligence - Defense verdict          p. 11
**Mobile County**
Construction Neg. - Defense verdict        p. 2
Negligent Entrustment - $37,750            p. 9
Truck Negligence - Defense verdict         p. 11
**Bullock County**
Electrical Negligence - $3,000,000         p. 1
**Chambers County**
Organ Transplant Negligence - $200,000     p. 4
Municipal Negligence - $1,500              p. 10
**Montgomery County**
Medical Negligence - Defense verdict       p. 5
Prison Negligence - Defense verdict        p. 10
**Federal Court - Birmingham**
Auto Negligence - Defense verdict          p. 5
**Madison County**
Medical Negligence - Defense verdict       p. 6
**Macon County**
Underinsured Motorist - $1,000,000         p. 7
**Shelby County**
Auto Negligence - Defense verdict          p. 7
**Conecuh County**
Police Assault - Defense verdict           p. 7
**Federal Court - Montgomery**
Medical Negligence - Defense verdict       p. 8
**Elmore County**
Negligent Entrustment - Defense verdict    p. 9
**Baldwin County**
Premises Liability - Defense verdict       p. 10
**Marshall County**
Underinsured Motorist - $70,000            p. 11

## Civil Jury Verdicts

Complete and timely coverage of civil jury verdicts in Alabama including circuit, presiding judge, parties, case number, attorneys and results.

## Electrical Negligence - Pulling too far forward in the parking lot of Outback Steakhouse, plaintiff was electrocuted when he attempted to remove an uninsulated guy wire that was attached to his vehicle

*Moore v. Alabama Power*, 01-0031
Plaintiff: R. Graham Esdale, Jr. and R. Graham Esdale, Jr., *Beasley Allen Crow Methvin Portis & Miles*, Montgomery and Lynn W. Jinks, III, *Jinks Daniel & Crow*, Union Springs
Defense: Sterling G. Culpepper, Jr. and Teresa G. Minor, *Balch & Bingham*, Montgomery and Walter E. McGowan, *Gray Langford Sapp McGowan Gray & Nathanson*, Tuskegee
Verdict:  $3,000,000 for plaintiff
Circuit:  **Bullock**, 4-28-03
Judge:  Burt Smithart

David Moore, age 50 and of Union Springs, drove alone to Montgomery on 2-21-01 to have dinner at Outback Steakhouse. Into the parking lot, Moore, a hunting and fishing guide, pulled forward too far and off the asphalt. There was no concrete bumper. Initially, Moore thought nothing of it. Unknown to him, his Nissan sedan had come in contact with an unelectrified guy wire -- a diagonal cable, it secured a pole. Pushing it forward, the wire tightened as it became caught on Moore's bumper. The electrical connection was originally designed in 1969 by Alabama Power Company.

Inside Outback, Moore enjoyed a steak, consuming a single rum and coke. Some forty-five minutes later, he exited to the parking lot. Immediately, Moore discovered his vehicle was hung on the guy wire. Into his trunk, he took a pair of pliers to wire, hoping to loosen it.

This was Moore's second fateful decision of the night, besides having driven into the guy wire. As he began to pry the guy wire away from his car, he was unaware that just below its slack was an electrified stinger line. 7,200 volts of electricity ran through the stinger.

Moore pried the guy wire and it loosened. At just that instant, it came in contact with the stinger line. Moore was electrocuted, the current running into his

° ° °Just Published ° ° °

## The AJVR 2002 Year in Review

Have you seen the 2002 Year in Review?
Have you seen the articles about it the *Tuscaloosa News,* the *Mobile Register* and the *Huntsville Times*?
Your clients are reading about the book.
Your opponents have their copies and are using its detailed analysis to their benefit.  Can you afford to practice without it?

*Isn't it time you ordered your copy?*

## Order the 2002 AJVR Year in Review -

Just $150.00, shipping included
*More details available online at Juryverdicts.net*

Also for Warren was Dr. John Fanning, Internist, Huntsville, who added a second layer to the defense. While the infection was properly treated, Fanning thought, Sergent ultimately expired because of underlying cirrhosis, related to a history of alcohol abuse. This also implicated contributory fault, Warren explaining that if the alcoholism was properly disclosed before the hysterectomy, he likely would have consulted with an expert before performing it.

Deliberating ninety minutes, the verdict was for Warren, a jury in Huntsville awarding the estate nothing. A defense judgment followed.

## Underinsured Motorist -
**Tortfeasor's tire blew out and he crossed the interstate median; almost stopped in the opposite lane, plaintiff crashed into him**
*Smith v. Allstate*, 00-0054
Plaintiff: Jock M. Smith, Brian Strength and Tiffany N. Johnson, *Cochran Cherry Givens & Smith*, Tuskegee
Defense: Roger W. Varner, *Varner & Associates*, Birmingham
Verdict: $1,000,000 for plaintiff
Circuit:   **Macon**, 2-6-03
Judge:   Tom F. Young, Jr.

