IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 OCT 26 P 4: 52

LUTHER L. BILLINGSLEY )
)
Plaintiff, )
)
vs. ) Case No. 3:06-cv-795-WKW
)
MCWHORTER FARMS, LLC; )
MICHAEL L. ADKINS; )
LIFESTAR RESPONSE OF )
ALABAMA, INC. d/b/a CARE )
AMBULANCE, et al., )
)
Defendants. )

**MCWHORTER FARMS AND MICHAEL ADKINS**
**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

COME NOW, the defendants McWhorter Farms, LLC ("McWhorter Farms") and Michael Adkins, and hereby submit this brief demonstrating that this Court properly has diversity jurisdiction over this action, and Billingsley's motion to remand should be denied.

This case involves a tractor-trailer accident whereby plaintiff Billingsley alleges that a McWhorter Farms' eighteen wheeler rear-ended him on I-85 in Macon County, Alabama, causing him permanent injuries and damages. McWhorter Farms and driver Adkins properly removed this case to federal court based upon diversity jurisdiction because resident defendant Care Ambulance has been fraudulently joined to destroy federal court subject matter jurisdiction.

"The removal process was created by Congress to protect defendants." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005). "As the Supreme Court long ago admonished, the Federal courts should not sanction devices intended to prevent removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in Federal court." *Legg*, 428 F.3d at 1325 (quoting, *Wecker v Nat'l Enameling & Stamping Co.*, 27 S. Ct. 184 (1907)); *see also*, *Bolling v. Union Nat. Life Ins. Co.*, 900 F.Supp. 400, 405 (M.D. Ala. 1995) (explaining that federal courts should be cautious lest they erroneously deprive defendants of the right to a federal forum). As explained by the Eleventh Circuit in *Legg, supra*, "Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome [the right to remove to federal court]." *Legg*, 428 F.3d at 1325.

Diversity jurisdiction is determined at the time of removal based upon the pleadings and affidavits submitted by the parties. *Legg*, 428 F.3d at 1322. The Court examines the pleadings *at the time of removal*, along with limited evidence in the form of affidavits and depositions transcripts to determine whether subject matter jurisdiction exists. *James A. Smith, et al., v. Kansas City Life Insurance Company*, 2006 U.S. Dist. LEXIS 72941 (2006). Reason and common sense guide the court's analysis, and the potential for legal liability must be reasonable and not merely theoretically possible when determining whether a resident defendant has been fraudulently joined. *See, Carl Legg v. Wyeth,* 428 F.3d 1317, 1325 n5 (11th Cir. 2005).

Billingsley seeks recovery from McWhorter Farms for negligent and wanton entrustment and from McWhorter Farms and driver Adkins for negligent and wanton

operation of an eighteen wheeler contending that Billingsley was "inexplicably" struck from behind while driving on I-85. (Complaint, ¶ 6; Motion to Remand, p.3). These parties are completely diverse. (See Notice of Removal). While not necessarily agreeing or stipulating to the facts contained in the Alabama Uniform Traffic Accident Report, the report indicates that the vehicles were traveling around the 70 mph speed limit when the accident occurred. (Exhibit 2-A). It further indicates that the McWhorter tractor-trailer struck Billingsley's vehicle in the rear causing it to leave the roadway and strike a tree. Billingsley alleges that he suffered permanent injuries, medical expenses, property damage, physical pain, impairment, disfigurement, and mental anguish from the accident. (Complaint ¶10).

**A. Fraudulently Joined Care Ambulance Should Be Ignored And Dismissed.**

Billingsley's purported claim against Care Ambulance should be ignored, and Care Ambulance should be dismissed for Billingsley's failure to state a medical malpractice claim in accordance with the Alabama Medical Liability Act and *Alabama Code* § 6-5-551. It is undisputed that the complaint seeks to assert a medical malpractice claim against Care Ambulance. Billingsley contends that he has only (at most) made a technical violation of the statutory malpractice pleading requirement.

