IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LUTHER L. BILLINGSLEY            )
                                )
        Plaintiff,              )
                                )
vs.                             ) Case No. 3:06-cv-795-WKW
                                )
MCWHORTER FARMS, LLC;           )
MICHAEL L. ADKINS;              )
LIFESTAR RESPONSE OF            )
ALABAMA, INC. d/b/a CARE        )
AMBULANCE, et al.,              )
                                )
        Defendants.             )

### DEFENDANTS MCWHORTER FARMS, LLC AND MICHAEL ADKINS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND PROPOSED AMENDED COMPLAINT

COME NOW, the defendants McWhorter Farms, LLC ("McWhorter Farms") and

Michael Adkins, and hereby file this opposition to Plaintiff's Motion For Leave To

Amend Complaint (Doc. # 22) and proposed Plaintiff's First Amended Complaint (Doc.

# 23) requesting this Court to stay consideration of the motion for leave or, in the

alternative, to deny the motion and strike the proposed amended complaint on the

grounds that it is not relevant to the subject matter determination made at the time of

removal and otherwise should not be permitted to destroy this Court's subject matter

jurisdiction and in support thereof state as follows:

**I.    This Court Has Diversity Jurisdiction**

The issue before this Court is whether Kentucky citizens McWhorter Farms and its

truck driver Michael Adkins properly removed this case to federal court based upon

diversity jurisdiction. These non-resident defendants contend that removal was proper because resident defendant Lifestar Response of Alabama, Inc. ("Care Ambulance") was fraudulently joined in an attempt to prevent removal of this trucking accident case to federal court.

"Whether [a] case was properly removed is determined by reference to the allegations in the plaintiff's state court pleadings." *Tedder v. F.M.C. Corp.*, 590 F.2d 1115, 1116 (5th Cir. 1979)[1]; *see also*, *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1306, fn.1 (11th Cir. 2001) ("The question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings at the time of removal."); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1446 (11th Cir. 1983) ("Removability should be determined 'according to the plaintiff's pleadings at the time of removal.'"); *M.M.K. v. Osborne*, 2006 U.S. Dist. LEXIS 79089 (M.D. Ala. 2006) ("The jurisdictional facts that support removal must be judged at the time of removal, and any post-petition affidavits are allowable only if relevant to that time period."); *Howard Griggs Trucking, Inc. v. American Central Ins. Co.*, 894 F. Supp. 1503, 1507 (M.D. Ala. 1995) (The "propriety of removal should be considered based upon the pleadings as of the date of removal").

Furthermore, the test for determining whether a defendant has been fraudulently joined "should be made based upon the plaintiff's pleading at the time of removal." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). As stated by the Eleventh Circuit in *Cabalceta*:

---

[1]     The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

> The burden, however, is on Defendants to show that the allegations of the complaint state no possible cause of action against Defendant Doyle. *Coker, 709 F.2d at 1440.* Defendants, however, need only show that Plaintiffs have no possible cause of action in Costa Rica *under the allegations of the Plaintiffs' pleading at the time of removal.*

*Cabalceta v. Standard Fruit Co.*, 883 F.2d at 1562. "If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent, and lack of diversity will not prevent removal." *Tedder, supra.* Under such a scenario, it "is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction." *Tillman*, 253 F.3d at 1305.

This Court should deny Plaintiff's Motion For Leave To Amend Complaint and/or stay consideration of the same because the motion for leave and proposed amended complaint are not relevant to this Court's determination of whether it has subject matter jurisdiction based upon diversity of citizenship. The Court's determination as to whether Care Ambulance has been fraudulently joined is based upon Billingsley's <u>original</u> state court pleading—the pleading that was removed. "[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts, submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005). Billingsley has presented no affidavits or deposition transcripts, so the Court's determination <u>must</u> be based upon the original complaint alone.

Accepting as true every fact alleged in Billingsley's state court complaint, there is no reasonable basis to predict that Billingsley could ever prevail under Alabama law

against Care Ambulance. Care Ambulance is a "other health care provider" under the Alabama Medical Liability Act[2], and it is beyond dispute that Billingsley's complaint states no colorable claim for medical malpractice against Care Ambulance. As explained in McWhorter Farms and Adkins' Brief In Opposition To Plaintiff's Motion To Remand, due to a crisis facing the medical community, the Medical Liability Act, among other protections, contains heightened substantive requirements which require plaintiffs to provide a factual description of each act and omission which is alleged to render a healthcare professional liable. (McWhorter Farms and Adkins' Brief, p. 5). Contrary to § 6-5-551, the complaint in *Betts v. Eli Lilly & Co.*, 435 F. Supp.2d 1180 (S.D. Ala. 2006), and the complaint in *Mikkelsen v. Salama*, 619 So.2d 1382 (Ala. 1983), Billingsley's complaint states no actionable medical malpractice claim against Care Ambulance. (See McWhorter and Adkins' Brief, pp. 3-8). Furthermore, contrary to the "patchy" fraud allegations in *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006), Billingsley's complaint contains no factual allegations of acts or

---

[2]    See, Lifestar's Motion to Dismiss (Doc. # 7). Also, pursuant to Alabama Code § 22-18-3, the State Board of Health has established administrative regulations regarding ambulance service operators and emergency medical technicians. These regulations are contained in Alabama State Board of Health Administrative Code, Ch. 420-2-1, et seq. The Administrative Code is a matter of public record and pertinent sections cited herein are attached hereto as Exhibit A for the Court's convenience. Pursuant to 420-2-1-.03(5), each ambulance service will be assigned to a medical direction hospital or hospitals, and each ambulance service shall have a recognized off-line medical director who shall be a physician licensed by the Medical Licensure Commission of Alabama. Pursuant to 420-2-1-.06(2)(a), an off-line medical director may issue standing orders to EMTs who perform ALS procedures using only those standing orders approved and published for such purposes by the State Board of Health. Furthermore, the off-line medical director shall regularly review the skills and performance of all EMT-Intermediates and EMT-Paramedics. Section 420-2-1-.16 outlines the responsibilities to the patient.

omissions to give notice of a medical malpractice claim against Care Ambulance.[3]

Based upon Billingsley's state court complaint, there is no question that Care Ambulance was fraudulently joined to destroy this Court's diversity jurisdiction. The complaint states no possible or actionable medical malpractice claim against Care Ambulance, and Care Ambulance should be ignored or dismissed for purposes of determining subject matter jurisdiction.

## II.    This Court Should Not Permit An Amendment Seeking to Destroy Jurisdiction

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Billingsley seeks leave to amend his state court complaint to allege a medical malpractice claim against Care Ambulance under Alabama Code § 6-5-551. The fact that Billingsley now seeks to amend his complaint to assert a medical malpractice claim illustrates that his original complaint is defective and due to be dismissed for failing to comply with Alabama Code § 6-5-551.

As made abundantly clear in the foregoing analysis, "the determination of whether a resident defendant has been fraudulently joined <u>must</u> be based upon the plaintiff's pleadings at the time of the removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir.

---

[3]    Contrary to Billingsley's argument in his Reply Brief, *Henderson*, *supra*, does not establish any new standard for reviewing the sufficiency of a state court pleading. Henderson's complaint gave "fair notice" because "other paragraphs of the complaint contained more particularized and detailed descriptions of the events" which provided more than "generalized or conclusionary" [sic] allegations as to the fraud claim. By contrast, Billingsley's complaint contains no particularized allegations to comply with the heightened pleading requirements required by § 6-5-551.

2005). "The proceedings appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b).'" *Id.* No Eleventh Circuit precedent provides for the consideration of a plaintiff's motion for leave or proposed amended complaint in making the fraudulent joinder determination, and for that reason alone, the plaintiff's motion for leave should be denied and the proposed amended complaint stricken. *See*, *M.M.K. v. Osborne*, [2006 U.S. Dist. LEXIS 79089] (M.D. Ala. 2006) ("The jurisdictional facts that support removal must be judged at the time of removal, and any post-petition affidavits are allowable only if relevant to that time period.").

Should the Court deem further analysis of Billingsley's motion for leave to amend appropriate, then McWhorter and Adkins submit that *Bevels d/b/a Harris Funeral Home v. American States Ins. Co.*, 100 F. Supp. 2d 1309, 1312 (M.D. Ala. 2000) provides the proper standard for further analysis. In *Bevels*, the Middle District stated that when an amendment to a complaint would destroy diversity jurisdiction, a district court has authority to deny the plaintiff's amendment. In *Bevels*, the Court held that 28 U.S.C. § 1447(e) rather than Rule 15(a) should apply when a plaintiff seeks to amend a complaint to destroy diversity jurisdiction after removal.[4] *Id.* Therefore, the appropriate inquiry as

---

[4]     While *Bevels* and 28 U.S.C. § 1447(e) address a plaintiff seeking to join additional defendants after removal, Billingsley's motion for leave and proposed amended complaint is tantamount to joining an additional defendant because his state court complaint states no claim against Care Ambulance. That is to say, based upon the analysis above, Care Ambulance should be dismissed as fraudulently joined. The motion for leave and proposed amended complaint should be construed as a request to re-add Care Ambulance to this lawsuit. Indeed, if § 1447(e) were not applied, the plaintiff could seek to destroy diversity jurisdiction (as Billingsley seeks to do) merely by amending his

to whether this Court should allow an amendment to add a claim against fraudulently joined defendant Care Ambulance should be based upon the analysis in *Bevels*, *supra*, and the factors enunciated therein from the Fifth Circuit's decision in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

In applying these factors as to whether an amendment should be allowed, the parties do not start out on equal footing because the defendant's right to choose between the state or federal forum is the very purpose behind the removal statutes. *Id.* "The removal process was created by Congress to protect defendants." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005). "As the Supreme Court long ago admonished, the Federal courts should not sanction devices intended to prevent removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in Federal court." *Legg*, 428 F.3d at 1325 (quoting, *Wecker v Nat'l Enameling & Stamping Co.*, 27 S. Ct. 184 (1907)); *see also*, *Bolling v. Union Nat. Life Ins. Co.*, 900 F.Supp. 400, 405 (M.D. Ala. 1995) (explaining that federal courts should be cautious lest they erroneously deprive defendants of the right to a federal forum). As explained by the Eleventh Circuit in *Legg, supra*, "Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome [the right to remove to federal court]." *Legg*, 428 F.3d at 1325.