On 11-9-99, there was a near head-on collision on I-85. It occurred as Gazel Pettaway, sustained a tire blow-out. Losing control, he veered across the median into the path of oncoming traffic. Pettaway was almost able to bring his vehicle to a complete stop. At the same time, Harry Smith, age 59 and of Tallassee, could not stop in time. He crashed into Pettaway.

A moderate collision, no injury was reported at the scene. Smith has since treated for radiating neck and back pain. His course of treatment and incurred medicals are not known. Procedurally, he first moved against Pettaway, taking his policy limits. He then sought UIM benefits from his carrier, Allstate. The policy limits were $40,000. Allstate defended the case and minimized the claimed injury.

In his closing remarks, attorney Smith used Allstate's own commercial against it, telling a Tuskegee jury that his client "was not in good hands" as the insurer operated with "empty hands and a heavy-handed mind set."

The jury's verdict was for Smith and writing on the verdict form as "1 million," it far exceeded the $40,000 policy limits. A consistent judgment, reflecting the limits followed, and has been satisfied by Allstate.
**Ed. Note** - A story that appeared in the *Tuskegee News* about this verdict mentioned several times that a $1,000,000 award had been secured. Nothing was said that the award was limited contractually to $40,000. The article did cite the famed-attorney Johnnie Cochran, the Los Angeles-based partner of the Tuskegee lawyers that tried the case -- Cochran remarked that he was proud of Strength and Johnson and their contribution to this case. Smith also remarked on the verdict, telling the newspaper "I am elated once again that a Macon County jury of God-fearing citizens tipped the scales of justice against a haughty and high-handed insurance company."

## Auto Negligence - **As plaintiff prepared to turn out of a parking lot, he was struck by defendant who proceeded on the superior highway; defendant conceded the collision but blamed plaintiff for starting forward, appearing to pull into his path. Only then did defendant hit the brakes and skid into plaintiff**
*Davidson v. Mainline Heating and Air Conditioning*, 02-0121
Plaintiff: Sanford D. Hatton, Jr., Pelham
Defense: Christopher J. Zulanas, *Friedman Leak & Bloom*, Birmingham
Verdict:   Defense verdict
Circuit:   **Shelby**, 1-16-03
Judge:   D. Al Crowson

On 9-4-01, Jimmy Davidson, age 54, was exiting the Food World parking lot on Pelham, intending to make a left turn. At the same time, John Davenport, driving a pick-up for Mainline Heating & Air Conditioning, approached on the superior Lee Street. Davidson, a radiology technician at UAB, saw Davenport coming and came to a stop.

Davenport remembered differently. He too saw Davidson, but remembered him partially beginning to pull into the roadway. As importantly, he did so right into his path. Davenport hit the brakes in an attempt to minimize collision. At just that instant, Davidson stopped his assault onto Lee Street.

It was too late for a collision to be avoided. On a partially rain-slicked roadway, Davenport's pick-up slid directly into Davidson's sedan, intruding the driver's compartment of his Jeep. Davidson's most serious injury was a broken ankle.

In this action, Davidson sought damages from Davenport and his employer, blaming Davenport for having skidded into him. Importantly, Davidson postured that he was fully stopped and not in Lee Street when hit. Davenport conceded as much but, recalling the fact dispute, noted that plaintiff suddenly started into his path, stopping again just as quickly. In response to that move, Davenport called it reasonable to hit the brakes, leading unfortunately to the skid and the collision. Plaintiff's best response was that in any event, he was still in the parking lot.

Following a two-day jury trial, the verdict was for Davenport and his employer, Davidson taking nothing. A defense judgment followed and there was no appeal. Defendants' offer of judgment had been for $15,000.

## Police Assault - **Pursuing a man on a DUI charge, an Evergreen police officer charged into the suspect's home, knocking suspect's wife off the porch, in the process injuring her ankle**
*Oliver v. City of Evergreen*, 01-0090
Plaintiff: Paul H. Harden, Sr and Paul M. Harden, Jr., *Harden & Harden*, Monroeville and Reo Kirkland, Jr., Brewton
Defense: C. Winston Sheehan, Jr., *Ball Ball Matthews & Novak*, Montgomery
Verdict:   Defense verdict
Circuit:   **Conecuh**, 2-26-03
Judge:   Samuel H. Welch, Jr.

On the night of 6-11-00, a state trooper, Matthew Kennedy, was involved in a DUI pursuit of Greg Oliver. The chase ended in Castleberry at Oliver's home. Oliver raced into his home, Kennedy continuing the pursuit on foot. Now inside the Oliver residence, Kennedy and Oliver struggled. While Kennedy ultimately brought Oliver under control, he did send out a distressing call for back-up.

Sean Klaetsch, a police officer for the City of Evergreen, heard the call and raced to the scene. There would be fact disputes about what happened after his arrival. Klaetsch had one version, while Sabrina Oliver, age 35, recalled a different set of facts.

From Sabrina's position, when Klaetsch arrived, she was standing on her porch. She remembered him pulling up in an unmarked vehicle. Further, he was not wearing a police uniform, but instead black clothing. Initially, Sabrina believed he was EMS personnel.

Still standing in the doorway, she