The passing allegation as to Care Ambulance is unmistakably made to prevent removal, and it should not be permitted to destroy proper diversity jurisdiction. The Alabama Medical Liability Act of 1987 created heightened requirements to maintain a medical malpractice claim due to a crisis facing the medical community from spiraling

costs of healthcare and increased threats of litigation . *See*, *Alabama Code* § 6-5-540. The legislature specifically stated as follows:

> **§ 6-5-540. Legislative intent.**
>
> "It is hereby declared by the Legislature of the State of Alabama that a crisis threatens the delivery of medical services to the people of Alabama and the health and safety of the citizens of this state are in jeopardy. In accordance with the previous declaration of Legislature contained in Act 513 of the Regular Session of the 1975 Alabama Legislature it is the declared intent of this Legislature to insure that quality medical services continue to be available at reasonable costs to the citizens of the State of Alabama. This Legislature finds and declares that the increasing threat of legal actions for alleged medical injury causes and contributes to an increase in health care costs and places a heavy burden upon those who can least afford such increases, and that the threat of such actions contributes to expensive medical procedures to be performed by physicians and other health care providers which otherwise would not be considered necessary, and that the spiraling costs and decreasing availability of essential medical services caused by the threat of such litigation constitutes a danger to the health and safety of the citizens of this state, and that this article should be given effect immediately to help control the spiraling cost of health care and to insure its continued availability. . . ."

*Alabama Code § 6-5-540.*

The 1987 amendments added § 6-5-551 which required that complaints seeking recovery for medical malpractice "**shall** include in the complaint . . . a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff." *Alabama Code* § 6-5-551. It further provides that complaints which fail to include such detailed specification and factual description of each act and omission **shall** be subject to dismissal for failure to state a claim upon which relief can be granted. *Id.* The statute specifically provides as follows:

> **§ 6-5-551. Complaint to detail circumstances rendering provider liable; discovery.**
>
> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however that any such amendment must be made at least 90 days before trial. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. (Acts 1987, No. 87-189, p. 291, § 12; Act 2000-387, p. 609, § 1).

*Alabama Code* § 6-5-551 (emphasis added).

The Southern District's decision in *Betts v. Eli Lilly and Company*, 435 F. Supp 2d 1180 (S.D. Ala. 2006) discusses the requirements of 6-5-551 and illustrates the factual specificity necessary to constitute a colorable claim for medical malpractice. In *Betts*, the plaintiff sought recovery from a physician for failing to warn of the dangers of the medication he was prescribing. *Id.* at 1188. The Southern District stated that the statutory pleading requirements suggest that the sanction of dismissal is available only for inadequately identifying and describing the wrongful act or omission, not for deficiencies in pleading time or place. *Id.* at 1189. However, the court determined that the complaint stated a colorable claim for medical malpractice by sufficiently specifying the wrongful

act or omission. *Id.* at 1188-1189; 1191. The court remanded the case to state court finding that there was a reasonable possibility that an Alabama court would find that the allegations satisfied the statute. *Id.* at 1191 ("[I]t is difficult to imagine what additional detail could be required to confirm that she has a basis for making the allegation. It is thus unsurprising that [the defendant] has been unable to suggest a single missing 'underlying fact.'").

The Betts' complaint alleged that the physician prescribed Zyprexa from October 1996 to November 2004. *Id.* at 1188. It further alleged that "the physician knew or should have known that possible side effects and dangers of Zyprexa include glucose intolerance, pancreatitis, hyperglycemia and diabetes, and it alleges further that he violated the applicable standard of care by failing to warn the plaintiff of these risks and failing to advise her to monitor for early signs of these conditions". *Id.* Furthermore, "[t]he complaint specified in great detail the available medical, governmental and non-governmental information on which the physician's alleged actual or constructive knowledge [was] based" which warned of the dangers the physician failed to disclose. *Id.* at 1191. Because the complaint sufficiently described the specific wrongful act or omission (i.e., failing to warn) and because there were specific allegations as to the source of the physician's awareness of the risks of which he failed to warn, the complaint stated a viable claim for relief. *Id.*