In applying the *Hensgens* factors, this Court should deny the plaintiff's motion for leave and strike the proposed amended complaint. First, it is clear that the amendment

---

complaint regarding the fraudulently joined defendant and thereby avoid any fraudulent joinder inquiry. C.f., *Bevels*, 100 F. Supp. 2d at 1313.

serves to defeat federal jurisdiction by seeking to assert a medical malpractice claim against Care Ambulance which under Eleventh Circuit fraudulent joinder law should have been asserted in the state court complaint if Billingsley intended to assert a medical malpractice claim at all.  Billingsley is not in receipt of any new or additional information, and he, like all parties, is charged with knowing the applicable law.  If Care Ambulance had truly dropped Billingsley as asserted in the proposed amended complaint, then surely that would have been included in the original complaint.   Second, the timing of the motion for leave and proposed amendment indicates that it is for the purpose of defeating federal jurisdiction.  The motion for leave and amendment accompanied Billingsley's reply brief, and the proposed amended complaint clearly reveals that it is intended to substantiate a medical malpractice claim against Care Ambulance.  Third, Billingsley will not be significantly injured if the amendment is not allowed, as this case truly involves a trucking accident whereby Billingsley alleges that McWhorter Farms and its truck driver Michael Adkins rear-ended his vehicle while driving I-85.[5]  Fourth, courts consider other factors bearing on the equities in the case, and it is clear that Billingsley will be able to obtain full recovery on his claim should he be able to prove them as true without the fraudulently joined defendant.  Billingsley will surely argue that McWhorter Farms and its truck driver caused or contributed in causing any alleged injuries the plaintiff claims to have suffered.  In applying the *Hensgens* factors, Billingsley's motion

---

[5]     To the extent the Court is inclined to consider the motion for leave and the proposed amended complaint, the defendants submit herewith as Exhibit B an affidavit by truck driver Michael Adkins averring that both he and Mr. Billingsley were transported in the same ambulance after they each climbed into the back of the ambulance on their own free will.

for leave to amend should be denied and the proposed amended complaint seeking to destroy complete diversity should be stricken.

McWhorter and Adkins contend that *Davis v. General Motors Corp.*, 353 F. Supp. 2d 1203 (M.D. Ala. 2005) is not applicable and should not have any impact on the Court's analysis of the motion for leave to amend complaint or the plaintiff's proposed amendment. In *Davis*, Judge Fuller permitted the plaintiff to amend his complaint after removal to include proper claims against resident defendant Lee who the plaintiff named in the complaint but did not (in error) assert any specific claims of wrongdoing against him. In *Davis*, the Court applied Rule 15(a) to allow the amendment of additional claims as opposed to analyzing the amendment under § 1447(e). The Court, however, held that even if § 1447(e) were the appropriate analysis, the Court would reach the same result. *Id.* at 1208.

McWhorter and Adkins respectfully assert that the *Davis* decision erroneously permitted an amended complaint which is contrary to the well established rules that require determining subject matter jurisdiction based on claims of fraudulent joinder at the time of removal. If *Davis* were applicable, plaintiffs could cure virtually *any* fraudulently joined defendant by amending the complaint and thereby circumventing the fraudulent joinder rule that jurisdiction should be determined at the time of removal and based upon the plaintiff's state court pleading. Conversely, to the extent this Court deems *Davis* to have any application, it is distinguishable because *Davis* involved claims of simple negligence whereas Billingsley's purported claim against Care Ambulance in this case involves heightened rigorous obligations to state any medical malpractice claim

in accordance with § 6-5-551 as explained in McWhorter Farms and Adkins' Brief in Opposition to the Motion to Remand and as explained herein. Accordingly, *Davis* should not be followed in this case because it presents an erroneous analysis and is not applicable to the unique facts and circumstances of this case.

## III.    Conclusion

Whether a case is removable is not a matter of gamesmanship. Applicable Eleventh Circuit law provides that the determination as to whether a defendant has been fraudulently joined is made based upon the state court pleadings at the time of removal. Billingsley's complaint states no actionable claim against Care Ambulance, and no Alabama court would find that the complaint states a possible cause of action under Alabama Code § 6-5-551. Furthermore, it would be inappropriate to permit Billingsley to amend his complaint in an effort to cure his defective pleading and to oust these defendants of their right to federal court based upon diversity jurisdiction. Therefore, these defendants respectfully request the Court to deny the motion to remand, deny the motion for leave and strike the proposed amended complaint.

Respectfully submitted,

STEVEN K. HERNDON - HER028
Attorney for Defendants
McWhorter Farms, LLC and
Michael L. Adkins

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P. O. Box 4190
Montgomery, AL 36103
Telephone: (334) 834-9950
Fax: (334) 834-9950
steve@ghhclaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 13th day of November, 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of each filing to the following:

Mr. David M. Cowan
Mann, Cowan & Potter, PC
2000-B SouthBridge Parkway/ Ste. 601
Birmingham, AL 35209
(205) 879-9661
Email: david@mcplaw.com

Mr. R. Keith Thomas
R. Keith Thomas, LLC
P.O. Box 830899
Tuskegee, AL 36083
(334) 724-0035
Email: ktatty@bellsouth.net

Mr. Thomas L. Oliver, II
Carr Allison, PC
100 Vestavia Parkway
Birmingham, AL 35216
(205) 949-2942
Email: tlo@carrallison.com

Mr. Shane Oncale
Clark, Dolan, Morse, Oncale & Hair, PC
800 Shades Creek Parkway/ Ste. 850
Birmingham, AL 35209
(205) 397-2900
Email:  soncale@cohslaw.com

Steven K. Herndon

# Exhibit A

ALABAMA STATE BOARD OF HEALTH
ALABAMA DEPARTMENT OF PUBLIC HEALTH
ADMINISTRATIVE CODE

CHAPTER 420-2-1
EMERGENCY MEDICAL SERVICES

TABLE OF CONTENTS

| Rule Number | Page # |
|---|---|
| Preamble | 2 |
| 420-2-1-.01 General Provisions | 3 |
| 420-2-1-.02 Definitions | 3 |
| 420-2-1-.03 Ground Ambulances | 8 |
| 420-2-1-.04 Advanced Life Support Service Authorization Certificate | 12 |
| 420-2-1-.05 Medications and Fluids Inventory, Storage and Security Procedures | 15 |
| 420-2-1-.06 Medical Direction | 16 |
| 420-2-1-.07 Patient Transfers | 18 |
| 420-2-1-.08 Vehicles | 21 |
| 420-2-1-.09 Vehicle Design and Construction | 22 |
| 420-2-1-.10 Ground Vehicle and Service Standards | 23 |
| 420-2-1-.11 ALS Equipment and Medications | 28 |
| 420-2-1-.12 Emergency Medical Technician-Basic | 29 |
| 420-2-1-.13 Emergency Medical Technician-Intermediate | 31 |
| 420-2-1-.14 Emergency Medical Technician-Paramedic | 33 |
| 420-2-1-.15 Ambulance Driver | 35 |
| 420-2-1-.16 Responsibility for Patient | 37 |
| 420-2-1-.17 Patients Dead-In-The-Field | 38 |
| 420-2-1-.18 Termination of Resuscitation | 38 |
| 420-2-1-.19 Emergency Medical Services Do Not Attempt Resuscitation Orders | 39 |
| 420-2-1-.20 Emergency Medical Technician Qualifications Examination, & Licensure | 40 |
| 420-2-1-.21 Impaired EMTs | 47 |
| 420-2-1-.22 EMT Training Standards & Procedures | 48 |
| 420-2-1-.23 Credentialing Education | 49 |
| 420-2-1-.24 Credentialing | 50 |
| 420-2-1-.25 Records and Reports | 51 |
| 420-2-1-.26 Complaint/Disciplinary Procedures | 55 |
| 420-2-1-.27 Variances | 58 |
| 420-2-1-.28 Emergency Medical Services Advisory Board | 59 |
| APPENDIX A  Patient Care Report (PCR) | |
| APPENDIX B  Do Not Attempt Resuscitation Order Form (DNAR) | |
| APPENDIX C  Training Program Standards | |
| APPENDIX D  Alabama EMT Credentialing Policies and Procedures Manual | |

# PREAMBLE

The State Board of Health affirms its recognition of the valuable contributions the regional EMS agencies have made to the delivery of quality pre-hospital care in Alabama.  The Board supports the continued role of the regional agencies in providing or facilitating attainment of pre-hospital provider education, including EMS educational requirements necessary for credentialing and continuing and specialized education, as well as public information and education.  Further, the Board recognizes the important role of the regional agencies in injury and disease prevention with meaningful programs that are data driven and coordinated with statewide initiatives.  The regional agencies should continue to be involved with EMS system development and serve as liaison with county commissions, city councils and the public as to the importance of these systems.  The regional agencies should continue to assist with upgrading EMS dispatch capabilities and EMS communications systems.  Finally, the valuable mission of the agencies in the delivery of grants to provider agencies for training and equipment acquisition should continue.  The Board recognizes these important roles of the regional EMS agencies in Alabama, as they exist April 4, 2001.