Similarly, *Mikkelsen v. Salama*, 619 So.2d 1382 (Ala. 1993), relied upon by Billingsley, further illustrates that the complaint must specify the negligent act or omission that allegedly renders the heath care provider liable. In that case, the trial court

wrongfully dismissed the third party complaint for failing to state a claim upon which relief could be granted because the complaint specifically alleged the negligent act of failing to warn the plaintiff not to operate a motor vehicle while taking the prescribed medication. *Id.* at 1384. The Alabama Supreme Court stated that the complaint sufficiently alleged that [the physician's] negligent act was his failure to warn the plaintiff and her family members that she should not drive while taking the medications and that she should live a normal life and drive herself to work. *Id.*

By contrast, the Billingsley's complaint, at the time of removal, does not state a bona fide medical malpractice claim against Care Ambulance. By viewing the complaint through the lens of § 6-5-551 and the Medical Liability Act's intended purpose to heighten the requirements to pursue a medical malpractice claim, it is clear that Billingsley's complaint is deficient and states no possible cause of action for medical malpractice against Care Ambulance. It fails to specify <u>any</u> act or omission which would render Care Ambulance liable for Billingsley's injuries. It fails to allege the standard of care, the alleged breach, and any specific facts as to what Care Ambulance did or failed to do which would give rise to a malpractice claim. Contrary to the heightened legislative pleading requirement to specify and factually describe each act or omission constituting medical malpractice, Billingsley generally alleges that Care Ambulance contributed to his injuries. Billingsley's sole allegation against Care Ambulance provides:

> 7. Following the accident made the basis of this suit, the Plaintiff Billingsley was attended to by ambulance personnel employed by Defendant Lifestar. During the time said Billingsley was being attended to

> by said employees of Lifestar, Billingsley was attended to and/or transported in such a way as to cause and/or contribute to cause the pain and/or injuries that were suffered by Billingsley in the wreck made the basis of this suit.

(Exhibit 1,Complaint, ¶ ¶ 7, 18). There is no reasonable basis to conclude that an Alabama Court could find that the Billingsley's complaint states a colorable medical malpractice claim against Care Ambulance and this frivolous claim ought not be permitted to destroy this court's jurisdiction over this action.

This is a trucking case where Billingsley alleges that an eighteen-wheeler rear-ended him on I-85 and caused him to run off the road. If there were a viable claim against the ambulance company which responded to the accident and transported him, then it surely would have been (and should have been) articulated with factual specificity in accordance with *Alabama Code* § 6-5-551. It does not do so because there is no claim against Care Ambulance in this case, and the one allegation has been included in the complaint seeking to destroy these defendants' right to have this case decided by a federal court based upon diversity jurisdiction. This court should ignore co-defendant Care Ambulance for jurisdiction purposes and/or dismiss it from this case as a fraudulently joined defendant because the complaint states no claim for relief against that entity.

**B. The Amount In Controversy Is Satisfied.**

This trucking accident case involves an amount in controversy in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs. Nowhere does Billingsley deny that this case involves an amount in controversy in excess of the

jurisdictional prerequisite. He only challenges the basis for concluding that the amount in controversy is satisfied.

Where, as here, the plaintiff has not pled a specific amount of damages in his complaint, the removing defendant must prove only by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Leslie Miedema v. Maytag Corporation*, 450 F.3d 1322, 1330 (11th Cir. 2006). The relevant inquiry is whether the plaintiff's recovery will more likely than not exceed the jurisdictional amount should he prevail in his case. *See, Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d, 1197, 1200 (M.D. Ala. 1999). The appropriate measure is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint. *Jackson v. American Bankers Insurance Company of Florida*, 976 F. Supp 1450, 1454 (S.D. Ala. 1997). The court first examines whether this standard is met by examining whether "it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Leslie Miedema*, 450 F.3d at 1330. If the jurisdictional amount is not apparent from the face of the complaint, the court can review the notice of removal and require evidence relevant to the amount in controversy to determine whether the jurisdictional requirement is met. *Leslie Miedema*, 450 F.3d at 1330.