420-2-1-.01 <u>General Provisions.</u>

(1)    Adoption of Rules.  Under and by virtue of Authority vested in it by the Legislature of Alabama, <u>Code of Alabama, 1975</u>, §22-18-1, et seq., the State Board of Health promulgates these rules governing the training, qualification, scope of privilege, and licensing of emergency medical services personnel and for the operation, design, equipment and licensing of ambulances, convalescent ambulances, and ambulance service operators.

(2)    Exclusion from Rules.  The provisions of these rules shall not apply to the transport ambulance services listed in sections (a) through (e)below except when the transport services listed in (a) or (e) are offering or purposing to offer advanced life support services, as defined in these rules, to the public.  All transport ambulance services offering or purposing to offer advanced life support services to the public must become licensed as ambulance service operators under these Rules:

(a)    Volunteer rescue squads that are members of the "Alabama Association of Rescue Squads, Inc.", not offering ALS services, and not voluntarily licensed as a BLS transport service.

(b)    Ambulances operated by a federal agency of the United States and ambulance drivers and attendants of such ambulances.

(c)    Ambulances which are rendering assistance to licensed ambulances in the case of a major catastrophe, emergency, or natural disaster in which the licensed ambulances of Alabama are insufficient or unable to cope.

(d)    Ambulances which are operated from a location or headquarters outside of Alabama in order to transport patients who are picked up outside the State of Alabama and transported to locations within the State of Alabama; but no such outside ambulance shall be used to pick up patients within the State of Alabama for transportation point-to-point within the State of Alabama unless the ambulance operator and the ambulance attendants hold current licenses issued pursuant to these rules.

(e)    Ambulances operated by a private business or industry exclusively for employees of such business or industry free of charge.

420-2-1-.02 <u>Definitions</u>.

The following definitions apply to these rules:

(1)    Advanced Cardiac Life Support (ACLS).  The course of instruction of the same title developed and sponsored by the American Heart Association.

(2)    Advanced Life Support (ALS).  The treatment of potentially life-threatening medical emergencies through the use of invasive medical techniques specified as advanced life support techniques in these rules, which ordinarily would be performed or provided by physicians, but which may be performed by emergency medical technicians pursuant to these rules.

(3)    Advanced Trauma Life Support (ATLS).  The course of instruction of the same title developed and sponsored by the American College of Surgeons.

(4)    Advisory Board. The twenty-six member Advisory Board authorized by the Code of Alabama, 1975, §22-18-5, to assist in the establishment of rules necessary to carry out the provisions of said Act.

(5)    The Alabama Department of Public Health (ADPH). The State of Alabama, Department of Public Health, as defined by Section 22-1-1, Code of Alabama, 1975, and any officer, agent or employee of the said department authorized to act for the department with respect to the enforcement and administration of these rules.

(6)    Automated External Defibrillator (AED). A cardiac defibrillator that is capable of rhythm analysis, but requires user action in order to deliver a countershock after the presence of cardiac arrhythmia is detected.

(7)    Basic Life Support (BLS). A level of prehospital care involving non-invasive life support measures.

(8)    "The Board" or "The State Board of Health". The Board of Health of the State of Alabama as defined by Section 22-2-1, Code of Alabama, 1975, or the State Health Officer, or his designee, when acting for the Board.

(9)    Convalescent Ambulance. A vehicle that is intended to be used for and is maintained or operated for making non-emergency calls for persons in a recumbent position on an ambulance stretcher who require transportation to or from a physician's office, hospital, other health care facility, residence, or any other destination. A convalescent ambulance shall not include: (1) A hospital operated vehicle used exclusively for intra-hospital facility transfers. (2) A vehicle used exclusively for transfers of persons who are sitting upright in a device classified as a wheelchair or a physician prescribed type of wheelchair as defined by these rules. These persons are determined by the transferring physician to be medically stable and do not need, nor are likely to need, medical attention during transport.

(10)   Credentialing. A method for periodically checking a licensed emergency medical technician's ability to perform the patient care skills appropriate to the EMTs level of licensure and ability to properly utilize the Alabama Department of Public Health, Emergency Medical Services, Patient Treatment Guidelines, as approved by the State Board of Health.

(11)   Criminal History Release Authorization. A specific form which authorizes the Emergency Medical Services Division to review and utilize an EMT's or applicant's criminal history for licensure purposes.

(12)   The Emergency Medical Services (EMS) Division. The subdivision of the Alabama Department of Public Health directly involved with the enforcement and administration of these rules.

(13)   Emergency Medical Services Do Not Attempt Resuscitation (DNAR) Order. A written physician's order in a form prescribed by the State Board of Health which authorizes emergency medical services personnel to withhold resuscitative measures from a patient in the event of cardiac or respiratory arrest.

(14)   Emergency Medical Services Provider. Any entity licensed in the State of Alabama to provide a ground ambulance or other emergency medical response, whether basic life support (BLS) or advanced life support (ALS), and whether a non-transport or a transport service.

4

(15)  Ground Ambulance.  A motor vehicle including a convalescent ambulance that is intended to be used for and is maintained or operated for the transportation to a medical care facility of persons who are sick or injured.

(16)  Hospital.  A facility licensed as a hospital by the State Board of Health.

(17)  Impaired EMT or Impaired Ambulance Driver.  An individual licensed under these rules who misuses or abuses alcohol, drugs, or both or has a mental condition, which could affect the individual's ability to practice as an EMT or ambulance driver.

(18)  Industry Standard Stretcher or Cot Locking Device.  A stretcher or cot locking device permanently affixed to the vehicle which meets or exceeds the Ambulance Manufacturers Division (AMD) Standard 004, Litter Retention System of the National Truck Equipment Association as shown in the General Services Administration (GSA) specifications for ambulances.  When the stretcher is secured in accordance with the manufacturer's instructions, the securement system, recognized by the ambulance industry to provide the capability of securing the stretcher or cot in the vehicle, shall limit movement so as not to permit longitudinal movement in excess of ½ inch and lateral movement in excess of ¼ inch.

(19)  Industry Standard Wheelchair Locking Device.  A wheelchair locking device permanently affixed to the vehicle for use in Demand Responsive Systems under Title III of the Americans with Disabilities Act (ADA) which meets or exceeds the Department of Transportation (DOT) specifications for Ground Ambulances under the *Guideline Specifications for Wheelchair Securement Devices*.  When the wheelchair is secured in accordance with the manufacturer's instructions, the securement systems, recognized by the ambulance industry to provide the capability of securing the wheelchair in the vehicle, shall limit the movement of an occupied wheelchair to no more than two inches in any direction under normal operating conditions.  All wheelchair locking devices shall be affixed to the vehicle so as to secure the wheelchair in a forward or rear facing position.  Side facing securement is not permitted under any circumstances.  This does not negate the necessity for providing a separate seat belt and shoulder harness for each wheelchair or wheelchair user as specified elsewhere in these rules.

(20)  Licensed Ambulance Driver.  Any individual 21 years of age or older, or any person meeting the requirements under Rule 420-2-1-.15 (2)(b), who successfully completes the course of instruction for emergency vehicle operation prescribed by the State Board of Health, and who has been granted a current, valid license by the State Board of Health.

(21)  Licensed Ambulance Service Operator.  Any person, firm, or corporation engaged in the business of operating a ground ambulance or convalescent ambulance.

(22)  Licensed Emergency Medical Technician-Basic.  Any person 18 years of age or older who has successfully completed the basic emergency medical technician course of instruction, or its equivalent, as approved by the State Board of Health or its designee, and passed the state EMT-basic examination, and who has been granted a current, valid license by the State Board of Health of its designee.

(23)  Licensed Emergency Medical Technician-Intermediate.  Any person 18 years of age or older who has successfully completed the intermediate emergency medical technician course of instruction, or its equivalent, as approved by the State Board of Health, and passed the state EMT-Intermediate examination, as well as having met the requirements for becoming a licensed emergency medical

technician-basic, and who has been granted a current, valid license by the State Board of Health.

(24)   Licensed Emergency Medical Technician-Paramedic. Any person 18 years of age or older who has successfully completed the EMT-paramedic course of instruction, or its equivalent, as approved by the State Board of Health, and passed the state EMT-paramedic examination, as well as having met the requirements for becoming a licensed emergency medical technician- intermediate, and who has been granted a current, valid license by the State Board of Health.

(25)   Medical Direction and Accountability. Directions and advice provided from designated medical facilities staffed by appropriately trained physicians utilizing procedures for prehospital Advanced Life Support care and mechanisms for medical accountability approved by the State Board of Health.

(26)   Non-Credentialed EMT. A licensed emergency medical technician-Basic, Intermediate, or Paramedic who has chosen not to obtain the credentialing education and evaluation required for credentialed status. This emergency medical technician is considered to be inactive and shall not provide patient care in the prehospital setting.

(27)   Non-Transport Vehicle. A vehicle operated with the intent to provide BLS or ALS stabilization on scene, but not intended to be or used as a vehicle that will actually transport a patient to a hospital.

(28)   On-line Medical Direction Physician. A physician licensed in Alabama and working in a designated associate or resource hospital who  successfully completes ACLS and ATLS every four years, or maintains Board Certification in Emergency Medicine or Pediatric Emergency Medicine if the physician works in a designated Childrens Hospital, and who has successfully completed the approved Alabama EMS Medical Directors Course.