It is facially apparent from Billingsley's complaint that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs, should everything Billingsley alleges be true. Billingsley alleges that these defendants negligently and/or wantonly injured him by rear-ending him on Interstate 85 in Macon County. A certified

copy of the Uniform Accident Report for the March 14, 2006 accident made the basis of this lawsuit was attached to the Notice of Removal as Exhibit 2-A.[1] While the defendants do not necessarily agree or stipulate to the facts contained in the report, it does list the investigating officer's knowledge, opinions, and beliefs about the accident at the time he investigated the same. The investigating officer indicates that the McWhorter vehicle was traveling at approximately 70 mph on I-85 at night when it struck the rear of the Billingsley vehicle causing that vehicle to run off the right side of the road and strike several trees before coming to rest. The report indicates that both drivers were transported to Jackson Hospital and that both vehicles were totaled. The investigating officer's report coupled with the allegations and unspecified damages sought in the complaint indicate the amount in controversy is satisfied in this case. Furthermore, Billingsley alleges that he has suffered all of the following injuries and damages:

(a) past, present, future and/or permanent injuries;
(b) property damage;
(c) medical expenses;
(d) physical pain, impairment, disfigurement, scarring and/or injury;
(e) mental anguish; and
(f) all other damages to which Billingsley is entitled by law to maintain.

(See Exhibit 1, Complaint, ¶ 10). These injuries alone demonstrate that the jurisdictional prerequisite is satisfied.

In addition, this Court can take judicial notice of what has happened in the judicial system and already knows the propensity of Macon County verdicts as documented in the

[1] The report is a certified public record and may be considered by the Court for jurisdiction purposes and is not inadmissible hearsay pursuant to Rule 803(6) and (8).

*Alabama Jury Verdict Reporter*. The *Alabama Jury Verdict Reporter* compiles jury verdicts returned throughout Alabama, and it is a regularly relied upon commercial compilation which is not only a matter within the scope of judicial notice, but also admissible pursuant to the hearsay exception found in Rule 803(17) of the Federal Rules of Civil Procedure which provides that commercially published compilations generally used or relied upon by persons in a particular occupation are not excluded by the hearsay rule. The *Alabama Jury Verdict Reporter* publication reports the results of various cases tried in Macon over the last several years (Exhibit 2-B in the Notice of Removal). These reveal, as well known, that cases involving very minimal damages can and often do result in very large verdicts in Macon County where the plaintiff filed this action.

For example, *Taylor v. Landair Transport and Hodges*, Civil Action No. CV-01-0224, was a negligence case tried in Macon County on August 29, 2002, which involved a plaintiff who had pulled over to the shoulder of Interstate 85 in Macon County because he was feeling sleepy. While on the shoulder of the road, a truck driver ran into the plaintiff's parked vehicle. There was moderate damage resulted to the vehicles and no injury was reported at the scene. The plaintiff incurred medical bills in the approximate range of $15,000. The jury awarded a verdict in the amount of $500,000.

In addition, *Fitzpatrick v. Allstate*, Civil Action No. CV-00-402, was an uninsured motorist case tried in Macon County on February 7, 2002, where the plaintiff sought recovery for injuries he sustained in an accident when a phantom vehicle ran him off the road and caused him to hit a tree. The plaintiff suffered what initially looked to be just bruising associated with her head and chest but then she complained of soft tissue

symptoms, a cognitive disorder, and vertigo and presented medical bills in the range of $3,100. The Macon County jury returned a verdict in the amount of $150,000 in favor of the plaintiff.