(29)   Off-line Medical Director. A physician who shall be from a broad-based medical specialty such as emergency medicine, internal medicine, surgery, family practice or general practice and shall hold and maintain a current ACLS certificate of successful course completion or be board certified in emergency medicine. The physician must have successfully completed the Alabama EMS Medical Directors Course.  The physician shall possess a current license from the Medical Licensure Commission of Alabama or obtain a variance as provided for in these rules.

(30)   On-line Medical Director. A physician licensed in Alabama and working in a designated associate or resource hospital who successfully completes ACLS and ATLS every four years, or maintains Board Certification in Emergency Medicine or Pediatric Emergency Medicine if the physician works in a designated Childrens Hospital, and who has successfully completed the approved Alabama EMS Medical Directors Course.  This physician is responsible for overseeing and coordinating the medical direction functions of the associate or resource hospital to which he or she is assigned.

(31)   Patient. An individual who receives or requests medical care, or for whom medical care is requested, because such individual is sick or injured.

(32)   Physician. An individual currently licensed to practice medicine or osteopathy by the Medical Licensure Commission of Alabama.

(33)   Rapid Responder Service. An organization that routinely treats, but does not transport, emergency patients utilizing licensed EMT-Basics, EMT-

Intermediates, and EMT-Paramedics.  These organizations may be licensed by the State Board of Health to provide ALS services, or may provide BLS services only.

(34)  Recumbent Position.  A position whereby the person is placed in a prone, supine, lying down, reclining or leaning back position, or angle of 20 degrees or more from the upright or vertical angle of 90 degrees.

(35)  Regional Medical Director.  The licensed Alabama physician nominated by the regional medical direction and accountability committee and the regional governing body.  This individual shall be approved by the State Board of Health, and shall provide medical guidance and direction to the designated regional EMS agency.

(36)  Resuscitative measures.  Cardiopulmonary resuscitation, cardiac compression, endotracheal intubation and other advanced airway management, artificial ventilation, cardiac resuscitation medications, and cardiac defibrillation delivered by any means.  This term does not mean and shall not be deemed to include such medical interventions as intravenous fluids, oxygen, suction, control of bleeding, administration of pain medication by properly licensed and authorized personnel, and the provision of support and comfort to patients, family members, friends, and other individuals.

(37)  Specified Public Transportation.  Transportation by bus, rail, air, or any other conveyance provided by a public or private entity to the general public, with general or special service (including charter service) on a regular and continuing basis.

(38)  Standard EMS Provider Notice.  A readily-identifiable card, form, bracelet, or necklace of uniform design, which is manufactured and utilized under specifications approved by the State Board of Health, and which may be issued to a patient only under protocols approved by the State Board of Health.

(39)  State Emergency Medical Control Committee (SEMCC).  The eleven physician committee authorized by the Code of Alabama, 1975, §22-18-6, to assist in the development of rules necessary to carry out the provisions of the Act.

(40)  Stretcher.  A cot, gurney, litter, or stretcher device of the type that can be used for and is maintained solely for the transportation of patients in an ambulance or convalescent ambulance in a recumbent position.  Either one or both of the patient's legs shall be maintained in a horizontal position or angle of 180 degrees at the foot of the stretcher, unless it is medically necessary to do otherwise or to maintain any other position of either one or both of the legs above the horizontal angle of 180 degrees.  The stretcher shall be capable of being locked solely into an ambulance or convalescent ambulance by an industry standard stretcher or cot locking device as defined by these rules.

(41)  Training Program.  A program designed and organized for the purpose of conducting one or more training courses whose successful graduates may be examined for licensure as emergency medical technicians.

(42)  Wheelchair.  A specialty chair or mobility aid that belongs to a class of three or four wheeled devices, usable indoors.  They are usually designed for and used by persons with mobility impairments, which do not exceed 30 inches in width and 48 inches in length, measured two inches above the ground, and do not weigh more than 600 pounds when occupied.

Statutory Authority:  Code of Alabama, 1975, 22-18-1, et.seq.
Author:  Jimmy D. Prince
History:  Filed; June 23, 2004
          Effective; July 28, 2004


420-2-1-.03 Ground Ambulances.

     (1)   Any individual, corporation or other entity desiring to provide the
service of transporting patients by ground ambulance must be granted an ambulance
service operator license prior to operation.  To be eligible for licensure, a
prospective ambulance service operator shall submit an application to the State
Board of Health.

     (2)   An applicant may be granted an ambulance service operator license by
the State Board of Health and issued a licensure certificate by the EMS Division if
the applicant is otherwise qualified under these rules and the applicant has:

     (a)   Paid the required annual fee of $25.00.

     (b)   Demonstrated compliance with the vehicle, equipment, personnel and
service requirements of Code of Alabama, 1975, §22-18-1, et seq., and these rules.

     (c)   Demonstrated compliance with the following vehicle staffing standard:
Every ambulance responding to the scene of an emergency (unless accompanied to the
scene by other vehicles from which personnel will be utilized) and every vehicle in
which a patient is transported shall have at least two persons that meet the
Essential Functions Requirements, Physical Demands, as defined in Appendix-C, XI,
A.,1,2,3,and 4.  In addition to a licensed ambulance driver at least one licensed
EMT providing care to the patient.  For each ambulance crew, the ambulance service
operator shall designate one licensed EMT who shall have overall responsibility to
ensure appropriate patient care is provided, that patient care reports (PCRs) as
shown in Appendix A are accurate, complete, and submitted in a timely manner, and
that a copy of the patient care report is left with each patient transported to a
hospital.  The EMT assigned this responsibility must be licensed at a level that is
at least as high as that of each of the other crew members.  On patient care
reports, this EMT shall be documented as crew member number one.

     (d)   Demonstrated that it follows (or, if it is a new service, that it will
follow) all transport protocols and medical direction assignments contained in the
applicable regional medical direction and accountability plan approved by the State
Board of Health.

     (3)   Licenses granted to ambulance service operators are valid for a period
of not less than twelve months.

     (4)   To renew an ambulance service operator license, the applicant shall
submit a renewal application to the EMS Division, so as to be received at least 60
calendar days prior to the expiration of the license.  Renewal requirements shall
be the same as the requirements for initial granting of an ambulance service
operator license.  The renewal application shall include a statement attesting that
the provider meets the requirements for operation provided by these rules and Code
of Alabama, 1975, §22-18-1, et seq.  Ambulance service operators shall not cause or
permit ambulance vehicles to be operated after the expiration date of an ambulance
service operator license unless a renewed license has been granted by the State
Board of Health.  A renewed license shall not be deemed to have been granted unless
the ambulance service operator has physically received a renewed licensure

8

certificate. In the event an ambulance service operator license has not been renewed prior to the expiration date, third party payors may be notified by the EMS Division.

(5) Each ambulance service will be assigned to a medical direction hospital or hospitals as detailed in section 420-2-1-.06, (3) of these rules. Each ambulance service shall have a recognized off-line medical director who shall be a physician licensed by the Medical Licensure Commission of Alabama or has obtained a variance as provided for in these rules, and who meets all other requirements of off-line medical direction.

(6) Each licensed ambulance service shall ensure and document in its employee records that each of its ambulance drivers and EMTs holds a current, valid license from the State Board of Health, that all personnel are trained as appropriate in medical techniques, equipment, and procedures approved for utilization by the service, that all personnel are credentialed as required, and that all personnel meet the physical requirements for licensure as an EMT or ambulance driver, as appropriate. Those requirements are listed in section 420-2-1-.20 of these rules.

(7) Each licensed ambulance service provider shall, immediately upon identification of an emergency medical technician or ambulance driver who meets the definition of an Impaired EMT, notify the EMS Division of that individual's identity, level of licensure and license number.

(8) Within 30 calendar days of receipt from the State Board of Health of its initial (first) license to operate as an ambulance service, each licensed ambulance service shall be in continuous operation in the county in which it is licensed, providing 24-hour-per-day, 7-day-per-week patient transportation services. For the purposes of this section, continuous operation means that an ambulance service shall consistently respond within seven minutes from the time of dispatch of an emergency call to the time the properly staffed ambulance is en route.

(9) Unless staffed by appropriately licensed personnel from a licensed ALS transport service or a licensed ALS non-transport service, a BLS-only provider shall not transport a patient receiving ALS care in a ground ambulance from the emergency scene to a hospital or other facility. This requirement shall not apply when the capacity of available ALS services has been exceeded during response to disasters or mass casualties, such as earthquakes, tornadoes, floods, or hurricanes.

(10) In no event shall a licensed ambulance service operator responding to the scene of an emergency fail to appropriately treat a patient, nor shall that operator fail to transport a patient to a facility within its normal service area because of the patient's inability to pay or perceived inability to pay for services. Provided that nothing in this subsection shall be construed to prohibit any ambulance service operator from collecting or attempting to collect a fee by any lawful means. Provided further that no licensed ambulance service operator shall threaten to withhold emergency treatment or emergency transportation as a method for collection of fees.

(11) An ambulance service operator shall report to the EMS Division within 10 calendar days of its occurrence any motor vehicle crash involving a ground ambulance permitted to the service in which there was any personal injury, or in which a patient was being transported at the time of the crash.

(12)   An ambulance service operator shall report to the EMS Division within 10 calendar days the outcome of any civil or criminal action brought against the service, the outcome of any criminal action brought against an employee of the service, and the outcome of any civil action involving EMS activities brought against an employee of the service.

(13)   An ambulance service operator must carry a minimum of $1,000,000 in liability insurance coverage, which includes all transport ambulance vehicles and professional liability on all personnel employed or volunteering for duty, from a carrier licensed by the Alabama Department of Insurance.  Alternatively, an ambulance service operator may be self-insured in the same amount via a plan approved by the EMS Division.