And again, *Smith v. Allstate,* Civil Action No. CV-00-0054, was an uninsured motorist case tried in Macon County on February 6, 2003, when the defendant's tire blew out causing him to cross the interstate median, where the plaintiff ran into him. It was a moderate crash and no injuries were reported at the scene. Later, the plaintiff complained of radiating neck and back pain. The plaintiff presented claims for uninsured motorist benefits and the jury returned a $1 million verdict for the plaintiff against his insurance company.

*Alabama Jury Verdict Reporter* aside, the Alabama Supreme Court's decision in *Daniels v. East Alabama Paving*, 747 So.2d 1033 (Ala. 1999), reveals that the amount in controversy is satisfied. In *Daniels*, Alabama Supreme Court reviewed personal injury damage awards returned by a Macon County jury involving a single vehicle accident on Interstate 85 in a construction zone. The Alabama Supreme Court reversed the trial court's remittitur of the initial awards which in and of themselves demonstrate that jury awards can vastly exceed the award of actual damages claimed in a lawsuit. In that case, Vellica Daniels sustained property damage of $4,000 and medical damages of approximately $2,204.46. The jury awarded her $104,000. Kathy Daniels had medical expenses in the range of $644.60 and the jury awarded her $150,000. Plaintiff Lillie Daniels had special medicals in the range of $225 plus loss time from work and a temporary injury to her shoulder that was not permanent. The jury awarded her

$175,000. Lastly, the plaintiff Jessie Cook had lacerations to his face and had loss some teeth and his medical bills were approximately $1,407.84. The jury awarded him $200,000.

The amount in controversy is satisfied in this case because if everything Billingsley says in his complaint is true, then any adverse verdict more likely than not will exceed the jurisdictional minimum of this Court.

## Conclusion

This lawsuit truly is a case between diverse parties involving an Alabama plaintiff who is seeking recovery from a Kentucky trucking company and its driver for allegedly rear-ending Billingsley while he was traveling on I-85 in Macon County which satisfies the jurisdictional amount in controversy requirement. Billingsley's purported claim against Care Ambulance fails to comply with the Medical Liability Act and the heightened statutory pleading requirements of § 6-5-551. The complaint fails to specifically allege any act or omission which Billingsley contends would render Care Ambulance liable under a medical malpractice claim. The complaint does not allege the standard of care, any breach of the standard of care, or any specific facts which give rise as to a claim against Care Ambulance. This Court should ignore the presence of fraudulently joined defendant Care Ambulance and/or dismiss Care Ambulance from this suit for failing to state a claim upon which relief can be granted. Billingsley's Motion to Remand should be denied.

STEVEN K. HERNDON - HER028
Attorney for Defendants
McWhorter Farms, LLC and
Michael L. Adkins

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
60 Commerce Street Suite 904
P. O. Box 4190 (36103)
Montgomery, AL 36104
Telephone: (334) 834-9950
Fax: (334) 834-9950
steve@ghhclaw.com

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was served on the following by placing a copy of the same in the United States mail, postage prepaid and properly addressed, this 26th day of October, 2006.

Mr. David M. Cowan
Mann, Cowan & Potter, PC
2000-B SouthBridge Parkway
Suite 601
Birmingham, AL 35209
(205) 879-9661
Fax: (205) 879-9663
Email: david@mcplaw.com

Mr. R. Keith Thomas
R. Keith Thomas, LLC
P.O. Box 830899
Tuskegee, AL 36083
(334) 724-0035
Fax: (334) 724-0076
Email: ktatty@bellsouth.net

Mr. Thomas L. Oliver, II
Carr Allison, PC
100 Vestavia Parkway
Birmingham, AL 35216
(205) 949-2942
Fax: (205) 822-2057
Email: tlo@carrallison.com

Mr. Shane Oncale
Clark, Dolan, Morse, Oncale & Hair, PC
Suite 850
800 Shades Creek Parkway
Birmingham, AL 35209
(205) 397-2900
Fax: (205) 397-2901
Email: soncale@cohslaw.com

Steven K. Herndon