(14)   An ambulance service operator shall develop, fully implement, and follow a written plan addressing emergency medical call-taking and emergency medical dispatch.  The plan must include a method by which all emergency calls are received and dispatched by individuals who have successfully completed and maintain certification in an Alabama Department of Public Health, Emergency Medical Services Division approved Emergency Medical Dispatch course.  This plan must be approved by the EMS Division before the service is granted an ambulance service operator license.  This requirement may be waived by the State Health Officer if the ambulance service operator demonstrates to the State Health Officer's satisfaction that meeting the requirement is impossible due to circumstances outside the control of the ambulance service operator.  Waivers shall not be granted for longer than one year, but may be renewed upon a showing of the same grounds resulting in the granting of the original waiver.

(16)   Each ambulance service operator shall develop, implement and follow a written plan addressing the proper handling, storage and disposal of all biohazardous wastes.  This plan must be approved by the off-line medical director and the EMS Division before the operator is granted an ambulance service operators license.

(17)   An ambulance service operator shall not:

(a)   Intentionally collect or bill patients or third party payors for services not rendered.

(b)   Allow an EMT to exceed the scope of privilege or license granted the EMT.

(c)   Self-dispatch or cause a vehicle to be dispatched on a call on which another service has been dispatched.  Self-dispatch shall not be considered to have occurred when a previously agreed upon mutual aid pact governs dual or simultaneous response.

(d)   Fail to follow the applicable approved medical direction and accountability plan.

(e)   Allow an EMT or ambulance driver to respond to an emergency or transport a patient unless the EMT or ambulance driver is clean and neatly dressed in appropriate professional attire, unless responding from another job site which makes such impractical.

(18)   Each ambulance owned and operated by an ambulance service operator for which a license has been granted shall be inspected and management personnel briefed by the State Board of Health, at such intervals as the State Board of

Health may direct.  The State Board of Health or its authorized representatives shall have the right and authority to inspect ambulances and ambulance service operator premises and facilities, and brief service personnel prior to said ambulances being operated on the public streets and highways of Alabama and shall have the authority to investigate and determine the qualifications of emergency medical services personnel and of ambulance service operators.  Investigations and periodic inspections of ambulances and ambulance service operator's premises and facilities may be conducted at such intervals, times, and places as the State Board of Health may direct.

(19)  The State Board of Health shall have the authority to remove from service ambulances which, in the opinion of the inspecting officer, significantly fail to meet the minimum requirements to be operated on the public streets and highways of Alabama and thereby present a threat to public health or safety.

(20)  Any licensed ambulance service operator receiving deficiencies on service or vehicle inspection reports shall notify the EMS Division, in writing, of deficiency correction within 10 calendar days of receiving the deficiency report.

(21)  Written Notification.  Each ambulance service operator shall notify the EMS Division within 10 calendar days, in writing, of the addition, deletion or remounting of any ambulance vehicles.  This notification shall include information on the disposition of each vehicle to be deleted: whether the vehicle was sold or donated to another ambulance service; the name of the service receiving the vehicle; whether the receiving service was in-state or out-of-state; whether the vehicle was sold or donated for scrap; sold or donated as a private vehicle; or simply taken out of service with the intention that the vehicle no longer be used as an ambulance for the purpose of transporting patients.

(a)  For all additions, deletions, or remounts of any ambulance transport vehicles, the following information shall be provided to the EMS Division in writing:

1.  Vehicle Identification Number

2.  Service Unit Number

3.  Make, Year, Model, Tag Number

(22)  Written Notification.  Each ambulance service operator shall notify the Emergency Medical Services Division, in writing, within 10 calendar days of the addition or deletion of any personnel, including ambulance drivers, using a personnel roster addendum or drop and add form.

(23)  Posting of License.  The ambulance service operator license certificate issued to each ambulance service operator shall be posted in a conspicuous place in the primary premises in the county in which the service is licensed.

(24)  License Not Transferable.  The license shall not be transferable or assignable and shall be granted only for the ambulance service operator named on the application.

(25)  Separate Licenses.  An ambulance service operator shall obtain an ambulance service operator license for each county in which it stations an ambulance.

11

medications, and fluids.  These procedures shall include storage procedures and inventory schedules for stocking drugs and fluids kept in stock and on the vehicles.

(4)    Each ALS provider shall maintain a written log for inventory of each I.V. fluid and drug box placed on or removed from any vehicle.  An inventory shall be conducted at least monthly or more often as required.  The log shall have consecutively and permanently numbered pages.  Any errors made in the log, or any pages discovered missing, shall be reported immediately to the shift supervisor, the service director, and the off-line medical director.  The log shall specify:

(a)    The vehicle or unit number.

(b)    The name of the employee conducting the inventory.

(c)    The date and time of the inventory.

(d)    The name, weight, volume (or quantity), and expiration date of each medication and fluid.

(5)    Supply and Re-Supply System for Drugs and I.V. Fluids. Intravenous fluids and drugs supply/re-supply system for approved ALS certificate holders shall be established and maintained with approved hospital pharmacies.  Approved hospital pharmacies may assist the EMS Division in the periodic inspection and rotation of drugs and I.V. fluids.  The pharmacist may approve the kit for carrying I.V. fluids and drugs and the location of fluids and drugs that are stored when not being used on an emergency call.

(6)    There shall be only one source of supply/re-supply for each ALS service participating in the I.V. fluid and drug supply/re-supply program.  Alternatively, I.V. fluids may be supplied by another source if a plan is recommended by the State Emergency Medical Control Committee and approved by the State Health Officer.

(a)    Each ALS provider shall return its fluids, drugs, and Nitrous Oxide (if applicable) to their source of supply/re-supply immediately upon permanently ceasing to provide ALS service, and immediately notify the EMS Division, in writing, of its ceasing to provide ALS services.

(7)    The EMT-Intermediate or EMT-Paramedic must document the use of any fluid or drug on the approved patient care report form.  An approved supplemental physician medication order form may be utilized for re-supply purposes. The patient care report form and the physician medication order form must be signed by the ordering or receiving physician, or the off-line medical director.

(8)    The EMS Division shall have the authority to review all fluid and drug supply and re-supply records for all ALS certificate holders and approved hospital pharmacies.  Any discrepancies must be reported to the Alabama Department of Public Health, Emergency Medical Services Division.


420-2-1-.06 **Medical Direction.**

(1)    An off-line medical director shall be from a broad-based medical specialty such as emergency medicine, internal medicine, surgery, family practice or general practice and shall hold and maintain a current ACLS certificate of successful course completion or be board certified in emergency medicine.   The physician must have successfully completed the Alabama EMS Medical Directors

16

Course. The physician shall possess a current license to practice medicine from the Medical Licensure Commission of Alabama or obtain a variance as provided for in these rules.  The names and qualifications of prospective off-line medical directors shall be submitted to the applicable regional medical direction and accountability committee for a recommendation, which shall in turn be submitted to the State EMS Medical Director for approval.  Provided, that any disapproval may be considered by the State Board of Health after review by the State Emergency Medical Control Committee.

(2)    Duties and Responsibilities of the Off-Line Medical Director:

(a)    An off-line medical director may issue standing orders to EMTs to perform ALS procedures using only those standing orders approved and published for such purpose by the State Board of Health.  Off-line medical directors may approve use of ALS procedures by the personnel of a service only if, in the professional judgment of the medical director, personnel of the service are adequately trained and are competent to perform ALS procedures.  The off-line medical director shall regularly review the skills and performance of all EMT- Intermediates and EMT-Paramedics.

(b)    At such time as the State Board of Health approves protocols for the performance of ALS procedures, the off-line medical director shall require service personnel to follow the protocols.

(3)    Each regional EMS agency shall convene a regional medical direction and accountability committee as defined in the performance-based contracts.  The regional medical control and accountability committee shall develop and implement a regional medical direction and accountability plan which must be approved by the State Board of Health.  A medical direction and accountability plan must, as a minimum, contain the following elements:

(a)    A list of resource, associate, and affiliate hospitals in the region. Regional agencies shall require a facility desiring designation as a resource or associate hospital to execute a contract with the regional agency detailing their respective responsibilities.  Forms of contracts must be approved by the State Board of Health.

(b)    A requirement that resource and associate hospitals have emergency departments that are staffed 24 hours per day, 7 days per week, with a physician who has a certificate of completion of the approved Alabama EMS Medical Directors Course and proof of successful completion of ACLS and ATLS within the last four years, or current Board Certification in Emergency Medicine.

(c)    A list of the ALS providers in the region and an assignment of a resource or associate hospital to each such provider for on-line medical direction.

(d)    Triage agreements which must be approved in form by the State Board of Health.

(4)    An EMT may take on-line orders to provide an approved ALS procedure or drug only from the associate or resource hospital to which the EMT's service is assigned, or from such other associate or resource hospital to which medical direction may be transferred by the assigned facility.  On extended transfer runs, an EMT may accept orders from another associate or resource hospital if the assigned medical direction facility is unreachable.

17

to a building operated by another licensed hospital will be considered inter-facility and NOT intra-facility transfers, regardless of whether the licensed facilities are owned or operated by the same entity.

(d)    All crew members on board the vehicle must be full-time hospital employees.

### 420-2-1-.08 Vehicles.

(1)    No provider shall operate an ALS or BLS transport vehicle to respond to an emergency or transport a patient unless the State Board of Health has issued to the provider a separate, currently valid permit for the vehicle. A decal shall be evidence of the permit. All decals issued by the State Board of Health for a vehicle pursuant to this rule shall be displayed by the provider on the left rear quarter panel. However, if an immediate inspection is not practical, the EMS Division may issue a verbal approval to allow an ambulance vehicle to be placed in service pending a vehicle inspection and affixing of the decal. All pertinent information relating to the vehicle, as outlined elsewhere in these Rules, must be on file with the EMS Division prior to the issuance of a verbal approval.

(2)    Upon application, the State Board of Health shall issue a permit to the provider when the provider initially places the vehicle into service. The permit shall remain valid as long as the vehicle is owned by the provider subject to the following conditions:

(a)    The provider shall submit a vehicle permit application for the vehicle;

(b)    The provider shall at all times equip all ambulance vehicles at the minimum of the BLS level of care, and;

(c)    Except as provided for in subsection (d) below, Only the provider to which the initial permit was issued shall operate the vehicle. If ownership of any permitted vehicle is transferred to any other individual, corporation or other entity, the permit is void and the provider shall remove the State Board of Health decal from the vehicle at the time of transfer and notify the EMS Division, in writing, within 10 calendar days of the transfer.

(d)    Any vehicles may be placed on temporary transfer or loan to another provider if the capacity of available services for that provider has been exceeded due to vehicles being out of service for mechanical repairs, collision damage repair, or during response to natural disasters or mass casualty incidents. If the vehicle(s) is to be on loan more than 5 calendar days, the provider receiving the loaned vehicle shall notify the EMS Division, in writing, within 3 calendar days of the temporary transfer or loan of the vehicle(s) and provide all pertinent information, as outlined elsewhere in these Rules, on each vehicle which has been temporarily transferred or loaned.

(3)    Prior to placing a new or recently purchased vehicle in service the provider shall first obtain a permit from the State Board of Health and affix the decal to the vehicle's left rear quarter panel. However, if an immediate inspection is not practical, the EMS Division may issue a verbal approval to allow an ambulance vehicle to be placed in service pending a vehicle inspection and affixing of the decal. All pertinent information relating to the vehicle, as outlined elsewhere in these Rules, must be on file with the EMS Division prior to the issuance of a verbal approval.

21

(4)    Vehicle permits are not transferable.

(5)    Replacement vehicle permits may be obtained by submitting a written request to the Alabama Department of Public Health, Emergency Medical Services Division.  The request shall include a signed statement by the provider certifying that the original permit has been lost, destroyed or rendered unusable, with a short explanation of the manner in which this occurred.

(6)    A provider shall obtain a new vehicle permit from the State Board of Health prior to returning a vehicle to service following a chassis remount or a remount of the modular ambulance body or any renovation that results in a change in the vehicle identification number.

420-2-1-.09 Vehicle Design and Construction.

(1)    All ground ambulances shall meet General Service Administration (GSA) specifications for ambulances unless a variance issued in accordance with these rules is approved, in writing, by the State Board of Health.  EMS providers may request variances from meeting the GSA specifications regarding color scheme, emblems, and markings as outlined elsewhere in these rules.

(2)    The State Board of Health may issue permits for specialty transport vehicles that do not meet current vehicle design and construction requirements when the application for such permits is accompanied by written justification for any noncompliant items.

(3)    Vehicles shall not have exterior wording which is misleading.  For example, a vehicle staffed at the BLS level shall not have wording which could be misinterpreted to represent an ALS unit, such as "paramedics", "advanced cardiac life support", or "mobile intensive care unit".

(4)    All ground vehicles permitted by the State Board of Health under these rules or subject to these rules shall have exterior lettering a minimum of two inches in height above the parallel stripe on each side of the ambulance that identifies the name of the provider and the unit number.  The name of provider shall be the predominant lettering on each side of the ambulance.

(5)    An ambulance or convalescent ambulance permitted by the State Board of Health under these rules may be used to provide transportation to patients confined to wheelchairs provided that the ambulance is equipped with:

(a)    Wheelchair locking devices permanently affixed to the vehicle, when secured in accordance with the manufacturer's instructions, is capable of securing the wheelchair as defined by these rules.

(b)    Separate restraints for securing the patient in the wheelchair during transportation for each wheelchair or mobility aid securement device provided.  A passenger seat belt and shoulder harness, complying with all applicable provisions of Federal Motor Vehicle Safety Standards (FMVSS) at 49 CFR part 571, shall be provided for use by wheelchair or mobility users.  Such seat belts and shoulder harnesses shall not be used in lieu of a device which secures the wheelchair or mobility aid itself.

Statutory Authority:  Code of Alabama, 1975, 22-18-1, et.seq.
Author:  Jimmy D. Prince

| | | |
|---|---|---|
| 11. | 1 ml. syringes | 2 |
| 12. | 2 1/2 ml. to 6 ml. syringes | 3 |
| 13. | 10 ml. to 20 ml. syringes | 2 |
| 14. | Suitable equipment and supplies to allow for collection and temporary storage of two blood samples, red-top and purple-top | 2 Each |
| 15. | D.C. battery powered portable monitor/ defibrillator with EKG printout and spare battery | 1 |
| 16. | Approved sharps container | 1 |
| 17. | Intraosseous Infusion Needles | 2 |
| 18. | Pediatric Naso-Gastric Tube | 2 |
| 19. | Adult Naso-Gastric Tube | 2 |
| 20. | Digital Blood Glucose Meter | 1 |
| 21. | CO2 Monitoring Equipment (To Include a capnometer-type device and endotracheal placement detector) | 1 each |
| 22. | Pulse Oximeter | 1 |

**420-2-1-.12 Emergency Medical Technician-Basic.**

(1)    Definition and Functions - An actively licensed EMT-Basic is an individual who has been trained in basic emergency medical procedures through the basic emergency medical technician course of instruction, or its equivalent, as approved by the State Board of Health, and who, after having passed the approved EMT-Basic examination and completed the appropriate credentialing requirements, has been granted a license by the State Board of Health to regularly perform basic emergency medical procedures. A credentialed EMT- Basic is authorized to perform the following BLS procedures in the manner taught in the approved curriculum for EMT-Basic training:

(a)    Patient assessment;

(b)    Taking and recording vital signs;

(c)    Taking and recording an appropriate history;

(d)    Properly lifting and moving a patient;

(e)    Opening and maintaining a patent airway using simple airway maneuvers;

(f)    Cardiopulmonary resuscitation;

(g)    Simple management of a cardiac emergency, NOT including use of manual defibrillation, administration of fluids, or administration of drugs by any means, except those drugs or substances listed below;

29

(h)    Administration of activated charcoal, syrup of ipecac, and glucose paste;

(i)    ASSISTANCE with self-administration of nitroglycerin, auto- inhalers, and auto-injection epinephrine, BUT ONLY if the EMT-Basic has been trained to do so through the approved course after September 1, 1995;

(j)    Spine immobilization;

(k)    Long bone fracture immobilization;

(l)    Joint dislocation immobilization;

(m)    Application of pneumatic anti-shock garment;

(n)    Control of bleeding and shock, NOT including suturing or administration of I.V. fluids;

(o)    Splinting, INCLUDING traction splinting;

(p)    Bandaging;

(q)    Assistance with emergency childbirth, NOT including any surgical procedures whatsoever;

(r)    Use of bag-valve mask;

(s)    Use of oropharyngeal and nasopharyngeal airways;

(t)    Use of mouth to mask device with or without supplemental oxygen;

(u)    Administration of supplemental oxygen, INCLUDING use of pulse oximetry devices;

(v)    Capillary puncture for the purpose of blood glucose monitoring, including use of digital blood glucometer;

(w)    Maintenance of heparin locks and saline locks;

(x)    Use of suction equipment;

(y)    Patient extrication;

(z)    Scene management, such as directing traffic, but only when scene management activities do not interfere with patient care duties and law enforcement personnel are not at the scene;

(aa)   Responding appropriately to mass casualty incident, hazardous material incident, and triage situation; and

(bb)   Taking appropriate infection control precautions.

(2)    An EMT-Basic shall not perform ALS procedures.  No EMT-Basic shall provide care beyond his or her level of credentialing on behalf of any organization or entity that is regularly engaged in the provision of emergency medical care,

30

such as an ambulance service or fire department. An organization or entity shall have in place a system for the emergency treatment or transport of motor crash victims, or other trauma victims or emergency medical patients to be deemed to be regularly engaged in the provision of emergency medical care. An organization or entity that merely offers cardiopulmonary resuscitation and other first aid and rescue in the course of activities such as firefighting and related activities shall not be deemed for that reason alone to be regularly engaged in the provision of emergency medical care.

(3)    Responsibilities.

(a)    Upon arrival at the scene of a medical or trauma emergency, a credentialed EMT-Basic shall assess the condition of any sick or injured person. Unless the health or safety of the EMT would thereby be jeopardized by scene conditions, an EMT shall promptly offer such necessary emergency treatment that the EMT is authorized by these rules to deliver.

(b)    An EMT-Basic shall not smoke, shall not use smokeless tobacco, and shall not be under the influence of alcohol or drugs while operating or riding in an emergency vehicle or while providing care to any patient.

(c)    A credentialed EMT-Basic shall maintain a current American Heart Association (AHA) Cardiopulmonary Resuscitation (CPR) BLS for Health Care Providers or American Red Cross (ARC) CPR BLS for the Professional Rescuer successful course completion card.

(d)    A credentialed EMT-Basic shall successfully complete the required credentialing education between the date that a license is initially granted or renewed and January 31 preceding the date of expiration.

(e)    A credentialed EMT-Basic shall carry the following item while on duty or while otherwise providing patient care:

1.    Current Alabama EMT-Basic wallet licensure certificate.

(f)    A credentialed EMT-Basic, not dressed in protective firefighting clothing, or responding in civilian clothes as a volunteer, shall wear the following item while on duty or while otherwise providing patient care:

1.    A picture identification badge which includes the EMT-Basic's name, and licensure level. This requirement may be met by wearing an appropriate uniform and name plate.

(g)    An EMT-Basic shall report to the EMS Division, within 10 calendar days, the outcome of any criminal action brought against the EMT, and the outcome of any civil action to which the EMT was a party and which involved EMS activities.

### 420-2-1-.13 Emergency Medical Technician-Intermediate.

(1)    Definition and Functions - An actively licensed EMT-Intermediate is an individual who has met all requirements for licensure as an EMT-Basic and who has also been trained in additional emergency medical procedures through the emergency medical technician-intermediate course of instruction, or its equivalent, as approved by the State Board of Health, and who, after having passed the approved EMT-Intermediate examination and completed the appropriate credentialing requirements, has been granted a license by the State Board of Health to regularly

31

perform emergency medical procedures at the basic and intermediate levels. A credentialed EMT-Intermediate is authorized to perform all of the procedures authorized for individuals licensed at the EMT- Basic level. A credentialed EMT-Intermediate is also authorized to perform the following ALS procedures in the manner taught in the approved curriculum for EMT-Intermediate training, in accordance with the protocols approved by the State Board of Health.

(a)    Administration of Dextrose 50%, intravenously;

(b)    Placement of oral and nasal endotracheal tubes;

(c)    Placement of approved esophogeal blind insertion devices;

(d)    Peripheral venipuncture and intravenous administration of fluids, to include intraosseous infusion;

(e)    Use of cardiac monitoring equipment, INCLUDING placement of electrical leads;

(f)    Delivery of electrical therapy to patients via manual defibrillators; and

(g)    12-lead EKG monitoring.

(h)    Adult and—pediatric naso-gastric intubation.

(i)    Administration of aspirin.

NOTE:  Credentialed EMT-Intermediates are prohibited from performing any procedure or utilizing any drug not approved by the State Board of Health even though they may have been taught these drugs and procedures in their EMT-Intermediate curriculum.

(2)    A credentialed EMT-Intermediate shall not perform ALS procedures unless he or she receives orders to do so from an on-line medical direction physician, or unless he or she is authorized to do so by standing orders from an off-line medical direction physician.  On-line and off-line medical direction physicians must be authorized to provide such orders according to section 420-2-1-.06 of these rules. An EMT-Intermediate shall not perform ALS or BLS procedures unless currently credentialed by the EMS Division pursuant to these rules.  An EMT-Intermediate who wishes to be able to perform BLS procedures must credential at the EMT-Basic level by successfully completing the EMT-Basic credentialing requirements.  No EMT-Intermediate shall provide care beyond his or her level of credentialing on behalf of any organization or entity that is regularly engaged in the provision of emergency medical care, such as an ambulance service or fire department.  An organization or entity shall have in place a system for the emergency treatment or transport of motor crash victims, or other trauma victims or emergency medical patients to be deemed to be regularly engaged in the provision of emergency medical care.  An organization or entity that merely offers cardiopulmonary resuscitation and other first aid and rescue in the course of activities such as firefighting and related activities shall not be deemed for that reason alone to be regularly engaged in the provision of emergency medical care.

(3)    Responsibilities.

(a)    Upon arrival at the scene of a medical or trauma emergency, credentialed EMT-Intermediate shall assess the condition of any sick or injured

32

person.  Unless the health or safety of the EMT would thereby be jeopardized by scene conditions, a credentialed EMT-Intermediate shall promptly offer such necessary emergency treatment that the EMT is authorized by these rules to deliver.

(b)    An EMT-Intermediate shall not smoke, shall not use smokeless tobacco, and shall not be under the influence of alcohol or drugs while operating or riding in an emergency vehicle or while providing care to any patient.

(c)    A credentialed EMT-Intermediate shall maintain a current American Heart Association (AHA) Cardiopulmonary Resuscitation (CPR) BLS for Health Care Providers or American Red Cross (ARC) CPR BLS for the Professional Rescuer successful course completion card.

(d)    An EMT-Intermediate providing ALS and BLS care shall successfully complete all credentialing requirements between the date that a license is initially granted or renewed and January 31 preceding the date of license expiration.

(e)    A credentialed EMT-Intermediate shall carry the following item while on duty or while otherwise providing patient care:

1.    Current Alabama EMT-Intermediate wallet licensure certificate.

(f)    A credentialed EMT-Intermediate , not dressed in protective firefighting clothing, or responding in civilian clothes as a volunteer, shall wear the following item while on duty or while otherwise providing patient care:

1.    A picture identification badge which includes the EMT-Intermediate's name, and licensure level.  This requirement may be met by wearing an appropriate uniform and name plate.

(g)    An EMT-Intermediate shall report to the EMS Division, within 10 calendar days, the outcome of any criminal action brought against the EMT, and the outcome of any civil action to which the EMT was a party and which involved EMS activities.

420-2-1-.14 Emergency Medical Technician-Paramedic.

(1)    Definition and Functions - An actively licensed EMT-Paramedic is an individual who has met all requirements for licensure as an EMT-Intermediate and who has also been trained in additional emergency medical procedures through the EMT-Paramedic course of instruction, or its equivalent, as approved by the State Board of Health, and who, after having passed the approved EMT-Paramedic examination and completed the appropriate credentialing requirements, has been granted a license by the State Board of Health to regularly perform emergency medical procedures at the basic, intermediate, and paramedic levels.  A credentialed EMT-Paramedic is authorized to perform all of the procedures authorized for individuals licensed at the EMT-Intermediate level.  A credentialed EMT-Paramedic is also authorized to perform the following ALS procedures in the manner taught in the approved curriculum for EMT-Paramedic training:

(a)    Administration of drugs on the list approved by the State Board of Health for such use in the EMS setting.  Drugs may be administered via the intravenous, subcutaneous, intramuscular, oral, sublingual, rectal routes, and through inhalers and endotracheal tubes if approved for such administration by the State Board of Health; and

(b)    Within the constraints specified in section 420-2-1-.07 of these rules, administration of drugs and maintenance of I.V. drips for inter- hospital transfer patients.

(2)    A credentialed EMT-Paramedic, in accordance with the protocols approved by the State Board of Health, may perform the following procedures:

(a)    External Cardiac Pacing

(b)    Adult and Pediatric Naso-Gastric Tube Placement

(c)    Needle Decompression of the Thorax

An EMT-Paramedic is prohibited from performing any procedure or utilizing any drug not approved by the State Board of Health even though they may have been taught these drugs and procedures in their EMT-Paramedic curriculum.

(3)    A credentialed EMT-Paramedic shall not perform ALS procedures unless he or she receives orders to do so from an on-line medical direction physician, or unless he or she is authorized to do so by standing orders from an off-line medical direction physician. On-line and off-line medical direction physicians must be authorized to provide such orders under section 420-2-1-.06 of these rules. An EMT-Paramedic shall not perform ALS or BLS procedures unless currently credentialed by the EMS Division pursuant to these rules. An EMT-Paramedic who wishes to be able to perform BLS procedures must credential at the EMT-Basic level by successfully completing the EMT-Basic credentialing requirements. No EMT-Paramedic shall provide care beyond his or her level of credentialing on behalf of any organization or entity that is regularly engaged in the provision of emergency medical care, such as an ambulance service or fire department. An organization or entity shall have in place a system for the emergency treatment or transport of motor crash victims, or other trauma victims or emergency medical patients to be deemed to be regularly engaged in the provision of emergency medical care. An organization or entity that merely offers cardiopulmonary resuscitation and other first aid and rescue in the course of activities such as firefighting and related activities shall not be deemed for that reason alone to be regularly engaged in the provision of emergency medical care.

(4)    Responsibilities.

(a)    Upon arrival at the scene of a medical or trauma emergency, a credentialed EMT-Paramedic shall assess the condition of any sick or injured person. Unless the health or safety of the EMT would thereby be jeopardized by scene conditions, a credentialed EMT-Paramedic shall promptly offer such necessary emergency treatment that the EMT is authorized by these rules to deliver.

(b)    An EMT-Paramedic shall not smoke, shall not use smokeless tobacco, and shall not be under the influence of alcohol or drugs while operating or riding in an emergency vehicle or while providing care to any patient.

(c)    A credentialed EMT-Paramedic shall maintain a current American Heart Association (AHA) Cardiopulmonary Resuscitation (CPR) BLS for Health Care Providers or American Red Cross (ARC) CPR BLS for the Professional Rescuer successful course completion card.

(d)    An EMT-Paramedic providing ALS or BLS care shall successfully complete all credentialing requirements between the date that a license is initially granted or renewed and January 31 preceding the date of license expiration.

(e)    A credentialed EMT-Paramedic shall carry the following item while on duty or while otherwise providing patient care:

1.    Current Alabama EMT-Paramedic wallet licensure certificate.

(f)    A credentialed EMT-Paramedic , not dressed in protective firefighting clothing, or responding in civilian clothes as a volunteer, shall wear the following item while on duty or while otherwise providing patient care:
1.    A picture identification badge which includes the EMT-Paramedic's name, and licensure level.  This requirement may be met by wearing an appropriate uniform and name plate.

(g)    An EMT-Paramedic shall report to the EMS Division, within 10 calendar days, the outcome of any criminal action brought against the EMT, and the outcome of any civil action to which the EMT was a party and which involved EMS activities.

## 420-2-1-.15 Ambulance Driver.

(1)    Each ambulance service operator shall ensure that each driver who operates an ambulance is a licensed ambulance driver.

(2)    To be eligible for licensure, an ambulance driver must meet the following qualifications:

(a)    An ambulance driver must have been licensed in Alabama to operate a motor vehicle for the past two years and have a good driving record as defined below in section 420-2-1-.15 (4) below.  Individuals who permanently reside outside of Alabama and who are employed as ambulance drivers by licensed Alabama ambulance service operators may obtain a waiver of the Alabama motor vehicle operator license requirement from the Director, Emergency Medical Services Division, if licensed to operate a motor vehicle in another jurisdiction for the past two years.  This waiver will be subject to such additional requirements as the Director may impose. The Director will ordinarily require that the individual obtain a letter of clearance from the Department of Public Safety, or its equivalent, in the state or jurisdiction in which the individual is licensed to operate a motor vehicle.

(b)    An ambulance driver must be twenty-one years of age or older. Alternatively, an ambulance driver may be eighteen years of age or older with two years of continuous licensure as a motor vehicle operator with no moving violations.

(c)    An ambulance driver must be familiar with the operation of emergency vehicles under the laws and ordinances of the state, county, city or other political jurisdiction in which the ambulance is operated.

(d)    An ambulance driver must have eyesight correctable to 20/20 vision in at least one eye, must have 180 degrees peripheral vision, and must be free from physical impairments, including uncorrected serious hearing impairments, which adversely affect the ability to safely operate an emergency vehicle.

(e)    An ambulance driver must be able to safely operate the ambulance vehicle, the emergency lights and warning devices and the communications equipment while responding under emergency conditions and transporting patients.

(f)    An ambulance driver must have successfully completed the Alabama Fire College, Apparatus Operator Course (AFC-AOC), or an emergency vehicle operator course approved by the State Board of Health.

(g)    An ambulance driver must have and maintain a current American Heart Association (AHA) Cardiopulmonary Resuscitation (CPR) BLS for Health Care Providers or American Red Cross (ARC) CPR BLS for the Professional Rescuer successful course completion card.

(h)    An ambulance driver shall not smoke, shall not use smokeless tobacco, and shall not be under the influence of alcohol or drugs while operating or riding in an emergency vehicle or while providing care to any patient.

(i)    An ambulance driver shall successfully complete an AFC-AOC refresher course or an approved EVOC refresher course between the date that a license is initially granted or renewed and January 31 preceding the date of license expiration.

(3)    An ambulance driver shall report to the EMS Division, within 10 calendar days the outcome of any criminal action, including driving offenses, brought against the ambulance driver, and the outcome of any civil action to which the ambulance driver was a party and which involved EMS activities, including civil actions involving motor vehicle crashes.

(4)    An ambulance driver must have a good driving record.  An ambulance driver license shall not be issued to or maintained by an individual who has been:

(a)    Convicted of vehicular homicide.

(b)    Convicted within the last five years of driving a vehicle while under the influence of alcohol or a controlled substance.

(c)    Convicted within the past five years of possession of drugs or drug paraphernalia.

(d)    Required to surrender his or her motor vehicle operators license within the past five years due to suspension or revocation.

(e)    Convicted within the past five years of operating a motor vehicle while his or her vehicle operator's license was suspended or revoked.

(f)    Convicted of being under the influence of alcohol or a controlled substance while operating an emergency vehicle.

(5)    An individual who is ineligible for licensure because of a conviction listed in section 420-2-1-.15 (4) (d) and (e) shall remain ineligible for licensure as an ambulance driver until five years after motor vehicle operator privileges are restored.

(6)    An ambulance driver shall carry the following item while on duty or otherwise driving an ambulance:

(a)    Current Alabama Ambulance Driver wallet license certificate.

(7)    An ambulance driver not dressed in protective firefighting clothing, or responding in civilian clothes as a volunteer, shall wear the following item while on duty or while otherwise providing patient care:

(a)    A picture identification badge which includes the EMT-Intermediate's name, and licensure level.  This requirement may be met by wearing an appropriate uniform and name plate.

## 420-2-1-.16 Responsibility for Patient.

(1)    A credentialed Emergency Medical Technician licensed at any level who begins providing care to a patient shall remain under a continuing duty to provide care to the patient.  The circumstances under which an EMT may stop providing care are set forth below.

(a)    If a patient is transported to a hospital, the highest level credentialed EMT shall continue to provide care until relieved by appropriate hospital medical personnel.

(b)    An EMT credentialed and licensed at any level who is providing BLS care to a patient may yield patient care responsibilities to any other credentialed and licensed EMT or licensed physician who is willing to assume patient care responsibilities.  An EMT providing BLS care to a patient shall yield patient care responsibilities to a licensed physician when directed to do so by the on-line medical direction physician.

(c)    An EMT-Basic shall yield patient care responsibilities to an EMT credentialed and licensed at the EMT-Intermediate or EMT-Paramedic level when directed to do so by the EMT credentialed and licensed at the higher level. Provided, that credentialed EMT-Intermediate or EMT-Paramedic shall not involuntarily relieve credentialed EMT-Basic of patient care duties unless there is a medical necessity to do so.

(d)    A credentialed EMT-Intermediate or EMT-Paramedic who is providing ALS care to a patient may be relieved by any other credentialed and licensed EMT-Intermediate or EMT-Paramedic authorized to provide the necessary level of care if the relieving EMT is willing to assume patient care duties.

(e)    A patient receiving ALS care shall be deemed to be under the care of the on-line medical direction physician under whose orders the care is provided.  A credentialed EMT-Intermediate or EMT-Paramedic may be relieved of patient care responsibilities by an on-scene physician only with the permission of the on-line medical direction physician who is responsible for care of the patient.  A credentialed EMT-Intermediate or EMT-Paramedic may not accept orders for ALS care from an on-scene physician unless authorized to do so by on-line medical direction.

(f)    A credentialed EMT may discontinue care to a patient who is obviously dead as defined in section 420-2-1-.17 of these rules.

(g)    A credentialed EMT may discontinue resuscitative measures pursuant to section 420-2-1-.18 of these rules, "Termination of Resuscitation."

(h)    A credentialed EMT may discontinue resuscitative measures for a patient discovered to be the subject of an "Emergency Medical Services Do Not Attempt Resuscitation Order" pursuant to section 420-2-1-.19 of these rules.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LUTHER L. BILLINGSLEY,     )
                               )
     Plaintiff,          )
                               )
v.                          )
                               )  Case No. 3:06-cv-795-WKW
MCWHORTER FARMS, LLC;     )
MICHAEL L. ADKINS;        )
LIFESTAR RESPONSE OF      )
ALABAMA, INC. d/b/a CARE    )
AMBULANCE, et al.,         )
                               )
     Defendants.        )

## AFFIDAVIT OF MICHAEL ADKINS

Before me, the undersigned authority, personally appeared Michael Adkins, to me

known, and first being duly sworn on oath, deposed and said:

My name is Michael Adkins, and I am over the age of 19 years old and make this affidavit based upon my own personal knowledge. I am a defendant in this case, and I was the McWhorter Farms truck driver involved in the March 14, 2006, accident made the basis of the above referenced lawsuit.

When a state trooper or police officer arrived on the scene, I requested him to call an ambulance because I could not move my right arm because my shoulder had been injured in the accident. The officer called an ambulance, and when the ambulance arrived, Mr. Billingsley said he thought he wanted to go to the hospital too. Mr. Billingsley climbed into the ambulance, and I climbed into the ambulance after him. He sat down on the bed in the ambulance, and I sat down on the side seat where the paramedics sit. The paramedics took our information, and then one of them strapped him down to the bed and strapped me down to a stretcher board that they laid across the paramedics' seat. Then they drove us to the hospital.

Once we arrived at the hospital, they took Mr. Billingsley out of the ambulance and then removed me from the ambulance and placed me on one of the hospital carts. They rolled both of us into the hospital at the same time but took us to separate emergency rooms.

To the best of my knowledge, I was with Mr. Billingsley during the entire time each of us climbed into the ambulance to be transported to the hospital and until both of us were rolled into the emergency room where we were then placed in separate rooms. I did not see the paramedics drop or allow Mr. Billingsley to fall at any time, nor did I hear him or anyone else make any comments or complaints about Mr. Billingsley being dropped or injured in any way during the entire time the paramedics transported us to the hospital or rolled us into the emergency room.

Michael Adkins

STATE OF            )
                   )
COUNTY OF           )

I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that ___Michael Adkins___, whose name is signed to the foregoing document and who is known to me, acknowledged before me on this day that being informed of the contents of the foregoing document, he signed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _10th_ day of _November_, 2006.

NOTARY PUBLIC
My commission expires: 2-5-07

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on this <u>13th</u> day of <u>November</u>, 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of each filing to the following:

Mr. David M. Cowan
Mann, Cowan & Potter, PC
2000-B SouthBridge Parkway/ Ste. 601
Birmingham, AL 35209
(205) 879-9661
Email: david@mcplaw.com

Mr. R. Keith Thomas
R. Keith Thomas, LLC
P.O. Box 830899
Tuskegee, AL 36083
(334) 724-0035
Email: ktatty@bellsouth.net

Mr. Thomas L. Oliver, II
Carr Allison, PC
100 Vestavia Parkway
Birmingham, AL 35216
(205) 949-2942
Email: tlo@carrallison.com

Mr. Shane Oncale
Clark, Dolan, Morse, Oncale & Hair, PC
800 Shades Creek Parkway/ Ste. 850
Birmingham, AL 35209
(205) 397-2900
Email:  soncale@cohslaw.com

Steven K. Herndon